

1  SEAN P. REIS - SBN 184044 (sreis@edelson.com)
   EDELSON MCGUIRE, LLP
2  30021 Tomas Street, Suite 300
   Rancho Santa Margarita, California 92688
3  Telephone: (949) 459-2124
   Facsimile: (949) 459-2123
4
5  JAY EDELSON (jedelson@edelson.com)*
   RAFEY S. BALABANIAN (rbalabanian@edelson.com)*
6  ARI J. SCHARG (ascharg@edelson.com)*
   BENJAMIN H. RICHMAN (brichman@edelson.com)*
7  CHANDLER R. GIVENS (cgivens@edelson.com)*
   EDELSON MCGUIRE, LLC
8  350 North LaSalle Street, Suite 1300
   Chicago, Illinois 60654
9  Telephone: (312) 589-6370
   Facsimile: (312) 589-6378
10
   *Pro hac vice admission to be sought
11
   ATTORNEYS FOR PLAINTIFF
12
                    UNITED STATES DISTRICT COURT
13
                  NORTHERN DISTRICT OF CALIFORNIA
14
                        SAN JOSE DIVISION
15
   JAMES GROSS, individually and on behalf of all    Case No. **CV 12-00154**
16 others similarly situated,
                                                     **COMPLAINT FOR:**
17              Plaintiff,
                                                     1. **Violations of Unfair Competition Law,**
18 v.                                                   **Cal. Bus. & Prof. Code §§ 17200, *et***
                                                        ***seq.*;**
19 SYMANTEC CORPORATION, a Delaware               2. **Fraudulent Inducement;**
   corporation,                                     3. **Breach of Express Warranties, Cal.**
20                                                      **Com. Code § 2313;**
                Defendant.                          4. **Breach of Contract;**
21                                                  5. **Breach of the Implied Covenant of**
                                                        **Good Faith and Fair Dealing; and**
22                                                  6. **Unjust Enrichment.**

23                                                  **DEMAND FOR JURY TRIAL**

24                                                  **CLASS ACTION**
25
26
27
28
   ─────────────────────────────────────────
   CLASS ACTION COMPLAINT

1    Plaintiff James Gross brings this Class Action Complaint against Defendant Symantec

2  Corporation ("Symantec" or "Defendant") to obtain redress for, and put an end to, Symantec's

3  defrauding of consumers across the country through the deceptive design and sale of certain of its

4  software products. Plaintiff, for his Class Action Complaint, alleges as follows upon personal

5  knowledge as to himself and his own acts and experiences and, as to all other matters, upon

6  information and belief, including investigation conducted by his attorneys.

7                                      **NATURE OF THE ACTION**

8    1.    Symantec is one of the world's largest developers of computer security software, and

9  also sells a variety of products that it claims will increase the speed, performance, and stability of a

10  consumer's personal computer ("PC"), protect against privacy risks, remove harmful errors, and

11  "clean up" hard drives. Unfortunately for consumers, the methods used by Symantec to induce

12  consumers to purchase such software, as well as the software itself, is undeniably fraudulent.

13    2.    Through a common deceptive scheme, Symantec uniformly defrauds consumers into

14  purchasing the three products at issue in this lawsuit—PC Tools Registry Mechanic, PC Tools

15  Performance Toolkit, and Norton Utilities (hereafter collectively referred to as the "Scareware").

16    3.    First, Symantec represents to the consumer that the Scareware is capable of

17  identifying and fixing a wide range of PC errors, privacy threats, and other computer problems.

18  Next, to demonstrate the Scareware's value to the consumer, Symantec allows the user to download

19  the software and perform a "free diagnostic" scan, which purportedly detects whether any such

20  problems exist on the individual's PC. Then, the Scareware reports, in alarmist fashion, that

21  harmful errors and other threats exist on the user's PC. Finally, Symantec informs the consumer

22  that a handful of these issues may be fixed for free, but the individual must purchase the product to

23  fully remove the remaining so-called errors.

24    4.    As explained more fully herein, however, the Scareware *does not conduct any actual*

25  *diagnostic testing* on the computer. Instead, Symantec intentionally designed its Scareware to

26  *invariably* report, in an extremely ominous manner, that harmful errors, privacy risks, and other

27

28

CLASS ACTION COMPLAINT

1  computer problems exist on the user's PC, regardless of the real condition of the consumer's

2  computer. Furthermore, the Scareware does not, and cannot, provide the benefits promised by

3  Symantec. Accordingly, consumers are duped into purchasing software that does not function as

4  advertised, and in fact, has very little (if any) utility.

