1  SEAN P. REIS - SBN 184004 (sreis@edelson.com)
   EDELSON MCGUIRE, LLP
2  30021 Tomas Street, Suite 300
   Rancho Santa Margarita, California 92688
3  Telephone: (949) 459-2124
   Facsimile: (949) 459-2123
4
5  JAY EDELSON (jedelson@edelson.com)*
   RAFEY S. BALABANIAN (rbalabanian@edelson.com)*
6  ARI J. SCHARG (ascharg@edelson.com)*
   BENJAMIN H. RICHMAN (brichman@edelson.com)*
7  CHANDLER R. GIVENS (cgivens@edelson.com)*
   EDELSON MCGUIRE, LLC
8  350 North LaSalle Street, Suite 1300
   Chicago, Illinois 60654
9  Telephone: (312) 589-6370
   Facsimile: (312) 589-6378
10
   *Pro hac vice application to be filed
11
   ATTORNEYS FOR PLAINTIFF
12
                    UNITED STATES DISTRICT COURT
13
                 NORTHERN DISTRICT OF CALIFORNIA
14
                         SAN JOSE DIVISION
15
   JAMES GROSS, individually and on behalf of      Case No. CV 12-00154
16 all others similarly situated,
17                       Plaintiff,               PLAINTIFF'S MOTION FOR CLASS
                                                  CERTIFICATION
18 v.
19 SYMANTEC CORPORATION, a Delaware
20 corporation,                                   Date:  TBD
                                                  Time:  TBD
21                       Defendant.               Judge: TBD
                                                  Action Filed: January 10, 2012
22
23
24
25
26
27
28

PLAINTIFF'S MOTION FOR CLASS CERTIFICATION

1    relied upon them, and were damaged in the form of the monies Symantec charged and collected

2    from them as a result. Accordingly, and as discussed further below, the proposed class in this case

3    meets each of Rule 23's requirements for class certification and the instant motion should be

4    granted in its entirety.

5         **WHEREFORE**, Plaintiff James Gross, individually and on behalf of the proposed class,

6    respectfully requests that the Court (1) enter and reserve ruling on Plaintiff's Motion for Class

7    Certification; (2) allow for and schedule discovery to take place on class-wide issues; (3) grant

8    Plaintiff leave to file a memorandum in support of his Motion for Class Certification upon the

9    conclusion of class-wide discovery; (4) grant Plaintiff's Motion for Class Certification after full

10   briefing of the issues presented herein; and (5) provide all other and further relief that the Court

11   deems equitable and just.

12                                        Respectfully submitted,

13   Dated:  January 10, 2012            **JAMES GROSS**, individually and on behalf of all
                                         others similarly situated,
14

15                                       By:  ___/s/  Sean P. Reis_____
                                              One of Plaintiff's Attorneys
16

17   SEAN P. REIS - SBN 184004 (sreis@edelson.com)
     EDELSON MCGUIRE, LLP
18   30021 Tomas Street, Suite 300
     Rancho Santa Margarita, California 92688
19   Telephone: (949) 459-2124
     Facsimile: (949) 459-2123

20
     JAY EDELSON (jedelson@edelson.com)*
21   RAFEY S. BALABANIAN (rbalabanian@edelson.com)*
     BENJAMIN H. RICHMAN (brichman@edelson.com)*
22   CHANDLER R. GIVENS (cgivens@edelson.com)*
     EDELSON MCGUIRE, LLC
23   350 North LaSalle Street, Suite 1300
     Chicago, Illinois 60654
24   Telephone: (312) 589-6370
     Facsimile: (312) 589-6378

25
     *Pro hac vice application to be sought
26

27

28

PLAINTIFF'S MOTION                           2
FOR CLASS CERTIFICATION

## PLAINTIFF'S MOTION FOR CLASS CERTIFICATION

**I.     The Proposed Class.**

1.     Plaintiff seeks to certify this case as a class action on behalf of a class defined as follows:

> All individuals and entities in the United States and its territories that have purchased the following Symantec software:  PC Tools Registry Mechanic, PC Tools Performance Toolkit, and Norton Utilities.

Excluded from the Class are (1) Defendant, Defendant's agents, subsidiaries, parents, successors, predecessors, and any entity in which the Defendant or their parents have a controlling interest and their current and former employees, officers, and directors, (2) the Judge or Magistrate Judge to whom this case is assigned and the Judge's or Magistrate Judge's immediate family, (3) persons who execute and file a timely request for exclusion, (4) persons whose claims in this matter have been finally adjudicated on the merits or otherwise released, and (5) the legal representatives, successors, or assigns of any such excluded person.

**II.     Fed. R Civ. P. 23's Requirements for Certification.**

2.     In determining whether to certify a class, the Court does not inquire into the merits of the plaintiff's claims. *See Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 177 (1974). Instead, for purposes of considering a motion for class certification, the substantive allegations of the complaint are generally assumed to be true and it is also assumed that cognizable claims are stated. *See, e.g., United Steel, Paper & Forestry, Rubber, Mfg. Energy, Allied Indus. & Serv. Workers Int'l Union, AFL-CIO, CLC v. ConocoPhillips Co.*, 593 F.3d 802, 808 (9th Cir. 2010).

3.     A party seeking certification bears the burden of showing that the proposed class is ascertainable and meets each of the four requirements of Rule 23(a) and at least one requirement of Rule 23(b). *Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1186 (9th Cir. 2001), *amended by* 273 F.3d 1266 (9th Cir. 2001). Rule 23(a)'s four requisites to certification are (1) numerosity, (2) commonality, (3) typicality, and (4) adequacy of representation. Additionally, Rule 23(b)(3) requires that common questions of law or fact predominate and that maintaining the lawsuit as a class action is superior to other available methods of adjudication. *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 615 (1997). Fed. R. Civ. P. 23(b)(2) allows for certification where "the party

1  TO:  All parties and their counsel of record.

2  **PLEASE TAKE NOTICE THAT** on a date and at a time later set by the Court, Plaintiff

3  James Gross, by and through his undersigned counsel, will and hereby does respectfully move the

4  Court for an Order certifying this case as a class action pursuant to Federal Rules of Civil Procedure

5  23(b)(2) and (b)(3).

6  Even at this stage of the litigation, it is clear that Plaintiff's claims present a textbook case

7  for class certification:  Plaintiff and potentially thousands of other consumers like him were

8  subjected to Defendant Symantec Corporation's ("Symantec") common deceptive marketing and

9  misrepresentations made online and within its software products, and suffered injury in a nearly

10  identical manner as a result.

11  Symantec is one of the world's largest developers of computer security software, and also

12  sells a variety of products that it claims will increase the speed, performance, and stability of a

13  consumer's personal computer ("PC"); protect against privacy risks; remove harmful errors; and

14  "clean up" hard drives. Indeed, through its online marketing materials, Symantec represents that its

15  software is capable of detecting, reporting and repairing a range of PC errors, privacy threats, and

16  other computer problems; however, the software at issue in this case—Symantec's PC Tools

17  Registry Mechanic, PC Tools Performance Toolkit, and Norton Utilities (the "Scareware")—is

18  specifically designed to do anything but. Regardless of the actual health of a user's computer, the

19  Scareware invariably alerts users that harmful errors, privacy risks, and other problems exist on

20  their PC's. Thereafter, Symantec represents that the only way to remedy many of these conjured

21  errors and threats is to purchase a full version of the software. To the contrary, because no errors or

22  threats actually exist on the computer, the Scareware remedies nothing, has no actual utility and the

23  consumer gets nothing in return for their money.

24  Ultimately, regardless of the form they took, Symantec's representations to Plaintiff and the

25  proposed class regarding the utility of the Scareware were essentially the same: that the Scareware

26  would scan the user's PC, accurately report existing errors, and with the purchase of the full version

27  of the software, would repair those errors. Likewise, Plaintiff and each class member viewed those

28  misrepresentations, along with the Scareware's alerts regarding purported errors on their computers,

1    opposing the class has acted or refused to act on grounds that apply generally to the class, so that

2    final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a

3    whole." A plaintiff must affirmatively demonstrate compliance with Rule 23. *Wal-Mart Stores,*

4    *Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011).

