KEITH E. EGGLETON, State Bar No. 159842
MAURA L. REES, State Bar No. 191698
ANTHONY J WEIBELL, State Bar No. 238850
WILSON SONSINI GOODRICH & ROSATI
Professional Corporation
650 Page Mill Road
Palo Alto, CA 94304-1050
Telephone: (650) 493-9300
Facsimile: (650) 565-5100
E-mail: mrees@wsgr.com; aweibell@wsgr.com

Attorneys for Defendant
SYMANTEC CORPORATION

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| JAMES GROSS,<br><br>　　　　Plaintiff,<br><br>　　　v.<br><br>SYMANTEC CORPORATION, et al.,<br><br>　　　　Defendants. | CASE NO.:  C 12-00154 CRB<br><br>**SYMANTEC'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS THE FIRST AMENDED COMPLAINT**<br><br>Date:　　　June 8, 2012<br>Time:　　　10:00 AM |

**SUMMARY OF ARGUMENT**

Plaintiff disregarded this Court's standing order by filing an opposition brief that is five pages over the 15-page limit. But this is not the only evidence of disregard for the rules in Plaintiff's opposition brief. In arguing that extraterritorial application of California statutory law is proper, Plaintiff has also misrepresented this Court's holding in *Badella v. Deniro Mktg. LLC*, No. 10-3908 CRB, 2011 WL 5358400 (N.D. Cal. Nov. 4, 2011), stating that in *Badella*, "extraterritorial application of UCL [was] permitted," when in fact this Court refused to permit the extraterritorial application of the UCL claims in *Badella*. Plaintiff further demonstrates carelessness by apparently copying an argument regarding unjust enrichment from another brief into his brief in this case, even though the copied argument responds to a point never made by Symantec in the motion to dismiss.

Plaintiff's arguments also improperly attempt to stretch his allegations beyond what the allegations in the complaint actually state, and beyond what he knows he can allege without violating Rule 11's requirement that "factual contentions have evidentiary support." The critical failure of Plaintiff's opposition brief, as well as his amended complaint, is that he cannot identify specific facts that satisfy the required elements of his asserted claims. Nor could he amend his complaint to add such specific allegations without violating Rule 11, especially where the PC Tools software at issue has won industry awards and accolades for its ability to detect and remove errors.

Plaintiff also fails to adequately allege that Symantec, rather than PC Tools, was the party with whom he transacted in purchasing the software license at issue in this action. Consequently, Symantec is not a proper defendant in this lawsuit, and Plaintiff cannot allege any facts sufficient to pull Symantec into this lawsuit under theories of "alter ego," agency, or civil conspiracy. Indeed, none of the alleged facts that Plaintiff identifies in his opposition – sharing of some administrative functions, some office space, a single company officer, and some software source code – justify the "extreme remedy" of piercing the corporate veil.

Now that Plaintiff has had multiple opportunities to attempt to properly state a claim and has demonstrated that he cannot do so, his claims should be dismissed with prejudice.

# TABLE OF CONTENTS

**Page**

I. PLAINTIFF'S CLAIMS AGAINST SYMANTEC SHOULD BE DISMISSED BECAUSE SYMANTEC WAS NOT A PARTY TO THE TRANSACTION .................. 1

    A. Plaintiff Fails to Identify Any Facts that Justify Piercing the Corporate Veil ........ 1

        1. Plaintiff Fails to Identify Facts Sufficient to Establish that the Corporate Separateness of Symantec's Subsidiaries is Purely Illusory ................................................................................................................ 2

        2. Plaintiff Fails to Identify Facts Showing that an Injustice Will Result Absent Piercing the Corporate Veil ........................................................... 5

    B. Plaintiff Fails to Identify Any Facts Showing the Creation of an Agency Relationship with Respect to the Transaction at Issue ............................................ 5

    C. Plaintiff Fails to Identify Any Facts Showing an Unlawful Conspiracy ................. 6

II. THE UNFAIR COMPETITION CLAIM SHOULD BE DISMISSED .............................. 7

III. THE FRAUDULENT INDUCEMENT CLAIM SHOULD BE DISMISSED ................... 8

IV. THE EXPRESS WARRANTY CLAIM SHOULD BE DISMISSED ............................. 10

V. THE BREACH OF CONTRACT CLAIM SHOULD BE DISMISSED .......................... 12

VI. THE IMPLIED COVENANT CLAIM SHOULD BE DISMISSED ............................... 13

VII. THE UNJUST ENRICHMENT CLAIM SHOULD BE DISMISSED ............................ 14

VIII. PLAINTIFF'S CLAIMS AGAINST SYMANTEC SHOULD BE DISMISSED WITH PREJUDICE ........................................................................................................ 15

CONCLUSION ............................................................................................................................ 15

**TABLE OF AUTHORITIES**

<u>Page</u>

**CASES**

*Badella v. Deniro Mktg. LLC*, No. 10-3908 CRB, 2011 WL 5358400 (N.D. Cal. Nov. 4, 2011) ................................................................................................................... 7

*Batzel v. Smith*, 333 F.3d 1018 (9th Cir. 2003) ............................................................................ 6

*Bauman v. DaimlerChrysler Corp.*, 644 F.3d 909 (9th Cir. 2011) ............................................... 2

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ........................................................................ 6

*Carrico v. City and Cnty. of San Francisco*, 656 F.3d 1002 (9th Cir. 2011) ............................. 15

*Digital Envoy, Inc. v. Google, Inc.*, No. 04-1497 RS, 2005 WL 2999364 (N.D. Cal. Nov. 8, 2005) ................................................................................................................. 14