5       5.      Symantec holds itself out as a reputable industry leader in developing software

6  aimed to protect consumers' computers. Because average consumers lack the requisite technical

7  expertise to understand the underlying functionality of Symantec's software, they trust Symantec to

8  convey truthful information, and to honestly and accurately identify and remove harmful errors

9  from their computers. Symantec betrayed that trust, and as a result, millions of consumers have

10  been, and continue to be, tricked into paying for its unlawful Scareware. Due to the level of

11  egregious, willful acts of fraud committed by Symantec, Plaintiff seeks punitive damages.

**PARTIES**

13       6.      Plaintiff James Gross is a natural person and citizen of the state of Washington.

14       7.      Defendant Symantec Corporation is a Delaware corporation with its headquarters

15  and principal place of business located at 350 Ellis Street, Mountain View, California 94043.

16  Symantec does business throughout the State of California and the United States.

**JURISDICTION AND VENUE**

18       8.      This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(d), because

19  (a) at least one Class member is a citizen of a different state than Defendant, (b) the amount in

20  controversy exceeds $5,000,000.00, exclusive of interest and costs, and (c) none of the exceptions

21  under that subsection apply to this action.

22       9.      This Court has personal jurisdiction over Defendant because Defendant conducts

23  business in California and the unlawful conduct alleged in the Complaint occurred in, was directed

24  to, and/or emanated from California. Additionally, Symantec is headquartered in Mountain View,

25  California.

26       10.     Venue is proper in this District because Symantec maintains its headquarters in this

CLASS ACTION COMPLAINT

1    District and because the improper conduct alleged in this Complaint occurred in, was directed to,

2    and/or emanated from this District.

3                               **INTRADISTRICT ASSIGNMENT**

4            11.     Pursuant to Civil Local Rule 3-2(e), this case shall be assigned to the San Jose

5    Division.

6                                 **FACTUAL BACKGROUND**

7    **I.      A Brief Overview of Symantec Corporation.**

8            12.     Founded in 1982, Symantec has become a household name for its anti-virus and

9    other security-related software. In August 1990, Symantec merged with Peter Norton Computing,

10   Inc. and has since continued to sell products, such as Norton Antivirus and Norton Utilities, under

11   the Norton name.

12           13.     Symantec boasts that it is one of the "world's largest software companies with more

13   than 18,500 employees in more than 50 countries."[1] Defendant asserts that its mission is to help

14   consumers "secure and manage their information-driven world against more risks at more points,

15   more completely and efficiently than any other company."

16           **A.     Symantec Acquires PC Tools, Ltd.**

17           14.     In August 2008, Symantec acquired Australian PC utilities software company PC

18   Tools, Ltd. At the time of the acquisition, Symantec issued a press release stating that, "With the

19   addition of PC Tools, Symantec will expand its consumer product portfolio to include award-

20   winning PC utilities software and point security technologies."[2]

21           15.     After acquiring PC Tools, Symantec redesigned its Norton Utilities software to

22   mirror the look and functionality of the PC Tools Registry Mechanic and PC Tools Performance

23   Toolkit software.

24

25

26   [1]     Corporate Profile, http://www.symantec.com/about/profile/ (last visited January 8, 2012).

27   [2]     Symantec to Acquire PC Tools,
     http://www.symantec.com/about/news/release/article.jsp?prid=20080818_02 (last visited January 8, 2012).

28

CLASS ACTION COMPLAINT

4

**B.      Symantec's Researchers Publish a Report Warning Consumers about Scareware—Yet Fail to Mention That It Produces Similar Software.**

16.     In addition to developing software, Symantec employs a team of researchers who investigate emerging cyber threats to consumers. Approximately one year after acquiring PC Tools, Symantec's researchers published a whitepaper detailing a new threat to consumers—scareware.

17.     In what can only be described as supreme irony, or a clever attempt by Defendant to persuade consumers to choose its own "legitimate" computer utility software, the results of Symantec's research succinctly capture the fraud at issue in this lawsuit: "Once installed on a user's computer—and to induce payment—rogue security applications often misrepresent the computer's security status or performance, displaying fake or exaggerated claims of threats."[3] In industry parlance, these "rogue" applications are called "scareware."

18.     As explained below, the foregoing description aptly describes the exact deception Symantec uses to trick consumers into purchasing its own Scareware.

**II.     Symantec Tricks Consumers into Purchasing its Scareware Through a Common Deceptive Scheme.**

19.     When a consumer searches the World Wide Web for software to increase the speed or performance of a computer, to remove harmful PC errors, or to protect their privacy, the individual will likely encounter advertisements for Symantec's Scareware. Upon clicking on a hyperlink to one of its websites, Symantec presents the consumer with misrepresentations about the utility of the Scareware, thus triggering the initial phase of Symantec's deceptive scheme.