5        4.    As shown below, the proposed class in this case satisfies each of Rule 23(a)'s

6    prerequisites and the requirements for certification under Rules 23(b)(2) and (b)(3).

7    **III.**     **The Proposed Class Satisfies Rule 23(a)'s Requirements.**

8        5.    The numerosity requisite is satisfied when "the class is so numerous that joinder of

9    all members is impracticable." Fed. R. Civ. P. 23(a)(1). There is no specific number required, nor

10   is the plaintiff required to state the exact number of class members. *Celano v. Marriott Int'l, Inc.*,

11   242 F.R.D. 544, 548 (N.D. Cal. 2007) (citing *In re Rubber Chems. Antitrust Litig.*, 232 F.R.D. 346,

12   350-51 (N.D. Cal. 2005)). Instead, numerosity is typically satisfied when the class is comprised of

13   40 or more members. *See id.* at 549; *see also Gay v. Waiters' & Dairy Lunchmen's Union*,

14   549 F.2d 1330, 1332-34 (9th Cir. 1977) (184 class members satisfies numerosity). Additionally, "a

15   court may rely on common sense assumptions to support findings of numerosity." *Alberto v.*

16   *GMRI, Inc.*, 252 F.R.D. 652, 660 (E.D. Cal. 2008) (citing *Manual for Complex Litig. (Fourth)*

17   § 23.22(3) (2008)); *see also* 3 *Alba Conte & Herbert B. Newberg, Newberg on Class Actions*

18   § 7.20, 66 (4th ed. 2001).

19       6.    In this case, the Court need not exercise its assumptive abilities, as Plaintiff

20   alleges—and discovery will show—that Symantec charged and collected fees for its Scareware

21   software from potentially thousands of consumers that fall within the class definition. (Compl. ¶¶ 5,

22   41.) Accordingly, the proposed class satisfies the numerosity requirement. *See Newberg on Class*

23   *Actions* § 3:5, 243-46 ("Class actions under the amended Rule 23 have frequently involved classes

24   numbering in the hundreds, or thousands . . . In such cases, the impracticability of bringing all class

25   members before the court has been obvious, and the Rule 23(a)(1) requirement has been easily

26   met.")

27       7.    The second threshold to certification under Rule 23(a) requires that "there are

28   questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). Commonality is present

1 | where a common nucleus of operative fact exists, even if as to one question of law or fact, and has
2 | often been found to require very little. *In re First Alliance Mortgage Co.*, 471 F.3d 977, 990-91 (9th
3 | Cir. 2006); *see also In re Static Random Access memory (SRAM) Antitrust Litig.*, 264 F.R.D. 603,
4 | 611 (N.D. Cal. 2009). Ultimately, "[w]hat matters to class certification . . . is not the raising of
5 | common 'questions'—even in droves—but, rather the capacity of a classwide proceeding to
6 | generate common *answers* apt to drive the resolution of the litigation." *Dukes*, 131 S. Ct. at 2551
7 | (citing Richard A. Nagareda, *Class Certification in the Age of Aggregate Proof*, 84 N.Y.U. L. Rev.
8 | 97, 131-132 (2009)); *see also In re Static Random Access memory Antitrust Litig.*, 246 F.R.D. at
9 | 611 ("When common questions present a significant aspect of the case and they can be resolved for
10 | all members of the class in a single adjudication, there is clear justification for handling the dispute
11 | on a representative rather than an individual basis.")

12 |      8.     As alleged in this case, all members of the proposed class share common questions
13 | of fact that predominate over issues affecting only individual members of the class. Those common
14 | factual issues for the class include: (1) whether Symantec intentionally designed the Scareware to
15 | report false positives, and (2) whether Symantec charged and collected from them fees related to the
16 | purchase of the Scareware.

17 |      9.     Those common factual questions lead to several legal questions common to the
18 | class, including: (1) whether Symantec has breached its express warranties; (2) whether Symantec's
19 | conduct constitutes a violation of California's Unfair Competition Law (Cal. Bus. & Prof. Code
20 | §§ 17200, *et seq.*);  (3) whether Defendant's conduct constitutes fraudulent inducement; (4) whether
21 | Defendant's conduct constitutes a breach of contract; and, (5) whether Defendant unjustly received
22 | and/or continues to receive money as a result of its unlawful conduct. Accordingly, the
23 | commonality requirement is met.

24 |      10.    Rule 23 next requires that Plaintiff's claims be typical of those of the class. Fed. R.
25 | Civ. P. 23(a)(3). Typicality "does not mean that the claims of the class representative[s] must be
26 | identical or substantially identical to those of the absent class members." 5 Herbert B. Newberg &
27 | Alba Conte, *Newberg on Class Actions,* § 24.25 (3d ed. 1992); *see also Armstrong v. Davis*, 275
28 | F.3d 849, 869 (9th Cir. 2001). Indeed, the existence of factual differences will not preclude a

1   finding of typicality; the claims of a named plaintiff need only share the same essential

2   characteristics as those of the class, "they need not be substantially identical." *Hanlon*, 150 F.3d at

3   1020. The test is whether other class members have the same or similar injury and whether the

4   action is based on conduct that is not unique to the named plaintiffs. *Hanon v. Dataproducts Corp.*,

5   976 F.2d 497, 508 (9th Cir.1992) (internal quotation omitted); *Newberg on Class Actions* § 3:13 at

6   327 (4th ed.).

7         11.    Moreover, the typicality requirement is closely related to the commonality

8   requirement. *Cole v. Asurion Corp.*, 267 F.R.D. 322, 326 (C.D. Cal. 2010). Thus, as in this case, "a

9   finding of commonality will ordinarily support a finding of typicality." *Barefield v. Chevron*

10  *U.S.A., Inc.*, No. C 86-2427 TEH, 1987 WL 65054, *5 (N.D. Cal. Sept. 9, 1987).

11        12.    Here, Plaintiff Gross and the proposed class suffered from a common course of

12  conduct. That is, Symantec misrepresented the utility of its Scareware to Plaintiff and the proposed

13  class, intentionally designed its Scareware to misrepresent to them the health of their computers,

14  and, induced them to remit payment for the full version of the software despite the knowledge that

15  it has very little (if any) actual utility. (Compl. ¶¶ 4, 41, 51, 59.) As a result of Symantec's conduct,

16  Plaintiff and the proposed class were damaged in a nearly identical manner; namely, in the form of

17  the monies Symantec collected from them for the purchase of the full version of the Scareware.

18  (Compl. ¶¶ 1, 5, 18, 41, 52, 59.) Accordingly, by pursuing his own claims, Plaintiff will necessarily

19  advance the interests of the proposed class in satisfaction of Rule 23(a)(3)'s typicality requirement.

20        13.    The final Rule 23(a) prerequisite requires that a proposed class representative "fairly

21  and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). In this case, Plaintiff has

22  the same interests as the other members of the proposed class—he and each class member were

23  deceived into purchasing one or more full versions of Symantec's Scareware and have lost money

24  in the form of the fees Symantec charged and collected from them as a result. (Compl. ¶¶ 35-42, 48,

25  52, 59, 66, 74, 82, 92, 99.) Plaintiff has no interests antagonistic to the interests of the proposed

26  class. (Compl. ¶ 38.) Therefore, Plaintiff will fairly and adequately protect the interests of the class

27  and his pursuit of the instant action demonstrates as much.

28        14.    Moreover, Plaintiff's counsel are well respected members of the legal community,

1    have regularly engaged in major complex litigation, and have had extensive experience in consumer

2    class actions involving similar issues that were of similar size, scope, and complexity as the present

3    case. (Compl. ¶ 38; *see also* Firm Resume of Edelson McGuire LLC, a true and accurate copy of

4    which is attached as Exhibit 1-A to the Declaration of Benjamin H. Richman, filed concurrently

5    herewith). Accordingly, both Plaintiff and his counsel will adequately represent the proposed class

6    and Rule 23(a)'s final requisite to class certification is met.