*Dlorah, Inc. v. Nau Holdings, Inc.*, 2009 WL 1107533 (D.S.D. Apr. 23, 2009) ........................... 3

*Doe v. Unocal Corp.*, 248 F.3d 915 (9th Cir. 2001) ............................................................. 2, 3, 4

*Dole Food Co. v. Patrickson*, 538 U.S. 468 (2003) ..................................................................... 1

*Eclectic Props. East, LLC v. The Marcus & Millichap Co.*, No. 09-00511 RMW, 2012 WL 713289 (N.D. Cal. Mar 5, 2012) ............................................................... 3, 4, 15

*Express Media Group, LLC v. Express Corp.*, No. 06-03504 WHA, 2007 WL 1394163 (N.D. Cal. 2007) ...................................................................................... 3

*Focht v. Sol Melia S.A.*, No. 10-0906 EMC, 2012 WL 162564 (N.D. Cal. Jan. 19, 2012) ............................................................................................................................ 3, 6

*Green Desert Oil Group v. BP West Coast Prods.*, No. 11-02087 CRB, 2012 WL 555045 (N.D. Cal. Feb. 21, 2012) .............................................................................. 13

*Halo Elecs., Inc. v. Bel Fuse Inc.*, No. 07-06222 RMW, 2010 WL 2605195 (N.D. Cal. June 28, 2010) ........................................................................................................ 4, 6

*Harris Rutsky & Co. Ins. Servs., Inc. v. Bell & Clements Ltd.*, 328 F.3d 1122 (9th Cir. 2003) ................................................................................................................... 3, 4

*In re Apple and AT&T iPad Unlimited Data Plan Litig.*, 802 F. Supp. 2d 1070 (N.D. Cal. 2011) .............................................................................................................. 14

*In re Conseco Ins. Co. Annuity Marketing & Sales Practices Litig.*, No. 05-04726 RMW, 2008 WL 4544441 (N.D. Cal. Sep. 30, 2008) .............................................. 4

*Katzir's Floor and Home Design, Inc. v. M-MLS.com*, 394 F.3d 1143 (9th Cir. 2004) ..................................................................................................................... 1, 2, 5

*KEMA, Inc. v. Koperwhats*, 96 U.S.P.Q.2d 1787 (N.D. Cal. Sep. 1, 2010) ................................. 4

*Kowalsky v. Hewlett-Packard Co.*, 771 F. Supp. 2d 1138 (N.D. Cal. 2010), *vacated in part on other grounds*, 771 F. Supp. 2d 1156 .............................................................. 7

*Nordberg v. Trilegiant Corp.*, 445 F. Supp. 2d 1082 (N.D. Cal. 2006) ........................................... 5

*Nordica S.p.A. v. Icon Health & Fitness, Inc.*, No. 06-451, 2009 WL 2462570 (D.N.H. Aug. 11, 2009) ............................................................................................ 3

*Pantoja v. Countrywide Home Loans, Inc.*, 640 F. Supp. 2d 1177 (N.D. Cal. 2009) ...................... 6

*Paracor Finance, Inc. v. Gen. Elec. Capital Corp.*, 96 F.3d 1151 (9th Cir. 1996) ....................... 14

*Perez v. Wells Fargo Bank, N.A.*, No. 11-2279 JCS, 2011 WL 3809808 (N. D. Cal. Aug. 29, 2011) ..................................................................................................... 9, 12

*Playboy Enters., Inc. v. Welles*, 279 F.3d 796 (9th Cir. 2002) ........................................................ 1

*Sonora Diamond Corp. v. Superior Court*, 83 Cal. App. 4th 523 (2000) ....................................... 1

*Sullivan v. Oracle Corp.*, 662 F.3d 1265 (9th Cir. 2011) ................................................................ 8

*Tidenberg v. Bidz.com, Inc.*, No. 08-5553, 2009 WL 605249 (C.D. Cal. Mar. 4, 2009) ............................................................................................................................ 7

*Tuttle v. Sky Bell Asset Mgmt., LLC*, No. 10-03588 WHA, 2011 WL 4713233 (N.D. Cal. Oct. 7, 2011) ........................................................................................................ 3

*United States v. Bestfoods*, 524 U.S. 51 (1998) .............................................................................. 4

*Wenger v. Lumisys, Inc.*, 2 F. Supp. 2d 1231 (N.D. Cal. 1998) ....................................................... 9

*Westley v. Oclaro, Inc.*, No. 11-2448 EMC, 2012 WL 1038647 (N.D. Cal. Mar. 27, 2012) ...................................................................................................................................... 9

*Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981 (9th Cir. 2009) ....................................... 15

**STATUTES**

Cal. Civ. Code § 1668 .................................................................................................................... 11

California Business & Professions Code § 17200 ...................................................................... 7, 8

California Commercial Code § 2313 ............................................................................................. 10

**RULES**

Rule 9(b) ...................................................................................................................................... 8, 9

Rule 11 .................................................................................................................................... 13, 15

**MISCELLANEOUS**

1 William Meade Fletcher et al., Fletcher Cyclopedia of the Law of Private Corporations § 41.35 (1999) ................................................................................................ 1

## I. PLAINTIFF'S CLAIMS AGAINST SYMANTEC SHOULD BE DISMISSED BECAUSE SYMANTEC WAS NOT A PARTY TO THE TRANSACTION

Plaintiff makes no allegation that he thought he was dealing with Symantec when purchasing a license to the PC Tools Registry Mechanic software. Indeed, Symantec was not a party to the transaction between Plaintiff and PC Tools, nor did PC Tools represent itself as an agent of Symantec in the transaction, nor did PC Tools and Symantec ever agree that the transaction was to be made on Symantec's behalf. Consequently, Symantec is not a proper defendant in this lawsuit under theories of "alter ego," agency, or civil conspiracy. While Plaintiff labels this barrier a "'PC Tools did it' defense," Opp. at 9, the fact is that neither PC Tools nor Symantec "did it," and Plaintiff's inclusion of Symantec in this lawsuit was particularly improper because Symantec was not even a party to Plaintiff's alleged transaction with PC Tools.