**A.      Regardless of the Software Product or Website Viewed by a Consumer, Symantec Uniformly Misrepresents the Utility of its Scareware.**

20.     On the individual webpages for PC Tools Registry Mechanic, PC Tools Performance Toolkit, and Norton Utilities, Symantec displays affirmations about the software's functionality.

---

[3]     Symantec Report on Rogue Security Software, http://eval.symantec.com/mktginfo/enterprise/white_papers/b-symc_report_on_rogue_security_software_WP_20100385.en-us.pdf (last viewed January 8, 2012).

1   Specifically, Symantec asserts that the Scareware protects the user's privacy, improves the

2   efficiency and performance of the computer, increases the PC's stability, repairs the hard drive, and

3   cures common computer errors.

4       21.    With these representations as a backdrop, it becomes clear why the "free diagnostic"

5   scan (the second phase of Symantec's deceptive scheme) offered to consumers is so misleading.

6   **B.**    **Symantec Offers the Consumer a "Free Diagnostic Scan" With its**

7          **Scareware.**

8       22.    Through its websites, Symantec recommends that the viewing consumer download

9   its Scareware and conduct a "free scan" to detect the issues that the product is supposedly designed

10   to fix. Naturally, the consumer believes that the scan will detect the sort of computer issues—such

11   as harmful errors, privacy threats, and other performance-hindering problems—that Symantec

12   claims the Scareware can remedy.

13       23.    Once the consumer downloads and installs the Scareware, the third phase of the

14   deceptive scheme begins: the software informs the user that dozens of harmful errors exist on the

15   user's computer, and then offers to fix these problems—for a price.

16   **C.**    **Plaintiff's Experts Uncover that Symantec Designed its Scareware to**

17          **Invariably Report Harmful Errors to Induce Users to Purchase the**
       **Software.**

18       24.    As introduced above, PC Tools Registry Mechanic, PC Tools Performance Toolkit,

19   and Norton Utilities are substantially identical in functionality, yet have slightly varied graphical

20   user interfaces (i.e., the display screens presented to the user). In particular, each software product

21   allows the user to perform a scan to detect certain computer problems. Once the scan is complete,

22   the Scareware shows a list of errors identified by the software ranging from "Low Priority" to

23   "High Priority." The Scareware also presents a graphical depiction of a meter, ranging from red to

24   green, with a corresponding rating for the overall "System Health" of the computer. Additionally,

25   the Scareware displays the "Privacy Health" and "Disk Health" of the computer, ranging from

26   "LOW" to "HIGH."

27

28

CLASS ACTION COMPLAINT

1    25.    Once the Scareware's scan is completed, the user is presented with its results in an

2    extremely menacing fashion. For example, the displayed lettering is red and bolded, the screen

3    contains warnings that errors need immediate repair, or that they are slowing down the computer, or

4    exposing the user's privacy. Next, the Scareware offers to "fix" some of the detected errors, but

5    requires the user to purchase the full, registered version, of the software to fully "fix" the identified

6    computer problems.[4]

7    26.    The truth, however, is that the Scareware does not actually perform any meaningful

8    evaluation of the user's computer system, or of the supposed "errors" detected by the software.

9    Moreover, the Scareware does not, and cannot, actually perform the valuable tasks represented by

10   Symantec through its websites, advertising, and in-software display screens.

11   27.    Through his attorneys, Plaintiff has engaged computer forensics experts to examine

12   Symantec's Scareware. The results of this investigation confirm that Symantec's Scareware *always*

13   reports that the user's computer's "System Health" is "LOW," that "High Priority" errors exist on

14   the system, and that the user's "Privacy Health" and "Disk Health" are "LOW." Ostensibly these

15   representations scare the user into believing that the computer is damaged, or at risk, and that

16   purchase of the Scareware is necessary to "fix" these problems. Worse, Plaintiff's experts revealed

17   that, by any stretch of the imagination, the errors detected as "High Priority" *are not credible*

18   *threats* to a computer's functionality.

19   28.    The experts' investigation further uncovered that Symantec programmed its

20   Scareware to, *inter alia*, (i) always identify problems on a user's computer (even where none exist),

21   (ii) artificially inflate the number of errors detected on a user's computer, (iii) characterize

22   innocuous files as "High Priority" errors, and (iv) arbitrarily report that the user's "System Health,"

23   "Privacy Health," and "Disk Health" are "LOW" without any actual assessment of these issues.

24

25   [4]    The Norton Utilities software's method of inducement is even more devious. Instead of providing a free scan
     followed by an immediate offer to purchase the software to fix "errors," the consumer is offered a 30-day free trial. At
26   the completion of the trial, the user must purchase the product to continue using it. Therefore, for a full 30 days the
     consumer is tricked into believing that Norton Utilities is detecting and removing harmful errors from the individual's
27   computer, and that purchase of the product is necessary to continue protecting the PC.