7    **IV.**    **The Proposed Class Satisfies Rule 23(b)(2) and (b)(3)'s Requirements.**

8           15.    Once the subsection (a) prerequisites are satisfied, a plaintiff seeking certification

9    under Rule 23(b)(2) or 23(b)(3) must satisfy several additional requirements. Rule 23(b)(2)

10   provides that the party opposing certification must have acted or failed to act on grounds generally

11   applicable to the proposed class, "so that final injunctive relief or corresponding declaratory relief is

12   appropriate . . . ." Fed. R. Civ. P. 23(b)(2); *see also Bateman v. Am. Multi-Cinema, Inc.*, 623 F.3d

13   708, 712 (9th Cir. 2010).

14          16.    In this case, Symantec systematically promoted its Scareware through false and

15   misleading online advertisements and misrepresentations regarding the utility of the Scareware on

16   its own websites. (Compl. ¶¶ 3, 20, 31, 48, 49, 59, 71, 78, 86.) Further, Symantec intentionally

17   designed the Scareware to falsely report the existence of harmful errors and threats on consumer's

18   PCs, thereby inducing them to purchase the full version of the software to remedy the purported

19   errors. (Compl. ¶¶ 3, 24, 25, 32, 33, 49, 51, 59, 65, 73, 80, 91, 96.) Regardless of the actual form

20   they took, each of the misrepresentations Symantec made to the proposed class were essentially the

21   same:  they falsely represented that the Scareware would accurately detect, report and remedy

22   harmful errors and threats on a user's PC, when in fact, it would not. (Compl. ¶¶ 22, 49, 59, 71, 77.)

23   Plaintiff and each member of the proposed class viewed and relied upon those representations and

24   were damaged in the form of the fees they paid to Symantec as a result. (Compl. ¶¶ 32, 51, 63, 65,

25   72.) Thus, Symantec acted on grounds generally applicable to the class as a whole, making final

26   injunctive relief necessary to protect Plaintiff and the proposed class from such conduct in the

27   future, and satisfying the requirements of Rule 23(b)(2).

28          17.    Rule 23(b)(3) provides that a class action may be maintained where the questions of

law and fact common to members of the proposed class predominate over any questions affecting only individual members. Fed. R. Civ. P 23(b)(3); *Pierce v. County of Orange*, 519 F.3d 985, 991 n. 5 (9th Cir. 2008); *see also Amchem*, 521 U.S. at 617. "When common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication, there is clear justification for handling the dispute on a representative rather than an individual basis." *Hanlon*, 150 F.3d at 1022; *see also United Steel*, 593 F.3d at 808-09. In this case, the claims of Plaintiff and the proposed class all arise from Symantec's standardized design, promotion and marketing of the Scareware to the class, which resulted in Symantec charging and collecting fees from Plaintiff and the class in precisely the same manner, thereby entitling each of them to a nearly identical calculation of easily ascertainable damages. As such, the common questions at issue in this case clearly predominate over any individual issues that may exist.

18.     Rule 23(b)(3) further requires that the class action mechanism be superior to the other available methods for the fair and efficient adjudication of the controversy. The superiority requirement's purpose is one of judicial economy and assures that a class action is the "most efficient and effective means of resolving the controversy." *Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168, 1175-76 (9th Cir. 2010). "Where recovery on an individual basis would be dwarfed by the cost of litigating on an individual basis, this factor weighs in favor of class certification." *Id.*

19.     The instant class action is superior to other available methods for the fair and efficient adjudication of the claims of Plaintiff and the class. The injuries suffered by individual class members are likely to have been relatively small compared to the burden and expense of individual prosecution of the litigation necessitated by Symantec's conduct. Thus, absent a class action, it would be difficult, if not impossible, for the individual members of the class to obtain effective relief. Maintenance of this case as a class action is also superior to other available methods because it would avoid the necessity for multiple adjudications of identical legal and factual issues, thereby reducing the burden on the judiciary.

20.     For the reasons stated above, and which will be borne out by class discovery, this case is appropriate for class certification. Plaintiff hereby requests that the Court reserve its ruling

1   on the instant motion and allow for and schedule discovery to take place on class-wide issues, at the

2   conclusion of which, Plaintiff will file a fulsome memorandum in support of this motion detailing

3   the appropriateness of class certification and asking the Court to rule at that time.[1]

4   **WHEREFORE**, Plaintiff James Gross, individually and on behalf of the proposed class,

5   respectfully requests that the Court (1) enter and reserve ruling on Plaintiff's Motion for Class

6   Certification; (2) allow for and schedule discovery to take place on class-wide issues; (3) grant

7   Plaintiff leave to file a memorandum in support of her Motion for Class Certification upon the

8   conclusion of class-wide discovery; (4) grant Plaintiff's Motion for Class Certification after full

9   briefing of the issues presented herein; and (5) provide all other and further relief that the Court

10  deems equitable and just.

Respectfully submitted,

11

12  Dated:  January 10, 2012                    **JAMES GROSS**, individually and on behalf of all
                                                others similarly situated,
13

14                                              By:    /s/  Sean P. Reis
                                                       One of Plaintiff's Attorneys
15

16  SEAN P. REIS – SBN 184004 (sreis@edelson.com)
    EDELSON MCGUIRE, LLP
17  30021 Tomas Street, Suite 300
    Rancho Santa Margarita, California 92688
18  Telephone: (949) 459-2124
    Facsimile: (949) 459-2123

19  JAY EDELSON (jedelson@edelson.com)*
    RAFEY S. BALABANIAN (rbalabanian@edelson.com)*
20  ARI J. SCHARG (ascharg@edelson.com)*
    BENJAMIN H. RICHMAN (brichman@edelson.com)*
21  CHANDLER R. GIVENS (cgivens@edelson.com)*
    EDELSON MCGUIRE, LLC
22  350 North LaSalle Street, Suite 1300
    Chicago, Illinois 60654
23  Telephone: (312) 589-6370
    Facsimile: (312) 589-6378
24
    *Pro hac vice admission to be sought
25

26  [1]     Plaintiff reserves the right to amend the definition of the proposed class at the conclusion of
    class-wide discovery.
27

28

PLAINTIFF'S MOTION                           9
FOR CLASS CERTIFICATION

# Exhibit 1

SEAN P. REIS - SBN 184044 (sreis@edelson.com)
EDELSON MCGUIRE, LLP
30021 Tomas Street, Suite 300
Rancho Santa Margarita, California 92688
Telephone: (949) 459-2124
Facsimile: (949) 459-2123

JAY EDELSON (jedelson@edelson.com)*
RAFEY S. BALABANIAN (rbalabanian@edelson.com)*
ARI J. SCHARG (ascharg@edelson.com)*
BENJAMIN H. RICHMAN (brichman@edelson.com)*
CHANDLER R. GIVENS (cgivens@edelson.com)*
EDELSON MCGUIRE, LLC
350 North LaSalle Street, Suite 1300
Chicago, Illinois 60654
Telephone: (312) 589-6370
Facsimile: (312) 589-6378

*Pro hac vice admission to be sought

ATTORNEYS FOR PLAINTIFF

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN JOSE DIVISION

| | |
|---|---|
| JAMES GROSS, individually and on behalf of all others similarly situated, <br><br> *Plaintiff,* <br><br> v. <br><br> SYMANTEC CORPORATION, a Delaware corporation, <br><br> *Defendant.* | Case No. <br><br> **DECLARATION OF BENJAMIN H. RICHMAN IN SUPPORT OF PLAINTIFF'S MOTION FOR CLASS CERTIFICATION** <br><br> Date: TBD <br> Time: TBD <br> Judge: TBD <br> Action Filed: January 10, 2012 |

DECLARATION OF BENJAMIN H. RICHMAN

## DECLARATION OF BENJAMIN H. RICHMAN

Pursuant to 28 U.S.C. § 1746, I hereby declare and state as follows:

1.      I am over the age of eighteen and am fully competent to make this declaration.  I make this declaration based upon personal knowledge unless otherwise indicated.