### A. Plaintiff Fails to Identify Any Facts that Justify Piercing the Corporate Veil

Courts pierce the corporate veil under an "alter ego" theory only in "the rare exception" of "exceptional circumstances" where necessary to prevent fraud or injustice. *Dole Food Co. v. Patrickson*, 538 U.S. 468, 475 (2003); *see also Sonora Diamond Corp. v. Superior Court*, 83 Cal. App. 4th 523, 539 (2000) ("Alter ego is an extreme remedy, sparingly used."). Accordingly, "the alter ego rule is generally applied with caution." *Playboy Enters., Inc. v. Welles*, 279 F.3d 796, 807 (9th Cir. 2002). "[A]llegations that the defendant was the sole or primary shareholder are inadequate as a matter of law to pierce the corporate veil. Even if the sole shareholder is entitled to all of the corporation's profits, and dominated and controlled the corporation, that fact is insufficient by itself to make the shareholder personally liable." *Katzir's Floor and Home Design, Inc. v. M-MLS.com*, 394 F.3d 1143, 1149 (9th Cir. 2004) (quoting 1 William Meade Fletcher et al., Fletcher Cyclopedia of the Law of Private Corporations § 41.35, at 671 (1999)).

As Symantec has already explained, "PC Tools could not have been set up as an alter ego shell corporation to 'mask' Symantec's alleged activities because it was previously engaged in selling the software prior to acquisition." Mot. at 4. In responding to the motion to dismiss, Plaintiff proffers no response to this critical and dispositive fact. Indeed the Symantec press

release concerning its acquisition of PC Tools – a document Plaintiff incorporates by reference into his amended complaint (FAC ¶ 15) – expressly stated that "PC Tools will maintain *separate operations* within Symantec's consumer business unit" and that "PC Tools will continue to offer *their* products under the PC Tools brand and serve its customers through *its existing* partners and channels."[1]

Not only does Plaintiff fail to address the fact that PC Tools was a real company with its own products, operations, and employees before and after the acquisition, but Plaintiff also fails to otherwise demonstrate the two required prerequisites for piercing the corporate veil under an alter ego theory: "(1) that there is such unity of interest and ownership that the separate personalities [of PC Tools and Symantec] no longer exist and (2) that failure to disregard [their separate entities] would result in fraud or injustice." *Bauman v. DaimlerChrysler Corp.*, 644 F.3d 909, 920 (9th Cir. 2011) (quoting *Doe v. Unocal Corp.*, 248 F.3d 915, 926 (9th Cir. 2001)).

### 1. Plaintiff Fails to Identify Facts Sufficient to Establish that the Corporate Separateness of Symantec's Subsidiaries is Purely Illusory

Plaintiff fails to identify any facts sufficient to satisfy the first requirement for piercing the corporate veil: facts showing that "corporate separateness is *illusory*." *Katzir's*, 394 F.3d at 1149 (emphasis added). The "critical facts" that must be present are "inadequate capitalization, commingling of assets, or disregard of corporate formalities." *Id.* Plaintiff makes no attempt to demonstrate inadequate capitalization or a disregard of corporate formalities. And the only "commingling of assets" that Plaintiff alleges involve a mere sharing of some administrative functions, some office space, a single company officer, and some software source code.

Specifically, Plaintiff relies on six factual allegations to support his alter ego theory: (1) Symantec sometimes refers to PC Tools as one of its "brands"; (2) the WHOIS database lists Symantec as the registrant and domain manager of the pctools.com website; (3) another subsidiary of Symantec, PC Tools, Inc., has an office at the same address as Symantec; (4) the PC Tools website invites job seekers to send resumes to a person with a symantec.com email

---

[1] http://www.symantec.com/about/news/release/article.jsp?prid=20080818_02 (last visited April 9, 2012) (emphasis added).

address; (5) Symantec and PC Tools share one officer; and (6) the Symantec Norton Utilities software shares source code with the PC Tools Registry Mechanic software. Opp. at 6-7. But Plaintiff fails to cite any authority holding that these facts are sufficient to demonstrate an alter ego relationship. Indeed, the case law is to the contrary.

First, that Symantec sometimes refers to PC Tools as one of its "brands" is irrelevant to the alter ego analysis because PC Tools is an actual company with its own products, operations, employees, and facilities. The law is clear that a "parent corporation may be directly involved in financing and macro-management of its subsidiaries . . . without exposing itself to a charge that each subsidiary is merely its alter ego." *Unocal*, 248 F.3d at 927. How one entity uses the "brand" of another has no bearing on their legal relationship for alter ego purposes. *See, e.g.*, *Focht v. Sol Melia S.A.*, No. 10-0906 EMC, 2012 WL 162564, at *6 (N.D. Cal. Jan. 19, 2012) (fact that two entities "have merged their identities under the same brand name" insufficient to establish an alter ego relationship); *Tuttle v. Sky Bell Asset Mgmt., LLC*, No. 10-03588 WHA, 2011 WL 4713233, at *8 (N.D. Cal. Oct. 7, 2011) (fact that entities were "member[s] in a global organization of companies that share a brand name" does not demonstrate alter ego).