28

CLASS ACTION COMPLAINT

7

29.     By and through the deceptive scheme described above, Symantec has profited, and continues to profit, by defrauding consumers into believing that their computers are severely damaged, and/or at risk, and that purchase of its Scareware is necessary to "fix" these problems.

**III.     Plaintiff James Gross's Experience**

30.     In April of 2011, Gross performed an Internet search for software that would enhance the performance of his computer. After seeing a link that seemed promising, Gross navigated to a Symantec subsidiary's website—www.PCTools.com—and clicked on a link for a software produced called "Registry Mechanic" that purported to perform a "free scan" of his computer.

31.     Gross relied upon the representations made by Symantec through the PC Tools website about the functionality of the Registry Mechanic software. In particular, Gross reasonably believed that Registry Mechanic would truthfully scan and fix computer errors, protect his privacy, and speed up his computer. For that reason, Gross performed Symantec's "free scan."

32.     After the "free scan" was performed, the software indicated that Gross's computer possessed numerous "High Priority" errors, and that his "System Health" was "LOW." After clicking "repair" to fix these supposed problems, a display box informed Gross that only some of the errors would be fixed with the trial version, and that he must purchase the product to "fix all detected issues." But for these misrepresentations—that his "System Health" was "LOW," and that "High Priority" errors existed on his computer—Gross would not have purchased Symantec's software. Similarly, but for Symantec's "free scan," Gross would not have purchased the Registry Mechanic software.

33.     As requested by Defendant, Gross clicked on the "Purchase Online" button and was directed to a website where he purchased PC Tools Registry Mechanic for the price of $29.99.

34.     However, as discussed above, the "errors" purportedly "detected" by Registry Mechanic were not "High Priority," and his "System Health" was not actually "LOW."

1

**CLASS ALLEGATIONS**

2      35.     **Definition of the Class:** Plaintiff James Gross brings this action pursuant to Fed. R.

3    Civ. P. 23(b)(2) and (3) on behalf of himself and a Class of similarly situated individuals, defined as

4    follows:

5          All individuals and entities in the United States and its territories that have
          purchased any of the following software from Symantec: PC Tools Registry

6          Mechanic, PC Tools Performance Toolkit, and Norton Utilities.

7    Excluded from the Class are (1) Defendant, Defendant's agents, subsidiaries, parents, successors,

8    predecessors, and any entity in which the Defendant or their parents have a controlling interest and

9    their current and former employees, officers, and directors, (2) the Judge or Magistrate Judge to

10   whom this case is assigned and the Judge's or Magistrate Judge's immediate family, (3) persons

11   who execute and file a timely request for exclusion, (4) persons whose claims in this matter have

12   been finally adjudicated on the merits or otherwise released, and (5) the legal representatives,

13   successors, or assigns of any such excluded person.

14      36.     **Numerosity:** The exact number of Class members is unknown to Plaintiff at this

15   time, but on information and belief, Symantec has sold its software to with thousands of Class

16   members throughout the country, making joinder of each individual member impracticable.

17   Ultimately, the Class members will be easily identified through Symantec's records.

18      37.     **Typicality**: Plaintiff's claims are typical of the claims of the other members of the

19   Class. Plaintiff and the Class sustained damages as a result of Symantec's uniform wrongful

20   conduct during transactions with Plaintiff and the Class. Plaintiff's claims are typical of the claims

21   of all of the other members of the Class.

22      38.     **Adequate Representation:** Plaintiff will fairly and adequately represent and protect

23   the interests of the Class, and has retained counsel competent and experienced in complex litigation

24   and class actions. Plaintiff has no interests antagonistic to those of the Class, and Symantec has no

25   defenses unique to Plaintiff. Plaintiff and his counsel are committed to vigorously prosecuting this

26   action on behalf of the members of the Class, and have the financial resources to do so. Neither

27

28

CLASS ACTION COMPLAINT

1    Plaintiff nor his counsel have any interest adverse to those of the other members of the Class.

2        39.    **Commonality and Predominance:** Common questions of law and fact exist as to

3    all members of the Class and predominate over any questions affecting only individual members:

4            a)    whether Defendant has intentionally designed its software to deceive

5                consumers into purchasing its products;

6            b)    whether Defendant has breached its express warranties;

7            c)    whether Defendant's conduct described herein constitutes a breach of

8                express warranties pursuant to the California Commercial Code;

9            d)    whether Defendant's conduct described herein constitute a violation of

10               California's Unfair Competition Law (Cal. Bus. & Prof. Code §§ 17200, *et seq.*);

11           e)    whether Defendant's conduct described herein constitutes fraudulent

12               inducement;

13           f)    whether Defendant's conduct described herein constitutes a breach of

14               contract;

15           g)    whether Defendant unjustly received and/or continues to receive

16               money as a result of its conduct described herein, and whether under

17               principles of equity and good conscience, Defendant should not be

18               permitted to retain those monies.