2.      I am an attorney at the law firm of Edelson McGuire LLC, which has been retained to represent the named Plaintiff in this matter, James Gross.

3.      Attached hereto as Exhibit 1-A is a true and accurate copy of the firm resume of Edelson McGuire LLC.

4.      As shown in Exhibit 1-A, Edelson McGuire focuses its practice on the prosecution of consumer class actions and complex litigation, and has experience prosecuting class actions of similar nature, scope, and complexity to the instant case.

5.      Edelson McGuire and its attorneys have been appointed Class Counsel in numerous class actions throughout the country.

6.      To date, Edelson McGuire and its attorneys have diligently investigated, prosecuted, and dedicated substantial resources to the claims in this matter, and will continue to do so throughout its pendency.

I declare under penalty of perjury that the foregoing is true and correct. Executed January 10, 2012 at Chicago, Illinois.

/s/ Benjamin H. Richman

# Exhibit 1-A

# EDELSON MCGUIRE, LLC FIRM RESUME

EDELSON MCGUIRE, LLC is a commercial litigation and legal consulting firm with attorneys in Illinois, Florida, New York, Colorado and California. The firm has several primary practice groups: plaintiffs' class action litigation (with a particular emphasis on technology cases), e-discovery and information technology, general commercial litigation and legal and political consulting.

Our attorneys have been recognized as leaders in these fields by state and federal legislatures, national and international media groups, the courts, and our peers. Our reputation for leadership in class action litigation has led state and federal courts to appoint us lead counsel in many high-profile class action suits, including the recent Thomas the Tank Engine lead paint class actions, the AT&T mobile content class actions, the home equity credit reduction cases, and privacy class actions involving T-Mobile, Facebook, and Netflix. We have testified before the United States Senate on class action issues and have repeatedly been asked to work on federal and state legislation involving cellular telephony, privacy and other issues. Our attorneys have appeared on dozens of national and international television and radio programs to discuss our cases and class action and consumer protection issues more generally. Our attorneys speak regularly at seminars on consumer protection and class action issues, lecture on class actions at law schools and are asked to serve as testifying experts in cases involving class action and consumer issues.

## PLAINTIFFS' CLASS AND MASS ACTION PRACTICE GROUP

EDELSON MCGUIRE is a leader in plaintiffs' class and mass action litigation, with a particular emphasis on technology class actions, and has been called a "class action 'super firm'" by a national organization. (Decalogue Society of Lawyers, Spring 2010.) As has been recognized by federal courts, our firm has an "extensive histor[y] of experience in complex class action litigation, and [is a] well-respected law firm[] in the plaintiffs' class action bar." *In re Pet Food Prod. Liab. Litig.*, MDL Dkt. No. 1850, No. 07-2867 (NLH) (D.N.J. Nov. 18, 2008). A leading arbitrator concurred: "The proof of [the firm's] experience, reputation, and abilities is extraordinary. . . . Each [of their cases] elaborates on the experience and unique success [they] have had in achieving leading roles in the area of 'technology consumer protection class actions.'" (Arbitration award in mobile content class action settlement, August 6, 2009) In appointing Edelson McGuire interim co-lead in one of the most high profile cases in the country, a federal court pointed to our ability to be "vigorous advocates, constructive problem-solvers, and civil with their adversaries." -In Re JPMorgan Chase Home Equity Line of Credit Litig., No. 10 C 3647 (N.D.Ill, July 16, 2010).

We have been specifically recognized as "pioneers in the electronic privacy class action field, having litigated some of the largest consumer class actions in the country on this issue." *In re Facebook Privacy Litig.*, No. C 10-02389 (N.D.Cal) (order appointing Edelson McGuire interim co-lead of privacy class action); see also In re Netflix Privacy Litigation, 5:11-cv-00379 (N.D.Cal. Aug. 12, 2011) (appointing Edelson McGuire sole lead counsel due, in part, to its "significant and particularly specialized expertise in electronic privacy litigation and class actions[.]")

We have several sub-specialties within our plaintiffs' class and mass action practice group:

**Consumer Technology Class Actions**:  We have established the key precedent under the Telephone Consumer Protection Act concerning text message spa, resulting in a $16,000,000 with 20th Century Fox, a $10,000,000 settlement with Simon & Schuster and a $7,000,000 settlement with Timberland Co.  We have prosecuted over 100 cases involving mobile content, settling numerous nationwide class actions, including against industry leader AT&T Mobility, collectively worth over a hundred million dollars.

**Representative Settlements:**

- *McFerren v. AT&T Mobility, LLC*, No. 08-CV-151322 (Fulton County Sup. Ct., GA): Lead counsel class action settlement involving 16 related cases against largest wireless service provider in the nation.  "No cap" settlement provided virtually full refunds to a nationwide class of consumers who alleged that unauthorized charges for mobile content were placed on their cell phone bills.

- *Paluzzi v. Cellco Partnership*, No. 07 CH 37213 (Cook County, Illinois): Lead counsel in class action settlement involving 27 related cases alleging unauthorized mobile content charges.  Case settled for $36 million.

- *Lozano v. 20th Century Fox,* No. 09-cv-05344 (N.D.Ill): Lead counsel in class action alleging that defendants violated federal law by sending unsolicited text messages to cellular telephones of consumers.  Case settled for $16,000,000.

- *Gray v. Mobile Messenger Americas, Inc.*, No. 08-CV-61089 (S.D. Fla.): Lead counsel in case alleging unauthorized charges were placed on cell phone bills.  Case settled for $12,000,000.

- *Parone v. m-Qube, Inc.* No. 08 CH 15834 (Cook County, Illinois):  Lead counsel in class action settlement involving over 2 dozen cases alleging the imposition of unauthorized mobile content charges.  Case settled for $12,254,000.

- *Satterfield v. Simon & Schuster*, No. C 06 2893 CW (N.D. Cal.).  Co-lead counsel in class action alleging that defendants violated federal law by sending unsolicited text messages to cellular telephones of consumers. Case settled for $10,000,000.

- *Williams, et al. v. Motricity, Inc. et al.*, Case No. 09 CH 19089 (Cook County, Illinois):  Lead counsel in class action settlement involving 24 cases alleging the imposition of unauthorized mobile content charges. Case settled for $9,000,000.

- *VanDyke v. Media Breakaway, LLC*, No. 08 CV 22131 (S.D. Fla.):  Lead counsel in class action settlement alleging unauthorized mobile content

charges.  Case settled for $7,600,000.

- *Weinstein, et al. v. Airit2me, Inc.*, Case No. 06 C 0484 (N.D. Ill): Co-lead counsel in class action alleging that defendants violated federal law by sending unsolicited text messages to cellular telephones of consumers. Case settled for $7,000,000.

- *Gresham v. Cellco Partnership*, No. BC 387729 (Los Angeles Sup. Ct.): Lead counsel in case alleging unauthorized charges were placed on cell phone bills.  Settlement provided class members with full refunds.

- *Duffy v. Nevis Mobile, LLC*, No. 08 CH 21376 (Cir. Ct. Cook County, IL): Class counsel in certified class action against mobile content provider for unauthorized mobile content charges resulting in default judgment over $10,000,000.

- *Zurakov v. Register.com*, No. 01-600703 (New York County, NY):  Co-lead counsel in a class action brought on behalf of an international class of over one million members against Register.com for its deceptive practices in registering Internet domain names.  Settlement required Register.com to fully disclose its practices and provided the class with relief valued in excess of $17,000,000.

***Privacy/Data Loss Class Actions***:  We have litigated numerous class actions involving issues of first impression against Facebook, Apple, Netflix, Sony, Red Box, Pandora, Sears, Storm 8, Google, T-Mobile, Microsoft and others involving the failure to protect customers' private information, some resulting from security breaches.