Second, that Symantec is allegedly listed as the registrant of the pctools.com website domain in the WHOIS database is irrelevant because such registration does not establish ownership, let alone impermissible comingling of assets. *See Express Media Group, LLC v. Express Corp.*, No. 06-03504 WHA, 2007 WL 1394163 at *4 (N.D. Cal. 2007) (WHOIS records do not reflect website ownership); *Nordica S.p.A. v. Icon Health & Fitness, Inc.*, No. 06-451, 2009 WL 2462570, at *5 (D.N.H. Aug. 11, 2009) ("WHOIS reports are not sufficient to establish ownership . . . and have no bearing on ownership.'") (quoting *Dlorah, Inc. v. Nau Holdings, Inc.*, 2009 WL 1107533, at *3 (D.S.D. Apr. 23, 2009)). At best, such evidence only shows Symantec registered the website domain in the United States on behalf of its PC Tools foreign subsidiaries.

Third, the sharing of office space is insufficient to demonstrate an alter ego relationship. *Harris Rutsky & Co. Ins. Servs., Inc. v. Bell & Clements Ltd.*, 328 F.3d 1122, 1135 (9th Cir. 2003) (alter ego cannot be shown by mere fact that "the two companies share the same offices . . . and some of the same staff"); *Eclectic Props. East, LLC v. The Marcus & Millichap Co.*, No.

09-00511 RMW, 2012 WL 713289, at *5 (N.D. Cal. Mar 5, 2012) ("Nor does . . . the fact that companies share the same offices necessarily make companies alter egos."); *In re Conseco Ins. Co. Annuity Marketing & Sales Practices Litig.*, No. 05-04726 RMW, 2008 WL 4544441, at *5 (N.D. Cal. Sep. 30, 2008) (no alter ego though companies "share[d] the same headquarters").

Fourth, that the PC Tools website allegedly invites job seekers to send resumes to a person with a symantec.com email address does not establish that Symantec controls hiring decisions for PC Tools. Even if the person were a Symantec employee, the sharing of staff for clerical and administrative functions does not demonstrate an alter ego relationship. *See Harris*, 328 F.3d at 1135 (alter ego not shown where "the two companies share . . . some of the same staff"); *Eclectic*, 2012 WL 713289, at *5 (fact that entities "share many of the same employees and agents" does not demonstrate alter ego); *Halo Elecs., Inc. v. Bel Fuse Inc.*, No. 07-06222 RMW, 2010 WL 2605195, at *5 (N.D. Cal. June 28, 2010) (no alter ego even where parent company labeled its subsidiary's office as its own sales location and directed customers to call subsidiary's phone number for customer service).

Fifth, that the General Manager of PC Tools is allegedly also a Vice President at Symantec does not establish an alter ego relationship. *United States v. Bestfoods*, 524 U.S. 51, 69 (1998) ("directors and officers holding positions with a parent and its subsidiary can and do 'change hats' to represent the two corporations separately" and such a fact does not expose a parent to alter ego liability); *Harris*, 328 F.3d at 1135 (alter ego cannot be shown by mere fact that "the companies are run by the same senior officers and directors"); *Unocal*, 248 F.3d at 927 ("overlapping directors and officers" insufficient to pierce the corporate veil).

Sixth, that the Symantec Norton Utilities software and the PC Tools Registry Mechanic software allegedly share some of the same source code does not demonstrate any improper "comingling of assets" as companies often license their proprietary trade secrets to other companies. Even if Symantec was selling the exact same product as PC Tools, such a fact does not demonstrate an alter ego relationship. *See KEMA, Inc. v. Koperwhats*, 96 U.S.P.Q.2d 1787, 1787 (N.D. Cal. Sep. 1, 2010) (fact that parent company "advertises and sells [its subsidiary's] products on its website" insufficient to establish alter ego).

### 2. Plaintiff Fails to Identify Facts Showing that an Injustice Will Result Absent Piercing the Corporate Veil

The biggest flaw in Plaintiff's alter ego theory is the lack of any "injustice" resulting from recognition of the corporate separateness of PC Tools. "Alter ego is a limited doctrine, invoked only where recognition of the corporate form would work an injustice to a third person." *Katzir's*, 394 F.3d at 1149. "The injustice that allows a corporate veil to be pierced is not a general notion of injustice; rather, it is the injustice that results only when corporate separateness is illusory." *Id.* "For a court to pierce the corporate veil it must determine that there is bad faith conduct on the part of the parent corporation that would otherwise remain without remedy." *Nordberg v. Trilegiant Corp.*, 445 F. Supp. 2d 1082, 1102 (N.D. Cal. 2006).

Here, Plaintiff cannot show any injustice that is only remedied through piercing the corporate veil. The only alleged injustice identified by Plaintiff is that the EULA for the software contains a forum selection clause that designates Ireland as the forum for any disputes arising from Plaintiff's transaction with PC Tools. But Symantec has not sought to enforce that clause in this litigation. And, even if the forum selection clause were enforceable, it would be equally enforceable by either Symantec or PC Tools. The corporate separateness of these two entities has nothing to do with the enforceability of the forum selection clause, and Plaintiff's argument that the forum selection clause is unenforceable will not change regardless of whether Symantec or PC Tools is the defendant. For this reason, the alleged injustice of the forum selection clause is "not the injustice that results only when corporate separateness is illusory." Plaintiff thus fails to identify any injustice that will remain without a remedy if the corporate veil is not pierced. Further undermining Plaintiff's alter ego theory, he does not and cannot allege that Symantec was responsible for adding the forum selection clause to the EULA to turn PC Tools into a "shell" corporation – that clause was already in the EULA prior to the acquisition.