19       40.    **Superiority:** This class action is appropriate for certification because class

20   proceedings are superior to all other available methods for the fair and efficient adjudication of this

21   controversy and joinder of all members of the Class is impracticable. The damages suffered by the

22   individual members of the Class will likely be small relative to the burden and expense of

23   individual prosecution of the complex litigation necessitated by Symantec's wrongful conduct.

24   Thus, it would be virtually impossible for the individual members of the Class to obtain effective

25   relief from Symantec's misconduct. Even if members of the Class could sustain such individual

26   litigation, it would not be preferable to a class action because individual litigation would increase

27

28

CLASS ACTION COMPLAINT

1    the delay and expense to all parties due to the complex legal and factual controversies presented in

2    this Complaint. By contrast, a class action presents far fewer management difficulties and provides

3    the benefits of single adjudication, economy of scale, and comprehensive supervision by a single

4    court. Economies of time, effort, and expense will be fostered and uniformity of decisions will be

5    ensured.

6        41.    **Policies Generally Applicable to the Class:** This class action is also appropriate for

7    certification because Symantec has acted or refused to act on grounds generally applicable to the

8    Class and Subclass, thereby requiring the Court's imposition of uniform relief to ensure compatible

9    standards of conduct toward the members of the Class, and making final injunctive relief

10    appropriate with respect to the Class as a whole. Symantec's policies challenged herein apply and

11    affect members of the Class uniformly and Plaintiff's challenge of these policies hinges on

12    Symantec's conduct with respect to the Class as a whole, not on facts or law applicable only to

13    Plaintiff. Symantec has acted and failed to act on grounds generally applicable to Plaintiff and the

14    other members of the Class, requiring the Court's imposition of uniform relief to ensure compatible

15    standards of conduct toward members of the Class.

16        42.    Plaintiff reserves the right to revise the foregoing "Class Allegations" and "Class

17    Definitions" based on facts learned in discovery.

18

                 **FIRST CAUSE OF ACTION**

19        **Violations of California's Unfair Competition Law**

            **Cal. Bus. & Prof. Code §§ 17200, *et seq.***

20           **(On Behalf of Plaintiff and the Class)**

21        43.    Plaintiff incorporates by reference the foregoing allegations as if fully set forth

22    herein.

23        44.    California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200, *et*

24    *seq.*, protects both consumers and competitors by promoting fair competition in commercial

25    markets for goods and services.

26        45.    The UCL prohibits any unlawful, unfair or fraudulent business act or practice. A

27

28

CLASS ACTION COMPLAINT

1   business practice need only meet one of the three criteria to be considered unfair competition.

2         46.    The utility of a consumer product is a material term of any transaction because it

3   directly affects a consumer's choice of, or conduct regarding, whether to purchase a product. Any

4   deception or fraud related to the utility of a product is materially misleading.

5         47.    Likewise, the price of a consumer product is a material term of any transaction

6   because it directly affects a consumer's choice of, or conduct regarding, whether to purchase a

7   product. Any deception or fraud related to the price of a product is materially misleading.

8         48.    As described herein, Defendant engaged in fraudulent and unfair business practices,

9   as defined by the UCL, by, *inter alia*: (i) misrepresenting the utility of its Scareware products to

10   consumers, (ii) misrepresenting the results of the "free scan" to consumers, (iii) scaring consumers

11   with false scan results for the purpose of tricking consumers into purchasing the Scareware, and (iv)

12   selling Scareware that lacks the advertised utility.

13         49.    Specifically, Defendant affirmatively represented to Plaintiff that: PC Tools Registry

14   Mechanic would honestly and accurately scan his computer for harmful problems, increase the

15   speed and stability of his computer, and protect his privacy. Furthermore, through the software

16   itself, Symantec affirmatively represented that Plaintiff's "System Health" was "LOW" and that

17   "High Priority" errors existed on his computer.

18         50.    The above affirmative representations were in fact false. In particular, Symantec's

19   software does not actually speed up the performance and stability of computers in the manner

20   described by Defendant, nor does it protect the user's privacy as represented. Likewise, the results

21   of the "free diagnostic scan" provided by the software were false, because PC Tools Registry

22   Mechanic did not perform an actual evaluation of Plaintiff's computer or any problems contained

23   on it.

24         51.    Furthermore, the *only reason* for consumers to purchase the Scareware products is to

25   "fix" the supposed "errors" that the free scans "detected." As such, the false results of the free scans

26   were, in every case, necessarily the impetus that caused the consumers to purchase the Scareware.

27

28

1  Unquestionably then, Defendant's free "scan" and false marketing practices were likely to mislead

2  reasonable consumers.