### Representative Cases:

- *In re Facebook Privacy Litigation,* 10-cv-02389 (N.D. Cal.):  Co-lead counsel in suit alleging that Facebook unlawfully shared its users' sensitive personally identifiable information with Facebook's advertising partners.

- *In re Netflix Privacy Litigation,* 5:11-cv-00379 (N.D.Cal.):  Sole lead counsel in suit alleging that defendant violated the Video Privacy Protection Act  by illegally retaining customer viewing information.

- *In re Zynga Privacy Litigation,* 10-cv-04680 (N.D. Cal.):  Co-lead counsel in suit against gaming application designer for the alleged unlawful disclosure of its users' personally identifiable information to advertisers and other third parties.

- *Gaos v. Google,* 10-cv-04809 (N.D. Cal.):  Part of a team of attorneys in suit alleging that Google unlawfully disclosed its users' search queries to website owners and other third parties.

- *In re Sidekick Litig. ,* No. C 09-04854-JW (N.D. Cal.):  Co-lead counsel in

cloud computing data loss case against T-Mobile and Microsoft. Settlement provided the class with potential settlement benefits valued at over $12 million.

- *Abrams v. Facebook, Inc.*, No. 07-05378 (N.D. Cal.): Lead counsel in injunctive settlement concerning the transmission of allegedly unauthorized mobile content.

- *Desantis v. Sears*, 08 CH 00448 (Cook Cty): Lead counsel in injunctive settlement alleging national retailer allowed purchase information to be publicly available through the internet.

**Products Liability Class Actions**: We have been appointed lead counsel in state and federal products liability class settlements, including a $30,000,000 settlement resolving the "Thomas the Tank Engine" lead paint recall cases and a $32,000,000 settlement involving the largest pet food recall in the history of the United States and Canada.

**Representative Settlements:**

- *Barrett v. RC2 Corp.*, No. 07 CH 20924 (Cir. Ct. Cook County, IL): Co-lead counsel in lead paint recall case involving Thomas the Tank toy trains. Settlement is valued at over $30,000,000 and provides class with full cash refunds and reimbursement of certain costs related to blood testing.

- *In re Pet Food Products Liability Litig.*, No. 07-2867 (D. N.J.): Part of mfirst supreme st ediation team in class action involving largest pet food recall in United States history. Settlement provided $24,000,000 common fund and $8,000,000 in charge backs.

**Banking Class Actions**: Edelson McGuire has been at the forefront of class action litigation arising in the aftermath of the federal bailouts of the banks. Its suits include claims that the certain banks unlawfully suspended home credit lines based on pre-textual reasons, and that certain banks have failed to honor loan modification programs.

**Representative Cases:**

- *In re JP Morgan Chase Bank Home Equity Line of Credit Litig.*, 10-cv-3647 (N.D. Ill.): Court appointed interim co-lead counsel in nationwide putative class action alleging illegal suspensions of home credit lines.

- *Levin v. Citibank, N.A.,* C-09-0350 MMC (N.D. Cal.): Court appointed interim co-lead counsel in nationwide putative class action alleging illegal suspensions of home credit lines.

- Testified or slated to testify at town halls and/or state hearings in Florida and California on banks' suspensions of home credit lines.

- Settled numerous consumer class actions alleging fraud or other unconscionable behavior by banks and other lenders.

***General Consumer Protection Class Actions:***   We have successfully prosecuted countless class action suits against health clubs, dating agencies, phone companies, debt collectors, and other businesses on behalf of consumers.

**Representative Settlements:**

- *Pulcini v. Bally Total Fitness Corp.*, No. 05 CH 10649 (Cir. Ct. Cook County, IL): Co-lead counsel in four class action lawsuits brought against two health clubs and three debt collection companies. A global settlement provided the class with over $40,000,000 in benefits, including cash payments, debt relief, and free health club services.

- *Kozubik v. Capital Fitness, Inc.*, 04 CH 627 (Cir. Ct. Cook County, IL): Co-lead counsel in state-wide suit against a leading health club chain, which settled in 2004, providing the over 150,000 class members with between $11,000,000 and $14,000,000 in benefits, consisting of cash refunds, full debt relief, and months of free health club membership.

- *Kim v. Riscuity*, No. 06 C 01585 (N.D. Ill): Co-lead counsel in suit against a debt collection company accused of attempting to collect on illegal contracts. The case settled in 2007, providing the class with full debt relief and return of all money collected.

- *Jones v. TrueLogic Financial Corp.*, No. 05 C 5937 (N.D. Ill): Co-lead counsel in suit against two debt collectors accused of attempting to collect on illegal contracts. The case settled in 2007, providing the class with approximately $2,000,000 in debt relief.

- *Fertelmeyster v. Match.com*, No. 02 CH 11534 (Cir. Ct. Cook County, IL): Co-lead counsel in a state-wide class action suit brought under Illinois consumer protection statutes. The settlement provided the class with a collective award with a face value in excess of $3,000,000.

- *Cioe v. Yahoo!, Inc.*, No. 02 CH 21458 (Cir. Ct. Cook County, IL): Co-lead counsel in a state-wide class action suit brought under state consumer protection statutes. The settlement provided the class with a collective award with a face value between $1,600,000 and $4,800,000.

***Insurance Class Actions:***   We have prosecuted and settled multi-million dollar suits against J.C. Penney Life Insurance for allegedly illegally denying life insurance benefits under an unenforceable policy exclusion and against a Wisconsin insurance company for terminating the health insurance policies of groups of self-insureds.

**Representative Settlements:**

- *Holloway v. J.C. Penney*, No. 97 C 4555, (N.D. Ill.):  One of the primary attorneys in a multi-state class action suit alleging that the defendant illegally denied life insurance benefits to the class.  The case settled in or around December of 2000, resulting in a multi-million dollar cash award to the class.

- *Ramlow v. Family Health Plan* (Wisc. Cir. Ct., WI):  Co-lead counsel in a class action suit challenging defendant's termination of health insurance to groups of self-insureds.  The plaintiff won a temporary injunction, which was sustained on appeal, prohibiting such termination and eventually settled the case ensuring that each class member would remain insured.

***Mass/Class Tort Cases***:  Our attorneys were part of a team of lawyers representing a group of public housing residents in a suit based upon contamination related injuries, a group of employees exposed to second hand smoke on a riverboat casino, and a class of individuals suing a hospital and national association of blood banks for failure to warn of risks related to blood transfusions.

**Representative Cases:**

- *Aaron v. Chicago Housing Authority,* 99 L 11738, (Cir. Ct. Cook County, IL):  Part of team representing a group of public housing residents bringing suit over contamination-related injuries.  Case settled on a mass basis for over $10,000,000.

- *Januszewski v. Horseshoe Hammond*, No. 2:00CV352JM (N.D. Ind.):  Part of team of attorneys in mass suit alleging that defendant riverboat casino caused injuries to its employees arising from exposure to second-hand smoke.

The firm's cases regularly receive attention from local, national, and international media.  Our cases and attorneys have been reported in the Chicago Tribune, USA Today, the Wall Street Journal, the New York Times, the LA Times, by the Reuters and UPI news services, and BBC International.  Our attorneys have appeared on numerous national television and radio programs, including ABC World News, CNN, Fox News, NPR, and CBS Radio, as well as television and radio programs outside of the United States.   We have also been called upon to give congressional testimony and other assistance in hearings involving our cases.

## GENERAL COMMERCIAL LITIGATION

Our attorneys have handled a wide range of general commercial litigation matters, from partnership and business-to-business disputes, to litigation involving corporate takeovers.  We have handled cases involving tens of thousands of dollars to "bet the company" cases involving up to hundreds of millions of dollars. Our attorneys have collectively tried hundreds of cases, as well as scores of arbitrations and mediations.  All of our attorneys have regularly practiced in

state and federal trial and appellate courts.