### B. Plaintiff Fails to Identify Any Facts Showing the Creation of an Agency Relationship with Respect to the Transaction at Issue

As with his alter ego theory, Plaintiff cannot identify any facts supporting a theory that PC Tools was acting merely as an agent on behalf of Symantec, and not on behalf of itself, in licensing the Registry Mechanic software to Plaintiff. Agency requires a manifest mutual assent

between principal and agent that the agent will act on the principal's behalf and subject to its control in the transaction. *Batzel v. Smith*, 333 F.3d 1018, 1035 (9th Cir. 2003). Plaintiff cannot identify any facts demonstrating the required "manifest mutual assent." Plaintiff merely repeats the same alleged facts discussed above involving a mere sharing of some administrative functions, some office space, a company officer, and software source code. Opp. at 8. None of these facts has anything to do with Plaintiff's transaction with PC Tools, nor do they demonstrate that Symantec "exercise[d] such control over [PC Tools] so as to render [PC Tools] a mere instrumentality of [Symantec]" in its transaction with Plaintiff. *Halo*, 2010 WL 2605195, at *5 (no agency relationship even where parent company labeled subsidiary's office as parent's own sales location and directed customers to call subsidiary's phone number for service).

Plaintiff also fails to cite any authority that supports his agency theory. In the one case he does cite, the court *rejected* the plaintiff's agency theory because neither agency nor alter ego can be shown by the fact that funds used to conduct the alleged unlawful activity were invested by the parent company or that profits from the alleged activity flow back to the parent company. *See Pantoja v. Countrywide Home Loans, Inc.*, 640 F. Supp. 2d 1177, 1192 (N.D. Cal. 2009); *see also Focht v. Sol Melia S.A.*, No. 10-0906 EMC, 2012 WL 162564, at *7 (N.D. Cal. Jan. 19, 2012) (fact that profits ultimately flow back to parent is insufficient to pierce the corporate veil). Here, the fact that Symantec had invested in PC Tools and has supplied PC Tools with some administrative resources does not demonstrate "manifest mutual assent" to act solely as an agent.

### C. Plaintiff Fails to Identify Any Facts Showing an Unlawful Conspiracy

Plaintiff's final theory for piercing the corporate veil fails in the same manner as his other two theories because he cannot identify any facts showing that Symantec entered into an agreement with PC Tools to form a "civil conspiracy" to defraud Plaintiff. While Plaintiff makes a mere conclusory allegation that "Symantec and PC Tools agreed to defraud consumers," Plaintiff has not and cannot identify any underlying facts that show any such agreement. His conclusory allegation of an unlawful agreement is precisely the type of allegation condemned by the Supreme Court in *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 564-70 (2007) (allegation of an agreement to conspire without any alleged facts showing "actual agreement" is not enough).

## II. THE UNFAIR COMPETITION CLAIM SHOULD BE DISMISSED

Plaintiff concedes that he cannot assert a claim under California Business & Professions Code Section 17200 unless "the alleged wrongful conduct occurred in California." Opp. at 9. But despite his argument that "all the challenged conduct emanated from Symantec and its California business operations," Opp. at 10, Plaintiff fails to identify any *specific wrongful conduct by Symantec* in California that caused Plaintiff's alleged injury. Nor could he identify any such conduct because the transaction at issue took place in Washington between Plaintiff and PC Tools and did not involve any representations made by Symantec.

The transaction here occurred in Washington because purchases made via website are deemed to have occurred in the state where the purchaser was located at the time of the purchase. *Tidenberg v. Bidz.com, Inc.*, No. 08-5553, 2009 WL 605249, at *4-5 (C.D. Cal. Mar. 4, 2009) (fact that defendant's principal place of business was in California and plaintiff, a Texas resident, purchased product at issue via defendant's website was insufficient to justify extraterritorial application of UCL claims based on alleged misrepresentations on website); *see also Kowalsky v. Hewlett-Packard Co.*, 771 F. Supp. 2d 1138, 1155-56 (N.D. Cal. 2010) (refusing to "treat the online sale as having occurred in California" even though plaintiff's "order was processed and shipped from California"), *vacated in part on other grounds*, 771 F. Supp. 2d 1156.

In arguing that extraterritorial application of Section 17200 is proper, Plaintiff misrepresents this Court's holding in *Badella v. Deniro Mktg. LLC*, No. 10-3908 CRB, 2011 WL 5358400 (N.D. Cal. Nov. 4, 2011), stating that in *Badella*, "extraterritorial application of UCL [was] permitted through claims challenging the defendant's allegedly fraudulent website scheme, where plaintiff alleged defendant conducted significant business in California." Opp. at 9. Contrary to Plaintiff's representation, this Court refused to permit the extraterritorial application of the UCL claims in *Badella* because the plaintiff "d[id] not point to particular proof that the alleged representations emanated from California," other than alleging that the defendants were located in California. 2011 WL 5358400 at * 11.

Here, not only does Plaintiff fail to "point to particular [allegations showing] the alleged misrepresentations emanated from Symantec in California, but also the alleged facts show that

Symantec did not make any of the representations at issue. As discussed above, the fact that Symantec is the registrant of the website domain pctools.com does not establish that Symantec owns the website or authors the content on the website. To the contrary, PC Tools controls and provides the content on the website, as evidenced on the pctools.com website (incorporated by reference into the amended complaint, *see* FAC ¶ 18 n.6) which lists PC Tools as the copyright owner of the content on the website. Even so, the statements on the website are irrelevant because, while Plaintiff alleges that the website statements caused him to download the trial version, FAC ¶ 49, the representations that allegedly induced him to purchase the full version of the software were the statements made by the software application itself after generating a report of the errors on Plaintiff's computer, *see* FAC ¶ 50. Because PC Tools in Australia designed the software, any representations made by the software itself emanated from Australia. Consequently, none of the alleged wrongful conduct occurred in California.