3      52.    Defendant has violated the "fraudulent" prong of the UCL by intentionally designing

4  the Scareware to report fake errors and misrepresent the "System Health" of consumers' computers,

5  with the intent to defraud consumers into purchasing its software products. A reasonable consumer

6  is likely to, and Plaintiff and the Class did, rely on Defendant's misrepresentations regarding the

7  benefits conferred by the Scareware. Moreover, Symantec's misrepresentations were likely to

8  deceive reasonable consumers, and, in fact, did deceive Plaintiff and the Class into purchasing

9  Scareware that lacked the advertised utility.

10      53.    Defendant has also violated the "unfair" prong of the UCL by causing substantial

11  injury to consumers through the conduct alleged above. The injuries caused by Defendant's unfair

12  conduct are not outweighed by any countervailing benefits to consumers or competition, and could

13  not reasonably have been known by consumers. Further, Symantec's fraudulent marketing practices

14  violate California's public policies favoring enforcement of implied and express warranties.

15      54.    Defendant's fraud and unfair conduct occurred during the marketing and sale of

16  computer software products, and therefore occurred in the course of Defendant's business practices.

17      55.    Plaintiff and the Class have suffered harm in the form of actual monetary damages as

18  a proximate result of Defendant's fraudulent and unfair conduct.

19      56.    Pursuant to Cal. Bus. & Prof. Code § 17203, Plaintiff seeks an order enjoining

20  Defendant from continuing to engage in the unfair and unlawful conduct described herein. Plaintiff

21  seeks an order (1) requiring Defendant to cease the unfair and unlawful practices described herein;

22  and, (2) awarding reasonable costs and attorneys' fees pursuant to Cal. Code Civ. Proc. § 1021.5.

23  **SECOND CAUSE OF ACTION**
**Fraudulent Inducement**
24  **(On Behalf of Plaintiff and the Class)**

25      57.    Plaintiff incorporates by reference the foregoing allegations as if fully set forth

26  herein.

27

28

CLASS ACTION COMPLAINT

13

58.     As described with particularity in paragraphs 14 through 34 and throughout all Counts of this Complaint, Symantec has used, and continues to use, marketing tactics it knows or reasonably should know are false and misleading.

59.     As an inducement for Plaintiff to purchase Symantec's software, Defendant affirmatively represented to Plaintiff that: PC Tools Registry Mechanic possessed certain utility, specifically that it would honestly and accurately scan his computer for harmful problems, increase the speed and stability of his computer, and protect his privacy. Furthermore, through the software itself, Symantec affirmatively represented that Plaintiff's "System Health" was "LOW" and that "High Priority" errors existed on his computer.

60.     The above affirmative representations were in fact false. In particular, Symantec's software does not actually speed up the performance and stability of computers in the manner described by Defendant, nor does it protect the user's privacy as represented. Likewise, the results of the "free diagnostic scan" provided by the software were false, because PC Tools Registry Mechanic did not perform an actual evaluation of Plaintiff's computer or any problems contained on it.

61.     The utility of a consumer product is a material term of any transaction because it directly affects a consumer's choice of, or conduct regarding, whether to purchase a product. Any deception or fraud related to the utility of a product is materially misleading.

62.     Likewise, the price of a consumer product is a material term of any transaction because it directly affects a consumer's choice of, or conduct regarding, whether to purchase a product. Any deception or fraud related to the price of a product is materially misleading.

63.     Symantec knew that its representations regarding the Scareware's utility were false, and intentionally designed its public representations to mislead consumers about the utility of its software, and programmed its software to falsely report computer errors and to deceive users about the status of their computers.

64.     Symantec intended that its fraudulent and unfair marketing misrepresentations would

CLASS ACTION COMPLAINT

14

1   induce consumers to rely on, and act based on, the false claims. That is the very reason Symantec

2   offered the free scans in the first place—to dupe unwary consumers into paying substantial amounts

3   of money for products that do not perform as represented by Defendant.

4       65.    Plaintiff justifiably relied upon the above representations, and would not have

5   purchased Symantec's software but for the representations that Defendant's software would

6   perform the beneficial tasks listed above, and the representations that his computer's "System

7   Health" was "LOW" and that "High Priority" errors existed on his computer.

8       66.    By using false and fraudulent marketing tactics that misrepresent the actual utility of

9   its Scareware, and inducing Plaintiff and the Class to purchase the Scareware based on those

10   misrepresentations, Defendant has engaged in fraudulent practices designed to mislead and deceive

11   consumers.

12       67.    As a result of relying on Symantec's misrepresentations, Plaintiff has been damaged

13   in the amount of the purchase price of Defendant's software.