## E-DISCOVERY AND INFORMATION TECHNOLOGY

Led by nationally-recognized eDiscovery expert Steven Teppler, our firm has taken the lead on eDiscovery issues including data protection, information technology, document management and retrieval, loss or destruction of information, and authentication and admissibility issues uniquely inherent to computer generated information. This includes spoliation allegations arising from acts of unauthorized or illegal data manipulation or alteration.

## LEGAL AND POLITICAL CONSULTING

Legal and political consulting is an area of practice that sets EDELSON MCGUIRE apart from other law firms. The firm advises on governmental and consumer issues and has helped its clients formulate business and legislative strategies, revise contractual and advertising material, and implement consumer protection strategies more generally. Our clients range from small Internet start-ups, to bricks and mortar companies, to one of the most trafficked Internet marketers, content and commerce firms in the country.

## OUR ATTORNEYS

**JAY EDELSON** is the founder and Managing Partner of Edelson McGuire. He has been recognized as a leader in class actions, technology law, corporate compliance issues and consumer advocacy by his peers, the media, state and federal legislators, academia and courts throughout the country.

Jay has been appointed lead counsel in numerous state, federal, and international class actions, resulting in hundreds of millions of dollars for his clients. He is regularly asked to weigh in on federal and state legislation involving his cases. He testified to the U.S. Senate about the largest pet food recall in the country's history and is advising state and federal politicians on consumer issues relating to the recent federal bailouts, as well as technology issues, such as those involving mobile marketing. Jay also counsels companies on legal compliance and legislative issues in addition to handling all types of complex commercial litigation.

Jay has litigated class actions that have established precedent concerning the ownership rights of domain name registrants, the applicability of consumer protection statutes to Internet businesses, and the interpretation of numerous other state and federal statutes including the Telephone Consumer Protection Act and the Video Privacy Protection Act. As lead counsel, he has also secured settlement in cases of first impression involving Facebook, Microsoft, AT&T and countless others, collectively worth hundreds of millions of dollars.

In addition to technology based litigation, Jay has been involved in a number of high-profile "mass tort" class actions and product recall cases, including cases against Menu Foods for selling contaminated pet food, a $30 million class action settlement involving the Thomas the Tank toy train recall, and suits involving damages arising from second-hand smoke.

In 2009, Jay was named one of the top 40 Illinois attorneys under 40 by the Chicago Daily Law

Bulletin. In giving Jay that award, he was heralded for his history of bringing and winning landmark cases and for his "reputation for integrity" in the "rough and tumble class action arena." In the same award, he was called "one of the best in the country" when it "comes to legal strategy and execution." Also in 2009, Jay was included in the American Bar Association's "24 hours of Legal Rebels" program, where he was dubbed one of "the most creative minds in the legal profession" for his views of associate training and firm management. In 2010, he was presented with the Annual Humanitarian Award in recognition of his "personal integrity, professional achievements, and charitable contributions" by the Hope Presbyterian Church.

Jay is frequently asked to participate in legal seminars and discussions regarding the cases he is prosecuting, including serving as panelist on national symposium on tort reform and, separately, serving as a panelist on litigating high-profile cases. He has also appeared on dozens of television and radio programs to discuss his cases. He has taught classes on class action law at Northwestern Law School and The John Marshall Law School, and has co-chaired a 2-day national symposium on class action issues. He has been an adjunct professor, teaching a seminar on class action litigation at Chicago-Kent College of Law since 2010.

Jay is a graduate of Brandeis University and the University of Michigan Law School.

**MYLES MCGUIRE** is a Partner at EDELSON MCGUIRE. His practice concentrates on consumer protection law, class actions, and legal and political consulting to technology companies. Prior to entering private practice, Myles spent several years operating an Internet advertising company, which was later sold, in addition to counseling high-tech companies on legal issues.

Since turning to plaintiffs' advocacy, Myles has had principle control over many nationwide and multi-state class actions. Drawing on his technological background, his specific area of emphasis is on emerging technology class actions, including those involving electronic commerce, cellular telephony and wireless media, among others. He has served in leadership positions in groundbreaking settlements involving Facebook, Verizon, Sprint, and T-Mobile.

Due to his diverse legal and business expertise, Myles has been asked by members of Congress to comment on proposed legislation in the mobile content industry and has worked with state regulatory bodies in related efforts.

Myles graduated from Marquette University Law School in 2000 and is admitted to practice in Wisconsin and Illinois. He is a member of the National Association of Consumer Advocates and the Chicago Bar Association.

**RYAN D. ANDREWS** is a Partner and Group Chair at EDELSON MCGUIRE. He has been appointed class counsel in multiple complex high-stakes class actions, and actively involved in the litigation and settlement of class actions focused on the mobile content industry and Internet privacy.

Prior to joining the firm, Ryan engaged in all aspects of the prosecution and defense of claims on behalf of individual and corporate clients, including motion practice, arbitration, mediation, trial to verdict, and appeals.

Ryan received his J.D. with High Honors from the Chicago-Kent College of Law in 2005 and

was named *Order of the Coif*. While in law school, Ryan was a Notes & Comments Editor for THE CHICAGO-KENT LAW REVIEW, as well as a teaching assistant for both Property Law and Legal Writing courses. Ryan externed for the Honorable Joan B. Gottschall in the Northern District of Illinois, and earned CALI awards for the highest grade in five classes.

Ryan graduated from the University of Michigan in 2002, earning his B.A., *with distinction*, in Political Science and Communications.

**RAFEY S. BALABANIAN** is a Partner and Group Chair at EDELSON MCGUIRE. Rafey focuses his practice on prosecuting consumer technology class actions, banking class actions, and general consumer class actions. He is also co-chair of Edelson McGuire's business litigation group.

On the plaintiff's side, Rafey has been the court appointed lead counsel in numerous high-stakes class action litigation and has obtained settlements in excess of $50 million.

On the business litigation side, Rafey has represented individual and corporate clients in a wide variety of complex cases, including commercial disputes seeking damages of $60 million and several "bet the company" cases.

Rafey has first-chaired both jury and bench trials, engaged in extensive motion practice, and acted as lead counsel in several mediations and arbitrations.

Rafey received his J.D. from the DePaul University College of Law in 2005. While in law school, Rafey received a certificate in international and comparative law and earned the CALI award for the highest grade in advanced trial advocacy. Rafey received his B.A. in History, *with distinction*, from the University of Colorado – Boulder in 2002.

**MICHAEL J. MCMORROW** is a Partner at EDELSON MCGUIRE. His practice focuses on commercial litigation and class action law, and his recent experience includes representation of consumer classes in litigation under the federal Telephone Consumer Protection Act, the California Unfair Competition Law, several common law claims, and additionally, representation of corporate clients in the mobile telephone content industry in commercial and trade secret litigation.

Mike is an experienced trial and appellate commercial litigator who has represented clients in court and at trial across a full spectrum of issues, including trade secret litigation, commercial contracts, airplane leasing, airport construction, automotive manufacturing, commercial and consumer lending, product liability, and has represented clients in heavily-regulated industries including insurance, defense contracting, health care and energy. Prior to joining the firm, Mike was Senior Counsel at Foley & Lardner LLP, practicing commercial and energy regulatory litigation.

Mike graduated magna cum laude from the University of Illinois College of Law in 2000, where he was Associate Editor of the UNIVERSITY OF ILLINOIS LAW REVIEW, a Harno Scholarship recipient, and President of the Prisoners' Rights Research Project. Mike received his B.A. in Political Science from Yale University in 1994. Mike has been a member of the Trial Bar for the Northern District of Illinois since 2005 and the Chicago Bar Association Judicial Evaluation Committee since 2003. His pro bono representations have included asylum applicants and

prisoners' rights issues.

**STEVEN W. TEPPLER** is a Partner of EDELSON MCGUIRE. Steven concentrates his practice on data protection and information technology law, including electronic discovery, loss or destruction of information, authentication and admissibility issues uniquely inherent to computer generated information, including spoliation issues arising from unauthorized or illegal data manipulation or alteration. He is the Co-Vice-Chair of the American Bar Association Information Security Committee as well as the Florida Bar's Professional Ethics Committee.