To the extent Plaintiff claims that any of the decisions or policy behind the representations at issue or the design of the products at issue originated with Symantec in California, he alleges no facts to support that argument. And even if he could allege such facts, they would not justify extraterritorial application of the UCL under the recent decision in *Sullivan v. Oracle Corp.*, 662 F.3d 1265, 1270 (9th Cir. 2011) (§ 17200 could not be applied to decisions and policy set by California-based company where policy was implemented against plaintiffs out-of-state). Plaintiff fails to even address *Sullivan* in his opposition.

**III.   THE FRAUDULENT INDUCEMENT CLAIM SHOULD BE DISMISSED**

As explained in the opening motion, Plaintiff's fraudulent inducement claim, as well as each of his other claims, which are all based on the same allegedly fraudulent representations, should be dismissed because (1) Plaintiff cannot allege that Symantec made any fraudulent representations; (2) Plaintiff fails to plead fraud with the specificity required by Rule 9(b); (3) Plaintiff cannot state a fraud claim based on representations of future performance; and (4) the allegations of fraud in the Complaint are so contradictory as to make them implausible.

In his opposition, Plaintiff does not even attempt to identify any specific representations made by Symantec. While he generally refers to Symantec as the author of the alleged

misrepresentations, as discussed above, all of the alleged representations to Plaintiff that are at issue were actually made by PC Tools because they were made either on the PC Tools website or within the PC Tools software itself. Nor does Plaintiff have any response to the point made in the opening motion that the allegations of fraud in the Complaint are so contradictory as to make them implausible. *See* Mot. at 7-8. Plaintiff's failure to address the deficiencies explained in the motion to dismiss is effectively a concession that he cannot overcome them. *Perez v. Wells Fargo Bank, N.A.*, No. 11-2279 JCS, 2011 WL 3809808, at *19 (N. D. Cal. Aug. 29, 2011).

Plaintiff also concedes that to "avoid dismissal for inadequacy under Rule 9(b), [the] complaint [must] state the time, place, and specific content of the false representations." But Plaintiff fails to demonstrate that he has made the required showing. With respect to the PC Tools website, Plaintiff fails to allege the "specific content" or location of any statements on the website that were viewed and relied upon by him. Instead, the amended complaint merely refers to what Plaintiff "reasonably believed" about the functionality of software after going to the website. *See* FAC ¶ 49. In another part of the amended complaint, Plaintiff generally characterizes in his own words certain facts allegedly represented on the website, but fails to allege the specific location or content – the actual words – of any statement made by PC Tools. Plaintiff's attempt to vaguely repackage the allege statements in his own words fails to satisfy Rule 9(b). *Wenger v. Lumisys, Inc.*, 2 F. Supp. 2d 1231, 1246 (N.D. Cal. 1998); *Westley v. Oclaro, Inc.*, No. 11-2448 EMC, 2012 WL 1038647, at *5 (N.D. Cal. Mar. 27, 2012).

Similarly, with respect to alleged misrepresentations made by the software itself in analyzing the errors and health of Plaintiff's computer, Plaintiff fails to identify the "specific content" of any of the errors reported by the software. Without knowing the specific errors reported by the software, Symantec has no way of determining whether the reported errors were in fact false representations. Because the heart of Plaintiff's complaint is that the software reported errors that were not in fact real errors, FAC ¶ 3, Plaintiff's failure to allege the specific content of the error report generated by the software is fatal to his claims.

With respect to the problem that Plaintiff cannot state a fraud claim based on representations of future performance, *see* Mot. at 7, Plaintiff's attempt to explain his way

around this problem fails. Indeed, recognizing the weakness of his argument, Plaintiff has relegated his entire response to this defect to a footnote. *See* Opp. at 11 n.4. As explained in Symantec's opening motion, "[a] representation of an existing fact must exist independently of (1) any future acts or actions on the part of the party making the statement, (2) the occurrence of any other particular event in the future, and (3) the particular future uses of the person to whom the statement is made." Mot. at 7 (citing cases). Thus, to the extent the alleged representations contain a promise of what the software would do for Plaintiff in the future if he purchased it and how his computer would perform after using the software (*e.g.*, that his computer would run faster, crash less, etc.), they cannot support a fraud claim.

## IV. THE EXPRESS WARRANTY CLAIM SHOULD BE DISMISSED

Symantec explained in its opening motion that Plaintiff's breach of express warranty claim under California Commercial Code § 2313 should be dismissed because (1) the California Commercial Code does not apply to transactions out of state; (2) the California Commercial Code does not apply to software licenses generally; (3) Plaintiff fails to plead the required elements of an express warranty; and (4) any express warranty was disclaimed.

Plaintiff cannot get around the improper extraterritorial application of California statutory law by arguing that his interactions were with Symantec instead of PC Tools. As discussed above, he can identify no facts showing Symantec, rather than PC Tools, was the party with whom he transacted. It is not enough that Symantec is listed as the registrant of the pctools.com website, nor is it enough that Plaintiff's credit card payment for the software was routed through a PC Tools office in California because that part of the transaction did not play any role in the causation of Plaintiff's alleged injury.