14       68.    Plaintiff therefore prays for relief in the amount of the purchase price of Symantec's

15   software. Plaintiff further alleges that Symantec's conduct and misrepresentations were made with

16   malice and in conscious disregard for Plaintiff's rights, thereby entitling him to punitive damages

17   against Symantec in an amount sufficient to deter such conduct in the future.

18   **THIRD CAUSE OF ACTION**
19   **Breach of Express Warranties**
    **Pursuant to Cal. Comm. Code § 2313**
20   **(On Behalf of Plaintiff and the Class)**

21       69.    Plaintiff incorporates by reference the foregoing allegations as if fully set forth

22   herein.

23       70.    Pursuant to California Commercial Code § 2313, the sale of Defendant's software

24   was accompanied with an express warranty of merchantability created by affirmations of facts and

25   promises made by Symantec through its advertising, websites, and in-software representations.

26       71.    The express warranty of merchantability provided by Defendant included

27   affirmations of fact and promises that its software would truthfully identify and repair critical PC

28

CLASS ACTION COMPLAINT

15

1    errors, increase computer speed, performance and stability; protect against privacy risks; remove

2    harmful errors; and "clean up" hard drives. In actuality, Defendant fraudulently designed its

3    software to falsely identify and/or exaggerate the presence of harmful errors, and misrepresent the

4    overall "System Health" of the computer to induce consumers to purchase its products.

5        72.    Plaintiff and the Class relied upon these affirmations and promises when purchasing

6    Defendant's Scareware, and they formed the basis for the bargain, in that Plaintiff and the Class

7    believed that they were purchasing software that honestly and accurately fixed their computer

8    systems. But for Defendant's affirmations and promises, Plaintiff and the Class would not have

9    purchased the Scareware.

10       73.    Defendant breached its express warranties because its software did not perform any

11    real diagnostic test on Plaintiff's or the Class's computer systems, and instead artificially and

12    arbitrarily reported harmful computer errors and reported the computer's "System Health" was

13    "LOW."

14       74.    Defendant's breach injured Plaintiff and the Class because they purchased a product

15    of diminished value—software that does not actually perform the beneficial tasks represented to

16    them through Symantec's affirmations and promises about the utility of the software.

17       75.    By serving this Complaint, Plaintiff and the Class hereby give Defendant notice that

18    it has breached its express warranty of merchantability and request maximum damages as provided

19    by the California Commercial Code.

20                           **FOURTH CAUSE OF ACTION**
**Breach of Contract**
21                    **(On Behalf of Plaintiff and the Class)**

22       76.    Plaintiff incorporates by reference the foregoing allegations as if fully set forth

23    herein.

24       77.    Plaintiff and members of the Class entered into agreements with Defendant whereby

25    Defendant agreed to sell, and Plaintiff and the Class agreed to give the Defendant a fixed amount in

26    exchange for, software that would remove legitimate computer errors from Plaintiff's and the

27

28

CLASS ACTION COMPLAINT

1   Class's computers.

2      78.    Defendant expressly and/or impliedly agreed to provide Plaintiff and the Class a

3   product that would remove threats from their computer.

4      79.    Plaintiff and the Class paid, and Symantec accepted, the purchase price of the

5   software products at issue, and therefore performed their obligations under the contracts.

6      80.    Defendant breached the contract by providing Plaintiff and the Class with false

7   analysis about computer errors that did not exist in order to sell software products to Plaintiff and

8   the Class.

9      81.    Defendant further breached its contract with Plaintiff and the Class by providing

10  software that failed to offer the benefits promised, namely, improvements in performance, privacy

11  protection, and security.

12     82.    The aforementioned breaches of contract have proximately caused Plaintiff and the

13  Class economic injury and other damages, because they purchased a product that does not perform

14  as represented by Defendant.

15                          **FIFTH CAUSE OF ACTION**
                  **Breach of the Implied Covenant of Good Faith and Fair Dealing**
16                        **(On Behalf of Plaintiff and the Class)**

17     83.    Plaintiff incorporates by reference the foregoing allegations as if fully set forth

18  herein.

19     84.    In order to benefit from Defendant's supposed threat-removal software products,

20  Plaintiff and the Class affirmatively allowed Defendant's software to be installed on their

21  computers.

22     85.    Symantec's agreement to install software to diagnose and remove threats from

23  consumers' computers in exchange for fees is a valid and enforceable contract between Plaintiff and

24  the Class on the one hand, and Defendant on the other.

25     86.    Defendant breached the provisions of the agreement, specifically by not honoring its

26  responsibilities to perform truthful diagnostic and remedial operations.

27

28

CLASS ACTION COMPLAINT

17

87.    California contract law recognizes the implied covenant of good faith and fair dealing in every contract.

88.    Implicit in the Agreement, along with the explicit provisions, were contract provisions that prevented Defendant from engaging in conduct that frustrated or injured Plaintiff's and the Class's rights to receive the benefits of the Agreement.