Steven has authored over a dozen articles relating to information technology law and routinely presents his work at conferences. Steven's recent publications include: *Spoliation in the Digital Universe, The SciTech Lawyer*, Science and Technology Law Section of the American Bar Association, Fall 2007; *Life After Sarbanes-Oxley – The Merger of Information Security and Accountability* (co-author), 45 JURIMETRICS J. 379 (2005); *Digital Signatures Are Not Enough* (co-author), Information Systems Security Association, January 2006; *State of Connecticut v. Swinton: A Discussion of the Basics of Digital Evidence Admissibility* (co-author), Georgia Bar Newsletter Technology Law Section, Spring 2005; *The Digital Signature Paradox* (co-author), IETF Information Workshop (The West Point Workshop) June 2005; *Observations on Electronic Service of Process in the South Carolina Court System*, e-filing Report, June 2005. Steven is also a contributing author to an American Bar Association book with the working title "Foundations of Digital Evidence" (publication expected March 2009).

Steven graduated from the Benjamin N. Cordozo School of Law in 1980 after earning his B.A., *summa cum laude*, from the City College of New York in 1977. Steven is admitted to the bars of New York, the District of Columbia and Florida.

**STEVEN LEZELL WOODROW** is a Partner and Group Chair at EDELSON MCGUIRE and the firm's hiring attorney. Steven has successfully litigated and settled a number of consumer protection cases through trial, engaged in extensive motion practice, drafted appellate briefs, prosecuted class actions and participated in multi-session mediations.

Prior to joining the firm, Steven was a litigator at a Chicago boutique focusing on consumer protection matters, real estate disputes, fraudulent transfers in bankruptcy and the prosecution of white-knight mortgage fraud cases.

Steven received his J.D. from Chicago-Kent College of Law with High Honors, *Order of Coif*, while earning his certificate in litigation and alternative dispute resolution. During law school, he served as a Judicial Extern for the Honorable Ann C. Williams on the Seventh Circuit Court of Appeals and as President of the Student Bar Association. Steven also served as a Notes and Comments Editor for THE CHICAGO-KENT LAW REVIEW and represented Chicago-Kent at the National Sports Law Moot Court Competition in New Orleans in 2004. Steven was awarded the ABA-ALI Scholarship and Leadership Award for best representing the combination of leadership and scholarship in his graduating class and also received the Lowell H. Jacobson Memorial Scholarship, which is awarded competitively to a student from one of the law schools in the Seventh Circuit to recognize personal commitment and achievement.

Steven received his B.A. in Political Science, *with Distinction*, from the University of

Michigan—Ann Arbor in 2002.

**SEAN P. REIS** is Of Counsel to EDELSON MCGUIRE . Sean is an experience trial attorney and business litigator. Sean has experience in a wide-range of litigation matters, including those involving trade secrets, real estate fraud, employment, and consumer issues. Sean has tried sixteen cases, including several multi-week jury trials.

Prior to joining Edelson McGuire, Sean was trained at an international law firm and later founded his own practice. In 1993, Sean graduated from University of California at San Diego with a degree in quantative economics. Following that Sean graduated from Rutgers University School of Law, Newark where he was the business editor of the Rutgers Law Review and where he received the graduation for appellate advocacy.

**EVAN M. MEYERS** is Senior Counsel at EDELSON MCGUIRE. Evan is an experienced trial and appellate litigator and has handled a broad range of complex litigation matters, including contract disputes, securities and consumer fraud, employment discrimination, insurance coverage, antitrust, shareholder and tax disputes, business torts and other matters. Evan has managed all aspects of the litigation process, including evaluation and strategic analysis, drafting pleadings in state and federal trial and appellate courts, taking and defending depositions, arguing motions, and representing clients in mediations and settlement conferences. He has also successfully tried cases in state court.

Prior to joining Edelson McGuire, Evan worked at Drinker Biddle & Reath LLP, where he was an associate in the firm's commercial litigation practice group and represented a wide range of clients in federal and state courts, including manufacturers, insurance and financial services companies, government agencies, close corporations, hospitals, colleges and universities and not-for-profit entities.

Evan received his J.D., cum laude, from the University of Illinois College of Law in 2002, where he was an associate editor of the Elder Law Journal. Additionally, he served as a judicial extern with the Hon. Wayne R. Andersen of the U.S. District Court for the Northern District of Illinois. Evan received his bachelor's degree, with distinction, in political science from the University of Michigan in 1999.

**WILLIAM C. GRAY** is a Group Chair at EDELSON MCGUIRE. Bill has handled a broad range of complex litigation matters including; criminal matters, consumer and international fraud cases, labor and employment issues, and class actions. He has drafted pleadings and briefs, argued motions, and represented clients in mediations, arbitrations, state and federal courts, before human rights agencies, and before state and federal Department of Labor. Additionally, Bill has significant appellate advocacy experience and has argued in front of the Seventh Circuit Court of Appeals.

Bill previously worked at Sidley Austin LLP, and represented a wide range of clients, including Fortune 100 companies, in various forums, including manufacturers, insurance and financial services companies, government agencies, corporations, universities and not-for-profit entities. Additionally, he has participated in several high-profile cases resulting in favorable resolutions

for his clients.

Bill received his J.D., cum laude, from Harvard Law School, where he was an editor of the Black Letter Law Journal. He also served as a research assistant for Professor Alan Dershowitz. Bill additionally spent a semester working in Jerusalem for the Simon Wiesenthal Center and was a member of the Criminal Code Commentary Committee for the country of Kosovo. Bill graduated from Indiana University with high honors. While at Indiana University, Bill was elected President of the Student Body for the campus's 40,000 students and was inducted into Phi Beta Kappa. He also appeared as an invited guest on MSNBC, The Mitch Albom Show, and The O'Reilly Factor.

Bill has been an active member of the legal community and has served in many pro bono matters. He currently serves on the Illinois State Bar Association Standing Committee on the Attorney Registration and Disciplinary Committee (ARDC), is a Board Member of the Decalogue Society of Lawyers (co-chair of the Young Lawyer's Committee), and is actively involved in the Anti-Defamation League and the American Cancer Society. Additionally, Bill has collaborated for years with the Northwestern Center on Wrongful Convictions in securing the release of wrongfully-convicted inmates.

**BRAD BAGLIEN** is an Associate at EDELSON MCGUIRE. Brad focuses his practice on privacy and technology class actions.

Brad previously worked for Sidley Austin LLP, where he represented a wide range of clients, including Fortune 100 companies, small businesses, and individuals. He has handled a variety of complex commercial litigation matters in state and federal courts, including consumer fraud actions, contract disputes, internal investigations, insurance class actions, and commercial tax litigation.

Brad graduated with honors from the University of Chicago Law School, where he participated in the Hinton Moot Court Competition and was an instructor in the Street Law program at several local high schools. During law school, Brad served as a judicial extern for the Honorable Mark Filip in the Northern District of Illinois.

Brad graduated from St. Olaf College with degrees in Economics and Political Science. While at St. Olaf, he was a captain of the baseball team and a member of the football team.

**CHRISTOPHER L. DORE** is an associate at Edelson McGuire and a member of the Technology and Privacy Practice Group. Chris focuses his practice on emerging consumer technology issues, as well as prosecuting unsolicited text message and online fraud cases.

Chris has been appointed class counsel in multiple class actions, including ground breaking technology, text-spam, and fraudulent marketing cases. (Turner v. Storm8, LLC, (09-cv-05234) (N.D. Cal.) and Espinal v Burger King Corporation, (09-20982) (S.D. Fla.)).

Prior to joining Edelson McGuire, Chris worked for two large defense firms in the areas of employment and products liability.

Chris graduated magna cum laude from The John Marshall Law School, where he served as the Executive Lead Articles for the Law Review, as well as a team member for the D.M. Harish International Moot Court Competition in Mumbai, India. Chris has since returned to his alma mater to lecture on current issues in class action litigation.