Plaintiff cannot get around the problem that the California Commercial Code does not apply to software licenses by arguing that software is sometimes considered a "good" under the UCC where there is a sale of a software package. Plaintiff's argument completely ignores the fact that, regardless of whether a "purchase of a software package" can be considered a "sale of goods," the transaction at issue did not involve a sale of a copy of a software package, as in the cases cited by Plaintiff. To the contrary, the transaction at issue was for a mere revocable license

1  to use the software for a temporary subscription period.  *See* EULA ¶¶ 1.2-1.3.  Accordingly, the
2  transaction at issue is not governed by the Commercial Code because it involved a pure transfer
3  of intellectual property rights, and not a sale of a software package.  Mot. at 9 (citing several
4  cases holding California Commercial code does not govern pure software licenses).

5        Plaintiff also makes no attempt to address his failure to plead the required elements of an
6  express warranty.  As discussed in the opening motion, he (a) fails to allege any actual
7  statements by Symantec that would constitute an express warranty, (b) fails to allege any
8  statements made by PC Tools that contained the exact terms of the alleged express warranty, (c)
9  fails to allege any specifics about where and when such express warranties were made or the
10 specific statements made by PC Tools that included the alleged warranties, and (d) bases his
11 allegations upon "vague, highly subjective" statements of opinion and puffery that "cannot
12 support liability under a claim for breach of warranty."  Mot. at 9.  Plaintiff's failure to respond
13 to any of these arguments is a concession that the claim is defective on these grounds.

14       Lastly, Plaintiff's attempt to argue that PC Tools cannot disclaim the alleged express
15 warranty fails because it misses the point entirely.  The written disclaimers in the EULA simply
16 prove the implausibility of Plaintiff's allegation that PC Tools expressly warranted that the
17 software would achieve specific results – especially where Plaintiff fails to identify the specific
18 content and location of any statement containing such an express warranty.  As explained in the
19 motion to dismiss, PC Tools could never guarantee success in removing errors from all
20 computers because every computer has its own unique problems.  Contrary to Plaintiff's
21 argument, because of numerous variables involved across the various computer systems of
22 millions of consumers, it is not inconsistent for PC Tools to advertise software that is designed to
23 detect and remove computer registry errors and at the same time disclaim any warranty that the
24 software will be able to achieve any specific success in doing so.  While Plaintiff argues that the
25 disclaimers in the EULA are unenforceable under Cal. Civ. Code § 1668, which condemns
26 contracts that seek to "exempt any one from responsibility for his own fraud, or willful injury to
27 the person or property of another," Opp. at 15 n.8, this statute has no application here because no
28 provision in the EULA seeks to exempt PC Tools from liability for fraudulent or tortious acts.

## V. THE BREACH OF CONTRACT CLAIM SHOULD BE DISMISSED

Symantec explained in its opening motion that Plaintiff's claim for breach of contract should be dismissed because (1) Plaintiff cannot allege any contract with Symantec; (2) Plaintiff fails to allege the terms of an express contract; (3) Plaintiff fails to sufficiently allege an implied contract; (4) the express terms of the software license agreement disclaim the obligations alleged by Plaintiff; and (5) Plaintiff fails to sufficiently allege any breach of the alleged contract.

Plaintiff's argument that he had a contract with Symantec "through PC Tools," Opp. at 1, fails because, as shown above, there are no facts sufficient to justify piercing the corporate veil.

Plaintiff next fails to show that he has adequately alleged the required elements of a breach of contract claim because he cannot show how any express or implied contractual obligation to provide "software that would detect and remove legitimate computer errors" ever became a part of the contract. As explained in the motion to dismiss, "[a] seller's representations on its website describing a product or service that are merely 'aspirational' and 'precatory' do not demonstrate the requisite manifestation of assent to create an implied contract." Mot. at 12. To the extent the software materials indicated that the software is designed to remove errors, such representations are not the legal equivalent of an enforceable contractual obligation. Consequently, even though the software is actually very effective at detecting and removing real errors, for purposes of this motion to dismiss, Plaintiff has failed to sufficiently allege any express or implied contractual obligation requiring the software to do so.

Plaintiff then fails to even respond to Symantec's arguments that: (1) the express terms of the written software license agreement disclaim any promise that the software would achieve any specific results; and that (2) Plaintiff cannot bring a claim for implied contract that disregards the express terms of the license agreement. *See* Mot. at 13 (citing cases). He thereby concedes that the claim is defective on these grounds. *See Perez*, 2011 WL 3809808, at *19.

Finally, Plaintiff cannot show that *after* the contract was formed – after Plaintiff purchased a license to use the full version of the software – the software did not remove "legitimate computer errors" from his computer pursuant to the alleged obligation to do so. Mot. at 13-14. Indeed, he makes no allegations whatsoever about what happened with respect to

removal of errors from his computer after he paid for and installed the full version of the software.  In response to this deficiency, Plaintiff argues that he does not need to allege whether the software ever failed to remove legitimate errors from his computer because he retained an expert "who determined that the [software] does not perform any credible diagnosis."  Opp. at 16-17.  Plaintiff's reasoning is flawed because if the software did in fact remove legitimate errors from Plaintiff's computer, there was no breach and certainly no contractual damages.  Even with a "misdiagnosis," if the software ultimately removed actual errors then Plaintiff got what he paid for.  Plaintiff does not allege that his expert ever examined Plaintiff's computer or the operation of the software on Plaintiff's computer.  *See* FAC ¶¶ 45-46.  Even more telling, Plaintiff does not allege any conclusion by his expert that the software cannot remove "legitimate" errors.  *See id.*  Nor could Plaintiff ever make such an allegation consistent with Rule 11 because the software does, in fact, detect and remove errors, as demonstrated by the numerous awards and reviews that praise PC Tools software for its efficacy.