89.    Furthermore, Defendant was under an implicit obligation to comply with California's Unfair Competition Law.

90.    Defendant has an affirmative obligation to honestly diagnose problems on consumers' computers and to honestly indicate whether problems exist. This obligation is a material term of the agreement. Defendant did not honor this obligation.

91.    Defendant breached the implied covenant of good faith and fair dealing by failing to honestly and accurately inform consumers about the true condition of their computers, and further by failing to fully comply with the proscriptions of applicable statutory law.

92.    Defendant's misconduct and breach of the implied covenant of good faith and fair dealing as described herein resulted in injury to Plaintiff and the Class in the form of price paid in excess of the Scareware's actual utility and/or money conferred on the Defendant by Plaintiff and the Class, in exchange for fully functional software, and knowingly and wrongfully retained by Defendant.

**SIXTH CAUSE OF ACTION**
**Unjust Enrichment (in the alternative to Breach of Contract)**
**(On Behalf of Plaintiff and the Class)**

93.    Plaintiff incorporates by reference Paragraphs 1-42 as if fully set forth herein.

94.    Count VI is expressly brought in the alternative to Count IV (breach of contract).

95.    Defendant has knowingly received and retained benefits from Plaintiff and the Class under circumstances that would render it unjust to allow Defendant to retain such benefits.

96.    By falsely informing Plaintiff and the Class that they needed to pay monies to repair problems that did not exist on their computers, Defendant knowingly received and appreciated benefits at the expense and to the detriment of Plaintiff and the Class.

CLASS ACTION COMPLAINT

97.     Defendant's receipt of monies from Plaintiff and the Class allowed it to utilize those monies for its own purposes, without expending resources to perform its obligations under the contract.

98.     Defendant appreciates or has knowledge of that benefit.

99.     Under principles of equity and good conscience, Defendant should not be permitted to retain the monies belonging to Plaintiff and the Class that they were paid and that Defendant unjustly received as a result of its misconduct alleged herein.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff James Gross, on behalf of himself and the Class, respectfully requests that this Court issue an order:

A.     Certifying this case as a class action on behalf of the Class defined above, appointing James Gross as class representative, and appointing their counsel as class counsel;

B.     Declaring that Defendant's actions, as set out above; violate California's Unfair Competition Law (Cal. Bus. & Prof. Code §§ 17200, *et seq.*);

C.     Award damages, including statutory and punitive damages where applicable, to Plaintiff and the Class in an amount to be determined at trial;

D.     Awarding injunctive and other equitable relief as is necessary to protect the interests of the Class and the Subclasses, including, *inter alia*: (i) an order prohibiting Symantec from engaging in the wrongful and unlawful acts described herein; and (ii) requiring Symantec to disclose and admit the wrongful and unlawful acts described herein and (iii) requiring Symantec to fully disclose the true nature of its software products and in the future;

E.     Award Plaintiff and the Class their reasonable litigation expenses and attorneys' fees;

F.     Award Plaintiff and the Class pre- and post-judgment interest, to the extent allowable;

G.     Enter such other injunctive and/or declaratory relief as is necessary to protect the

CLASS ACTION COMPLAINT

1 | interests of Plaintiff and the Class;

2 |      H.     Award such other and further relief as equity and justice may require.

3 | **DEMAND FOR JURY TRIAL**

4 |      Plaintiff demands a trial by jury for all issues so triable.

5 | Respectfully submitted,

6 | Dated: January 10, 2012

**JAMES GROSS**, individually and on behalf of all others similarly situated,

7 |

8 | By: /s/ Sean P. Reis
One of Plaintiff's Attorneys

9 |

10 | SEAN P. REIS - SBN 184044 (sreis@edelson.com)
EDELSON MCGUIRE, LLP

11 | 30021 Tomas Street, Suite 300
Rancho Santa Margarita, California 92688

12 | Telephone: (949) 459-2124
Facsimile: (949) 459-2123

13 | JAY EDELSON (jedelson@edelson.com)*
RAFEY S. BALABANIAN (rbalabanian@edelson.com)*

14 | ARI J. SCHARG (ascharg@edelson.com)*
BENJAMIN H. RICHMAN (brichman@edelson.com)*

15 | CHANDLER R. GIVENS (cgivens@edelson.com)*
EDELSON MCGUIRE, LLC

16 | 350 North LaSalle Street, Suite 1300
Chicago, Illinois 60654

17 | Telephone: (312) 589-6370
Facsimile: (312) 589-6378

18 |

19 | *Pro hac vice admission to be sought

20 |

21 |

22 |

23 |

24 |

25 |

26 |

27 |

28 |