Before entering law school, Chris received his Masters degree in Legal Sociology, graduating magna cum laude from the International Institute for the Sociology of Law, located in Onati, Spain. Chris received his B.A. in Legal Sociology from the University of California, Santa Barbara.

**KIRT GALLATIN** is an Associate at EDELSON MCGUIRE.

Kirt received his Juris Doctor from Northwestern University School of Law.   While at Northwestern, Kirt served as a research assistant for Professor Stephen B. Presser and was an active member of the Student Funded Public Interest Fellowship and Latin Law Student Association.

Kirt graduated from Florida Gulf Coast University, magna cum laude, obtaining Bachelor degrees in both Legal Studies and Criminal Justice.  While at FGCU, Kirt was elected Student Body President and served on the FGCU Board of Trustees and the Florida Student Association Board of Directors.  (Admission pending in November 2011).

**CHANDLER GIVENS** is an Associate at EDELSON MCGUIRE, where his practice focuses on technology and privacy class actions. His lawsuits have centered on fraudulent software development, unlawful tracking of consumers through mobile devices and computers, and illegal data retention.

Chandler graduated from the University of Pittsburgh School of Law. While in law school, he was a research assistant for Cyberlaw Professor Dr. Kevin Ashley, and a judicial extern for the Honorable David S. Cercone of the United States District Court for the Western District of Pennsylvania. Chandler received CALI awards for the highest course grades in Negotiations as well as Telecommunications Law. He graduated *cum laude* from Virginia Tech, with a B.S. in business information technology, with a focus on computer-based decision support systems. Chandler sits on the ABA committees for Information Security and e-Discovery.

Before joining the legal profession, Chandler worked as a systems analyst. He has given talks on network security, including, beginning at the age of 14, lecturing to groups comprised of engineers from organizations such as NASA. Chandler currently leads a team of technology investigative researchers at the firm.

Prior to starting with the firm, Chandler interned at the Virginia Attorney General's Office and the U.S. Department of Justice in Washington, D.C. (Admission pending in November 2011).

**JOHN OCHOA** is an associate at EDELSON MCGUIRE. John's practice focuses on consumer class action litigation.

John graduated *magna cum laude* from the John Marshall Law School in May, 2010 and served as Managing Editor for the John Marshall Law Review.  His student Comment, which examines

bicycling and government tort immunity in Illinois, appears in Vol. 43, No. 1 of the JOHN MARSHALL LAW REVIEW.   While in law school, John took advantage of various scholastic opportunities, serving as a research assistant, externing with Judge Thomas Hoffman at the Illinois Court of Appeals, and competing in the ABA National Appellate Advocacy Competition. John was awarded a Herzog scholarship for his academic performance and earned CALI awards for the highest grade in Torts, Property, and Administrative Law.

He received his B.A. with Honors in Political Science from the University of Iowa in 2004.

**BENJAMIN H. RICHMAN** is an Associate at Edelson McGuire, LLC and is a member of the firm's Corporate Governance and Business Litigation Practice Group. He handles plaintiff's-side consumer class actions, focusing mainly on technology-related cases, represents corporate defendants in class actions, and handles general commercial litigation matters.

On the plaintiff's side, Ben has brought industry-changing lawsuits involving the marketing practices of the mobile industry, print and online direct advertisers, and Internet companies. He has successfully prosecuted cases involving privacy claims and the negligent storage of consumer data. His suits have also uncovered complex fraudulent methodologies of Web 2.0 companies, including the use of automated bots to distort the value of consumer goods and services. In total, his suits have resulted in hundreds of millions of dollars to consumers.

On the defense side, Ben has represented large institutional lenders in the defense of employment class actions. He also routinely represents technology companies in a wide variety of both class action defense and general commercial litigation matters.

Ben received his J.D. from The John Marshall Law School, where he was an Executive Editor of the Law Review and earned a Certificate in Trial Advocacy. While in law school, Ben served as a judicial extern to the Honorable John W. Darrah of the United States District Court for the Northern District of Illinois, in addition to acting as a teaching assistant for Prof. Rogelio Lasso in several torts courses. Ben has since returned to the classroom as a guest-lecturer on issues related to class actions, complex litigation and negotiation. He also lectures incoming law students on the core first year curriculums. Before entering law school, Ben graduated from Colorado State University with a B.S. in Psychology.

Ben is the director of Edelson McGuire's Summer Associate Program.

**ARI J. SCHARG** is an associate at Edelson McGuire LLC.  He handles all aspects of litigation from pre-filing investigation through trial.  In addition to class action litigation, Ari has substantial experience litigating commercial, real estate, employment, and constitutional matters. He also counsels entrepreneurs and works closely with startup companies to manage risk and raise capital.

Prior to joining the firm, Ari worked as a litigation associate at a large Chicago firm, where he represented a wide range of clients including Fortune 500 companies and local municipalities. His work included representing the Cook County Sheriff's Office in several civil rights cases and he was part of the litigation team that forced Craigslist to remove its "Adult Services" section from its website.   He also regularly tries his cases before judges and juries, including a trial that

spanned six months.

Ari is very active in community groups and legal industry associations. He is a member of the Board of Directors of the Chicago Legal Clinic, an organization that provides legal services to low-income families in the Chicago area. Ari acts as Outreach Chair of the Young Adult Division of American Committee for the Shaare Zedek Medical Center in Jerusalem, and is actively involved with the Anti-Defamation League. He is also a member of the Standard Club Associates Committee.

Ari received his B.A. in Sociology from the University of Michigan – Ann Arbor and graduated magna cum laude from The John Marshall Law School where he served as a Staff Editor for Law Review and competed nationally in trial competitions. During law school, he also served as a judicial extern to The Honorable Judge Bruce W. Black of the U.S. Bankruptcy Court for the Northern District of Illinois.

**IRINA SLAVINA** is an Associate at EDELSON MCGUIRE. As a Russian attorney, Irina obtained her LL.M degree in International and Comparative Law, with High Honors, from Chicago-Kent College of Law in 2003. Since that time Irina has had a unique legal career in the United States that started in a boutique law office in Chicago and progressed to the legal department of a major gaming and entertainment company on the east coast.

While working in-house with General Counsel, Irina gained extensive experience in drafting and negotiating company contracts and addressing the day-to-day legal inquiries of management. Irina handled patrons' liability claims, worked with state and local government officials in obtaining and renewing company licenses, and assisted with all aspects of corporate governance and compliance.

Irina earned her J.D. from Chicago-Kent College of Law with High Honors, Order of Coif, in 2009. While in law school, Irina represented Chicago-Kent in the McGee National Civil Rights Moot Court Competition. Irina was also a member of the Chicago-Kent Law Review, and her student note on the issue of a casino liability to problem gambles was published in the March 2010 issue, 85 Chi.-Kent L. Rev. 369. Irina externed for the Honorable Susan E. Cox in the Northern District of Illinois, and earned the CALI award for obtaining the highest grade in Constitutional Law, Evidence, and Legal Writing III courses.

**BEN THOMASSEN** is an associate at Edelson McGuire, LLC and is a member of the Banking and Financial Services Practice Group.

Ben received his J.D., magna cum laude, from Chicago-Kent College of Law, where he also earned his certificate in Litigation and Alternative Dispute Resolution and was named Order of the Coif. At Chicago-Kent, Ben was Vice President of the Moot Court Honor Society and competed in both the ABA National Appellate Advocacy and National Moot Court Competitions. Among other scholarships and awards, Ben earned seven CALI awards for the highest grade in Appellate Advocacy, Business Organizations, Conflict of Laws, Family Law, Personal Income Tax, Property, and Torts.

Before his legal career, Ben worked in and around the Chicago and Washington, D.C. areas, including freelance and firm-based work as a website designer/developer, and many years

experience as a film projectionist and media technician for commercial theatres, museums, and educational institutions. Ben received his Bachelor of Arts, summa cum laude, from St. Mary's College of Maryland and his Master of Arts from the University of Chicago. (Admission pending in November 2011).