## VI. THE IMPLIED COVENANT CLAIM SHOULD BE DISMISSED

Symantec explained in its opening motion that Plaintiff's breach of the implied covenant claim should be dismissed because (1) it is duplicative of the breach of contract claim; (2) the alleged conduct did not deprive Plaintiff of the fruits of the contract; and (3) it is based on conduct permitted by the contract.

Despite his arguments to the contrary, Plaintiff's own brief demonstrates that his implied covenant claim is merely duplicative of his contract claim because his descriptions of the alleged breach for each claim are identical.  *Compare* Opp. at 16 (arguing that Defendants breached the alleged contract by failing to provide "software that would accurately identify, report and repair legitimate computer errors"), *with id.* at 18 (arguing that Defendants breached implied covenant by "failing to provide software that honestly and accurately detected, reported and repaired errors").  Dismissal is therefore proper.  *Green Desert Oil Group v. BP West Coast Prods.*, No. 11-02087 CRB, 2012 WL 555045, at *5 (N.D. Cal. Feb. 21, 2012) ("when an implied covenant claim is merely duplicative of the contract claim, it is subject to dismissal").

Plaintiff also fails to demonstrate that he was denied the fruits of the contract. Despite arguing that he received "nothing in return for the money he paid," Opp. at 18, this argument has no factual support. As explained above, Plaintiff does not allege any facts showing that the purchased software did not, in fact, remove "legitimate computer errors" from his computer.

Finally, Plaintiff makes no attempt to overcome the problem that an implied covenant claim cannot be based on conduct permitted by the parties' contract. Here, the EULA expressly contemplates that, while the software is designed to repair errors, in some cases it might not be able to do so. EULA ¶¶ 4.1, 4.5(a). Consequently, even if the software had been unsuccessful in repairing errors on Plaintiff's computer, the implied covenant was not breached. Plaintiff's failure to respond is a concession that his claim is deficient on this point.

## VII. THE UNJUST ENRICHMENT CLAIM SHOULD BE DISMISSED

Symantec explained in its opening brief that under Washington law Plaintiff's unjust enrichment claim fails because where "a contract exists, Plaintiff may not bring a claim on the theory of unjust enrichment," and here, there is no dispute that there was a contract governing the transaction at issue. Mot. at 15 (citing cases). In his opposition brief, Plaintiff confusingly argues that "Defendant misconstrues the status of California law on whether unjust enrichment is a viable cause of action." Opp. at 19. Plaintiff apparently copied a paragraph regarding unjust enrichment from another brief into his brief in this case, even though the copied argument has nothing to do with the point raised by Symantec. Plaintiff proffers no response to the point actually made in Symantec's motion.

Nor could Plaintiff counter the point made by Symantec. Even under California law, "unjust enrichment is an action in quasi-contract, which does not lie when an enforceable, binding agreement exists defining the rights of the parties." *Paracor Finance, Inc. v. Gen. Elec. Capital Corp.*, 96 F.3d 1151, 1167 (9th Cir. 1996); *accord Digital Envoy, Inc. v. Google, Inc.*, No. 04-1497 RS, 2005 WL 2999364, at *5 (N.D. Cal. Nov. 8, 2005). Plaintiff's claim would further fail under California law because it is duplicative of his fraud claim. *In re Apple and AT&T iPad Unlimited Data Plan Litig.*, 802 F. Supp. 2d 1070 (N.D. Cal. 2011).

### VIII. PLAINTIFF'S CLAIMS AGAINST SYMANTEC SHOULD BE DISMISSED WITH PREJUDICE

Now that Plaintiff has had multiple opportunities to attempt to properly state a claim and has demonstrated that he cannot do so, his claims should be dismissed with prejudice. *Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 1007 (9th Cir. 2009) (dismissal with prejudice appropriate where plaintiff previously had opportunity to amend); *Eclectic Props. East, LLC v. The Marcus & Millichap Co.*, No. 09-00511 RMW, 2012 WL 713289, at *17 (N.D. Cal. Mar 5, 2012) (dismissal with prejudice appropriate where flaws "[can]not necessarily [be] fixed by additional facts" and where the alleged facts "render plaintiffs' theory implausible"); *Carrico v. City and Cnty. of San Francisco*, 656 F.3d 1002, 1008 (9th Cir. 2011) (denying leave to amend where plaintiffs failed to "propose any specific allegations" to cure their defective claims).

Here, Plaintiff made his first attempt to state a claim against Symantec when he filed his original complaint initiating this action. *See* ECF No. 1. After Symantec moved to dismiss the original complaint, ECF No. 28, Plaintiff did not even attempt to defend his claims or oppose the motion. ECF No. 32. Instead, he chose to try again to state a claim by amending his complaint. ECF No. 33. Despite his amendments, the amended complaint is still deficient on multiple levels as outlined above and in Symantec's second motion to dismiss, ECF No. 38. Any further leave to amend would be futile because Plaintiff cannot satisfy the missing elements of his claims without violating Rule 11 – as the award-winning software does, in fact, detect and remove errors – and because the alleged facts prove Symantec was not a party to the transaction.

### CONCLUSION

For foregoing reasons and the reasons stated in Symantec's opening brief, the First Amended Complaint should be dismissed with prejudice.

Dated:  May 8, 2012

WILSON SONSINI GOODRICH & ROSATI
Professional Corporation

By: /s/ Maura L. Rees
        Maura L. Rees

*Attorneys for Defendant*
Symantec Corporation