KEITH E. EGGLETON, State Bar No. 159842
MAURA L. REES, State Bar No. 191698
ANTHONY J WEIBELL, State Bar No. 238850
WILSON SONSINI GOODRICH & ROSATI
Professional Corporation
650 Page Mill Road
Palo Alto, CA 94304-1050
Telephone: (650) 493-9300
Facsimile: (650) 565-5100
E-mail: keggleton@wsgr.com;
mrees@wsgr.com; aweibell@wsgr.com

Attorneys for Defendant
SYMANTEC CORPORATION

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| JAMES GROSS,<br><br>Plaintiff,<br><br>v.<br><br>SYMANTEC CORPORATION, et al.,<br><br>Defendants. | CASE NO.: C 12-00154 CRB<br><br>**SYMANTEC'S MOTION TO DISMISS THE SECOND AMENDED COMPLAINT**<br><br>Date: October 5, 2012<br>Time: 10:00 AM |

Defendant Symantec Corporation ("Symantec") moves to dismiss the Second Amended Complaint filed by Plaintiff James Gross ("Complaint" or "SAC") in which Plaintiff alleges that he was deceived into purchasing software developed and sold by a subsidiary of Symantec. As in his previous complaint dismissed by the Court, Plaintiff continues to allege that the software at issue, which scans a user's computer system to identify and fix errors in the computer's registry, is "scareware" that allegedly does not adequately or correctly characterize the errors found on a computer system. SAC ¶¶ 48-52.

Plaintiff's allegations are without merit. Symantec is world-renowned for its top-of-the-line computer software and has been recognized for both the quality of its software and for its commitment to ethical leadership. Contrary to Plaintiff's allegations that the software at issue "dupes" consumers into purchasing something with no value, the software has in fact won industry awards for its efficacy, offers among the best computer cleaning tools available to consumers, and has been praised by industry reviewers as "outstanding," "the best option for those seeking peace of mind and ease of use," and for having "delivered a noticeable performance improvement, which means that the software works as advertised." Plaintiff will be unable to prove his baseless allegations. But even for purposes of the motion to dismiss, where Plaintiff's factual allegations must be taken as true, Plaintiff's Complaint should be dismissed under Rule 12(b)(6) for failure to state a claim, as well as under Rule 9(b) for failure to allege the claims with the requisite specificity.

The Court previously dismissed Plaintiff's complaint for failure to state a claim and failure to allege fraud with the requisite specificity. While the SAC attempts to cure the defects noted by the Court in its prior dismissal order, the SAC fails to do so. Specifically, with respect to the allegations of fraud that underlie Plaintiff's lawsuit, the SAC attempts to cure the defects in the allegations of fraud by alleging specific statements currently present on the PC Tools website about the functionality of the software purchased by Plaintiff. But the SAC is unable to allege any facts showing that the alleged statements were false. The SAC further fails to allege facts showing that PC Tools had the requisite intent to defraud its customers.

With respect to the California statutory causes of action that were dismissed for failure to allege conduct occurring California, the SAC attempts to cure the defects by alleging that Symantec's marketing and advertising departments are located in California. But the SAC cannot allege that the Registry Mechanic software purchased by Plaintiff was designed or marketed in California because that was a PC Tools product designed and marketed by PC Tools in Australia. The California Commercial Code § 2313 express warranty claim should also be dismissed with prejudice for inability to identify any breach of warranty or any injury.

With respect to the breach of contract cause of action that was dismissed for failure to identify any breach of contract in the operation of the full version of the software, the SAC attempts to cure the defects by merely alleging in conclusory fashion that the full version of the software fails to perform as advertised. But the SAC does not and cannot allege that the full version fails to clean and repair all of the invalid and missing registry entries identified in the error report generated by the software. The breach of contract claim should also be dismissed with prejudice for inability to identify any other breach of contract or any contract damages.

With respect to the implied covenant claim that was dismissed as duplicative of the breach of contract claim, it should be dismissed again because it is still duplicative of the breach of contract claim and also fails to show that Plaintiff was denied the benefit of the contract.

For all of these reasons, Plaintiff's complaint should be dismissed with prejudice because Plaintiff has now had three failed chances to attempt to state a claim and because any further amendment would be futile.

**TABLE OF CONTENTS**

Page

NOTICE OF MOTION AND MOTION ...................................................................... 6

STATEMENT OF THE ISSUES .............................................................................. 6

MEMORANDUM OF POINTS AND AUTHORITIES ............................................... 1

STATEMENT OF FACTS AND ALLEGATIONS ...................................................... 1

     A.    The Parties .................................................................................. 1

     B.    The PC Tools Registry Mechanic Software ................................. 1

     C.    Plaintiff's Lawsuit ....................................................................... 2

     D.    Dismissal of Plaintiff's Prior Complaints .................................... 3

     E.    Plaintiff's Second Amended Complaint ....................................... 4

ARGUMENT ........................................................................................................ 4

I.     LEGAL STANDARD ...................................................................... 4

II.    THE COMPLAINT AS A WHOLE SHOULD BE DISMISSED BECAUSE IT DOES NOT AND CANNOT ALLEGE ANY FACTUAL EVIDENCE OF FRAUD ....... 5

     A.    Plaintiff Does Not and Cannot Allege Any Facts Showing the Representations Made on the Product Website Were Fraudulent .......................... 6

     B.    Plaintiff Does Not and Cannot Allege Facts Showing that Statements in the Software About "High Priority" Errors or "Low" System Health Are Fraudulent .................................................................................. 7

     C.    The SAC Fails to Allege Any Facts Showing PC Tools Intended to Defraud its Customers .................................................................... 9

III.   THE STATUTORY CAUSES OF ACTION SHOULD BE DISMISSED BECAUSE THE ALLEGED CONDUCT OCCURRED OUTSIDE CALIFORNIA ....... 9

IV.   THE EXPRESS WARRANTY CLAIM SHOULD BE DISMISSED FOR INABILITY TO IDENTIFY ANY BREACH OF WARRANTY OR INJURY ............. 10

V.    THE BREACH OF CONTRACT CLAIM SHOULD BE DISMISSED FOR FAILURE TO IDENTIFY ANY BREACH OF CONTRACT OR DAMAGES ............ 12

VI.   THE IMPLIED COVENANT CLAIM SHOULD BE DISMISSED BECAUSE IT IS DUPLICATIVE OF THE CONTRACT CLAIM AND FAILS TO SHOW INJURY ....................................................................................... 13

CONCLUSION .................................................................................................... 14

3

**CASES**

4

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ......................................................................... 4

5

*Autodesk, Inc. v. Dassault Systemes SolidWorks Corp.*, 685 F. Supp. 2d 1001 (N.D.
6       Cal. 2009) ............................................................................................................... 9

7       *Badella v. Deniro Mktg. LLC*, No. 10-3908, 2011 WL 5358400 (N.D. Cal. Nov. 4,
        2011) ...................................................................................................................... 10

8

9       *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ......................................................... 4

10      *Colony Cove Props., LLC v. City of Carson*, 640 F.3d 948 (9th Cir. 2011) .................. 4

11      *Glen Holly Enter., Inc. v. Tektronix, Inc.*, 352 F.3d 367 (9th Cir. 2003) ....................... 8

12      *Kearns v. Ford Motor Co.*, 567 F.3d 1120 (9th Cir. 2009) ............................................ 5

13      *Lazy Y Ranch Ltd. v. Behrens*, 546 F.3d 580 (9th Cir. 2008) ..................................... 4, 5

14      *Louis v. Nailtiques Cosmetic Corp.*, 423 F. App'x 711 (9th Cir. 2011) ......................... 8

15      *Neu–Visions Sports, Inc. v. Soren/McAdam/Bartells*, 86 Cal. App. 4th 303 (2000) ...... 8

16      *Newcal Indus., Inc. v. Ikon Office Solution*, 513 F.3d 1038 (9th Cir. 2008) .................. 8

17      *Rosal v. First Fed. Bank of Cal.*, 671 F. Supp. 2d 1111 (N.D. Cal. 2009) .................. 14

18      *Sajfr v. BBG Commc'ns, Inc.*, No. 10-2341, 2012 WL 398991 (S.D. Cal. Jan. 10,
        2012) ...................................................................................................................... 10

19      *Sanders v. Apple Inc.*, 672 F. Supp. 2d 978 (N.D. Cal. 2009) ................................... 11

20      *Schmier v. U.S. Court of Appeals*, 279 F.3d 817 (9th Cir. 2002) ................................... 4

21      *Swartz v. KPMG LLP*, 476 F.3d 756 (9th Cir. 2007) .................................................... 5

22      *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097 (9th Cir. 2003) ..................................... 5

23      *Williams v. Beechnut Nutrition Corp.*, 185 Cal. App. 3d 135 (1986) .......................... 11

24      *Zepeda v. PayPal, Inc.*, 777 F. Supp. 2d 1215 (N.D. Cal. 2011) ................................ 14

25

**STATUTES**

26      California Business & Professions Code Section 17200 ........................................ 9, 10

27      California Commercial Code § 2313 ................................................................... 10, 11

28

# RULES

Fed. R. Civ. P. 4(c) ................................................................................................................ 1

Fed. R. Civ. P. 8 ............................................................................................................... 4, 5

Fed. R. Civ. P. 9(b) ................................................................................................. 3, 4, 5, 7, 9

Fed. R. Civ. P. 12(b)(6) ..................................................................................................... 4, 5, 9

Fed. R. Civ. P. 15(a) ............................................................................................................ 3

## NOTICE OF MOTION AND MOTION

PLEASE TAKE NOTICE that on October 5, 2012, at 10:00 a.m. in the courtroom of the Honorable Charles R. Breyer, United States District Court, Northern District of California, San Francisco Division, Courtroom 6, 17th Floor, 450 Golden Gate Avenue, San Francisco, CA, defendant Symantec Corporation ("Symantec") will, and hereby does, move the Court for an order dismissing with prejudice the Second Amended Complaint ("SAC") filed by plaintiff James Gross ("Plaintiff") on August 14, 2012. This motion is made pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted and Fed. R. Civ. P. 9(b) for failure to plead circumstances of fraud with requisite particularity. The motion is based on this Notice of Motion and Motion, the supporting Memorandum of Points and Authorities, the prior order of dismissal entered by the Court on July 31, 2012, facts that are subject to judicial notice pursuant to the request for judicial notice filed herewith, certain terms of the contract between the parties previously submitted to the Court as ECF No. 28-3, all pleadings and papers on file in this action, oral argument of counsel, and any other matter which may be submitted at the hearing.

## STATEMENT OF THE ISSUES

1.      Has Plaintiff failed to state a claim upon which relief can be granted with respect to the causes of action alleged in the Complaint, such that the Complaint should be dismissed?

2.      Has Plaintiff failed to plead fraud with particularity, such that all causes of action based upon allegations of fraud should be dismissed?

3.      Should the Complaint or any of the individual causes of action asserted therein be dismissed with prejudice?

**MEMORANDUM OF POINTS AND AUTHORITIES**

**STATEMENT OF FACTS AND ALLEGATIONS**

**A.      The Parties**

Defendant Symantec is a software company that provides award-winning software products to help its customers secure and manage their computer systems.  Symantec was number 382 on the Fortune 500 list in 2011 and ranks #7 in the Computer Software Category on the Fortune Most Admired Companies List.  In late 2008, Symantec acquired PC Tools Holding Pty. Ltd., an Australian software company (along with its subsidiaries including co-defendant PC Tools Ltd., an Irish corporation) that develops and licenses software that fixes registry errors and privacy issues on a personal computer.[1]  ECF No. 50 (hereinafter "SAC") ¶¶ 1, 3, 8, 16.

Plaintiff James Gross is a Washington resident who allegedly tested a trial version of a PC Tools software product, PC Tools Registry Mechanic, and later purchased a license to use the full version via the PC Tools website at www.pctools.com in April 2011 from Irish defendant PC Tools Ltd.  *Id.* ¶¶ 6, 30, 54, 57.

**B.      The PC Tools Registry Mechanic Software**

Plaintiff alleges that in purchasing the PC Tools Registry Mechanic software he relied on statements posted to the PC Tools website allegedly stating that the software is designed to "Speed[] up your PC[]"; "Optimize[] performance by scanning and repairing invalid registry entries to fix freezes, crashes, and slowdowns"; "Remove[] orphaned registry references to improve performance and stability"; "[P]rovide[] options to boost system speed"; "Protect[] Internet privacy and personal information"; and "Improve[] system response time."  *Id.* ¶ 40.

During the relevant time when Plaintiff allegedly went to the PC Tools website and downloaded the PC Tools Registry Mechanic software, the following overview explanation of the software was posted on the first page of the product website:

> With Registry Mechanic you can safely clean, repair and optimize your Windows® registry with a few simple mouse clicks! Problems with the Windows registry are a common cause of Windows crashes, slow performance and error messages. By

---

[1] Defendant PC Tools Ltd. has not yet been served in this action as required by Fed. R. Civ. P. 4(c) and thus has not appeared and has no obligation to respond to the SAC.

regularly using a registry cleaner to fix registry errors your system will be faster, more stable and system performance will improve without expensive hardware upgrades. Learn more about the importance of a clean registry with our registry insight.

Registry Mechanic uses a high-performance detection algorithm to quickly identify missing and invalid references in your Windows registry. Normal daily use, installing and uninstalling software, missing or corrupt hardware drivers, and surfing the Internet can corrupt registry entries – slowing your PC down and even crashing it.

With a few easy steps, Registry Mechanic will scan your entire registry for any invalid entries in the Windows registry and provide a detailed list of all registry errors found. You can then choose to selectively clean each item or automatically repair them all. For your convenience and protection, Registry Mechanic makes a backup of any repairs made so that you can easily recover any changes if needed.

Req. for Judicial Notice ("RJN"), Ex 1 at 1-2.

The Registry Mechanic "Get Started Guide" on the PC Tools website further explained that to "maintain good system health using Registry Mechanic," users should "Click Clean Your Registry" to "begin a scan of your registry for problems," "click Repair to fix all problems" detected, "Click Defragment your Registry," "Click Tuneup Your Services," "Click Clean Your Disks," and "Schedule a weekly scan" because "Periodic scans will help keep your system healthy." *Id.* Ex. 2 at 2-3. With respect to the trial version of the software, the product website explained that "[t]he trial is time unlimited and removes problems found in 5 sections of the registry only. A registered version is required to remove all detected problems." *Id.* Ex.1 at 7.

### C.     Plaintiff's Lawsuit

Plaintiff's lawsuit alleges that the Registry Mechanic software is "scareware" that does not correctly or adequately inform users about the registry errors on their systems. *See* SAC ¶¶ 4, 48-52. Plaintiff asserts five causes of action: (1) violation of California Business and Professions Code § 17200, (2) fraudulent inducement, (3) breach of express warranty under California Commercial Code § 2313, (4) breach of contract, and (5) breach of the implied covenant of good faith and fair dealing. Plaintiff seeks to represent a nationwide class of users who purchased PC Tools Registry Mechanic and/or two other software applications that Plaintiff did *not* purchase: PC Tools Performance Toolkit and Symantec Norton Utilities. *Id.* ¶ 60.

## D. Dismissal of Plaintiff's Prior Complaints

Symantec moved to dismiss Plaintiff's original complaint in its entirety for failure to state a claim. *See* ECF No. 28. Plaintiff made no attempt to oppose the first motion to dismiss. Instead, Plaintiff consented to dismissal and elected to voluntarily amend his complaint pursuant to Fed. R. Civ. P. 15(a) to cure the defects described in Symantec's motion. *See* ECF No. 32. Plaintiff then filed a First Amended Complaint ("FAC") that added as a defendant PC Tools, Ltd. -- the party with whom Plaintiff contracted to license the software at issue -- and alleged that Symantec is liable for the acts of PC Tools, Ltd. *See* ECF No. 33 ¶¶ 1, 8, 16-33. Because the FAC failed to cure the defects described in Symantec's original motion to dismiss, Symantec responded to the FAC by filing another motion to dismiss. ECF No. 38.

The Court granted Symantec's motion and dismissed the entire FAC but gave Plaintiff a chance to amend some of his claims. *See* ECF No. 49 (hereinafter, "FAC Dismissal Order"). Specifically, the Court held that Plaintiff's complaint, which is grounded in allegations of fraud, failed to meet the heightened pleading requirements of Rule 9(b) because "Plaintiff fail[ed] to plead the content of the misrepresentations relating to software utility with particularity." *Id.* at 6-7. The Court further clarified that "[t]he FAC does not provide any allegations indicating what Symantec <u>actually</u> said regarding the functional capabilities of its software." *Id.* at 7. The Court explained that "[w]ithout direct quotations from the PC Tools website or other marketing materials, the Court cannot determine exactly how Symantec advertised its products," and that "Plaintiff's entire suit turns on how Symantec's representations compare to the actual functionality of its software." *Id.* at 9. The Court concluded that this defect "is fatal to all Plaintiff's claims because the same allegations of fraudulent conduct support each claim." *Id.*

As additional grounds for dismissal, with respect to Plaintiff's first and third causes of action based on California statutory law, the Court held that these claims should also be dismissed because California law cannot be applied to conduct that took place outside California, and Plaintiff failed "to allege specific conduct that occurred in California." *Id.* at 14. With respect to Plaintiff's fourth cause of action for breach of contract, the Court held that this claim should also be dismissed because Plaintiff failed to allege that the full version of the software

1  purchased by Plaintiff (rather than the trial version) did not "perform the advertised functions."

2  *Id.* at 21.  With respect to Plaintiff's fifth cause of action for breach of the implied covenant, the

3  Court held that this claim should also be dismissed because it was based on the same allegations

4  as the breach of contract claim and was thus "superfluous." *Id.* at 22.[2]

5          **E.      Plaintiff's Second Amended Complaint**

6          Plaintiff filed his third complaint, the SAC, on August 14, 2012, amending his allegations

7  in an attempt to cure the defects noted by the Court in the FAC Dismissal Order.  The SAC

8  repeats substantially the same allegations as the FAC, with only a few cursory amendments to

9  recite elements of the causes of action found missing in the FAC.  Plaintiff's cursory

10 amendments are superficial and insufficient to cure the defects recognized by the Court.

11                                     **ARGUMENT**

12 **I.     LEGAL STANDARD**

13         Under Rule 12(b)(6), a complaint is dismissed if it "fail[s] to state a claim upon which

14 relief can be granted."  Fed. R. Civ. P. 12(b)(6).  Under the "notice" pleading standard of Rule 8,

15 "[t]o survive a motion to dismiss for failure to state a claim, the plaintiff must allege 'enough

16 facts to state a claim to relief that is plausible on its face.'"  *Lazy Y Ranch Ltd. v. Behrens*, 546

17 F.3d 580, 588 (9th Cir. 2008) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)).

18 "[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss."

19 *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).  "Threadbare recitals of the elements of a cause of

20 action, supported by mere conclusory statements, do not suffice."  *Id.* at 678.

21         In deciding the motion, the Court should not accept the truth of conclusory allegations or

22 legal conclusions cast in the form of factual allegations.   *Id.* at 678-79; *Colony Cove Props.,*

23 *LLC v. City of Carson*, 640 F.3d 948, 955 (9th Cir. 2011); *Schmier v. U.S. Court of Appeals*, 279

24 F.3d 817, 820 (9th Cir. 2002).  Nor should the Court "accept as true allegations contradicting

25 documents that are referenced in the complaint or that are properly subject to judicial notice."

26

27         [2] The Court also dismissed with prejudice a sixth cause of action for unjust enrichment,
   holding that unjust enrichment is not a separate cause of action where there is an express contract
28 between the parties. *Id.* at 23.

*Lazy Y Ranch*, 546 F.3d at 588; *see also Swartz v. KPMG LLP*, 476 F.3d 756, 763 (9th Cir. 2007) ("a court may consider a writing referenced in a complaint but not explicitly incorporated therein if the complaint relies on the document and its authenticity is unquestioned").

Under Rule 9(b), claims grounded in fraud are held to an even higher pleading standard than claims subject only to the notice pleading standard of Rule 8. A "party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). A motion to dismiss under Rule 9(b) for failure to plead with particularity is the functional equivalent of a motion to dismiss under Rule 12(b)(6) for failure to state a claim. *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1107 (9th Cir. 2003). Where a claim is based on allegations of fraud, even though "fraud is not a necessary element of [the] claim . . . the pleading of that claim as a whole must satisfy the particularity requirement of Rule 9(b)." *Id.* at 1103-04.

Here, Plaintiff's derogatory allegations about the software at issue are untrue. For purposes of the motion to dismiss, however, in which the falsity of Plaintiff's allegations is largely irrelevant (except where they contradict the documents referenced in the Complaint), Plaintiff's Complaint should still be dismissed under Rule 12(b)(6) for failure to state a claim, as well as under Rule 9(b) for failure to allege the claims -- which are all grounded in fraud -- with the requisite specificity. Because Plaintiff has had three opportunities to state a claim but has failed to do so, Plaintiff's claims should now be dismissed with prejudice.

## II. THE COMPLAINT AS A WHOLE SHOULD BE DISMISSED BECAUSE IT DOES NOT AND CANNOT ALLEGE ANY FACTUAL EVIDENCE OF FRAUD

Plaintiff's fraudulent inducement claim, as well as his other claims, which are each grounded in fraud and based on the same allegedly fraudulent representations, should be dismissed with prejudice because Plaintiff has not cured and cannot cure the defects recognized by the Court in the FAC Dismissal Order, and is otherwise unable to satisfy the requirement of Rule 9(b) to plead fraud with particularity. *See* FAC Dismissal Order at 5-6 ("Because Plaintiff's allegations against Symantec 'rely on a unified fraudulent course of conduct,' the pleading is 'grounded in fraud . . . [and] as a whole must satisfy the particularity requirement of Rule 9(b).'") (quoting *Vess*, 317 F.3d at 1106; *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125

(9th Cir. 2009)); *id.* at 9 ("Plaintiff's entire suit turns on how Symantec's representations compare to the actual functionality of its software.").

As discussed below, Plaintiff does not allege any facts showing the various representations made on the PC Tools website and by the software were false. Plaintiff further fails to allege facts showing that PC Tools had the requisite intent to defraud its customers.

### A. Plaintiff Does Not and Cannot Allege Any Facts Showing the Representations Made on the Product Website Were Fraudulent

The SAC should be dismissed to the extent it is based on representations made on the PC Tools website and in the product marketing materials because Plaintiff fails to allege facts demonstrating that these representations were fraudulent.

While Plaintiff has now identified the alleged statements made by PC Tools on its website about the utility of the Registry Mechanic software, Plaintiff's complaint does not and cannot allege facts demonstrating any plausible falsity in those statements. Specifically, Plaintiff does not allege any facts showing that the Registry Mechanic software cannot be used to help "clean, repair and optimize your Windows® registry." Nor does Plaintiff allege any facts showing that users who "regularly" use the Registry Mechanic software to fix registry errors do not experience "faster, more stable" computer systems with "improve[d]" system "performance." Nor does Plaintiff allege any facts showing that Registry Mechanic does not use "a high-performance detection algorithm to quickly identify missing and invalid references in your Windows registry." Nor does Plaintiff allege any facts showing that Registry Mechanic fails to "scan your entire registry for any invalid entries in the Windows registry and provide a detailed list of all registry errors found."

While Plaintiff alleges that his attorneys hired an "expert" to examine the utility of the software, none of the alleged expert's conclusions demonstrate any falsity in the representations on the product website. As set forth in the SAC, Plaintiff's expert did not deny, and Plaintiff does not dispute, that the Registry Mechanic software does in fact scan a computer system to detect and report invalid references in the computer registry. Nor did Plaintiff's expert deny that the software does in fact repair invalid references in the computer registry. Nor did Plaintiff's

expert deny that the regular removal of invalid references in the computer registry can improve system speed, performance, and stability.

Because Plaintiff has not and cannot allege any actual facts showing that the representations made on the PC Tools website and in marketing materials were false, the SAC should be dismissed with prejudice to the extent it is based on these alleged representations.

### B. Plaintiff Does Not and Cannot Allege Facts Showing that Statements in the Software About "High Priority" Errors or "Low" System Health Are Fraudulent

In addition to statements on the PC Tools website, the SAC makes allegations about statements made in the Registry Mechanic software. The SAC should be dismissed to the extent it is based on allegations that the software labels certain errors as "high priority" or that a system has "low" health because Plaintiff alleges no specific facts showing this to be false, and because these are non-actionable statements of opinion.

With respect to the allegation that the software labels certain errors as "high priority," Plaintiff alleges no specific facts to demonstrate that this prioritization of errors is false. While Plaintiff alleges that some errors are reported as "high priority" even though they allegedly "are not credible threats" to a user's computer system (SAC ¶ 49), Plaintiff fails to explain what a "credible threat" to a computer would be. Plaintiff thus fails to meet the standard of Rule 9(b) to allege fraud with particularity because it is impossible to determine from his allegations whether the "high priority" characterization of errors is false and why. Plaintiff's allegation also assumes that errors are being prioritized based on their actual current "threat" to a computer system rather than on some other important basis, such as their different locations in the computer registry, the different computer processes of varying importance that could be delayed or interrupted because of the error, or the potential for errors of that particular type to be harmful (even if a specific error in question might be less harmful). Plaintiff's allegation ignores the obvious fact that where there are multiple invalid entries in the computer registry, even if none of them individually were a significant "threat" to the computer, they can still be prioritized based upon their importance relative to each other.

With respect to the allegation that the software reports computers as having "low" system health, Plaintiff alleges no facts to demonstrate that this characterization is false. While Plaintiff alleges that the software will always report that a user's computer has "low" system health if they have not yet run, or have not recently run, the software to clean up the computer system (SAC ¶¶ 49, 52), this would not be evidence of fraud. Indeed, the PC Tools Registry Mechanic website includes statements that the cleaning processes in the software should be utilized *regularly* in order to have a healthy system. The front page of the Registry Mechanic website noted that "[p]roblems with the Windows registry are a common cause of Windows crashes, slow performance and error messages," and that "[b]y *regularly* using a registry cleaner to fix registry errors your system will be faster, more stable and system performance will improve without expensive hardware upgrades." RJN Ex. 1 at 1 (emphasis added). The documentation on the website further explained that to obtain and "maintain good system health using Registry Mechanic," users should "Click Clean Your Registry" to "begin a scan of your registry for problems," "click Repair to fix all problems" detected, "Click Defragment your Registry," "Click Tuneup Your Services," "Click Clean Your Disks," and "Schedule a weekly scan" because "Periodic scans will help keep your system healthy." *Id.* Ex. 2 at 2-3.

In any event, vague and subjective representations that an error should be considered a "high priority" or that system health is "low" are non-actionable statements of opinion. *See Neu–Visions Sports, Inc. v. Soren/McAdam/Bartells*, 86 Cal. App. 4th 303, 308 (2000) ("The law is quite clear that expressions of opinion are not generally treated as representations of fact, and thus are not grounds for a misrepresentation cause of action."); *Louis v. Nailtiques Cosmetic Corp.*, 423 F. App'x 711, 713 (9th Cir. 2011) (same); *see also Newcal Indus., Inc. v. Ikon Office Solution*, 513 F.3d 1038, 1053 (9th Cir. 2008) (causes of action based on statements of opinion that are "not a quantifiable claim and do[] not describe (or misdescribe) any specific or absolute characteristic of [the item at issue]" are properly dismissed at the pleading stage). Indeed, the Ninth Circuit has specifically held that phrases such as "high priority" are not actionable because they are too "generalized, vague and unspecific." *Glen Holly Enter., Inc. v. Tektronix, Inc.*, 352 F.3d 367, 379 (9th Cir. 2003). Similarly, courts have held that statements evaluating potential

risks from not taking a recommended course of conduct are non-actionable.  *See, e.g.*, *Autodesk, Inc. v. Dassault Systemes SolidWorks Corp.*, 685 F. Supp. 2d 1001, 1021-22 (N.D. Cal. 2009) (statement that not using product was "[a] real risk you shouldn't take" was non-actionable).

Because Plaintiff cannot allege any actual facts showing fraud in representations allegedly made by the Registry Mechanic software, the SAC should be dismissed with prejudice to the extent it is based on such alleged representations.

### C. The SAC Fails to Allege Any Facts Showing PC Tools Intended to Defraud its Customers

The SAC should be dismissed because the allegations therein and the documents referenced therein render implausible any conclusion that PC Tools intended to defraud its customers.  *See* FAC Dismissal Order at 6 n.4 (recognizing that Plaintiff must demonstrate "intent to defraud").  Plaintiff does not allege, nor could he, that the software failed to disclose in its error report the exact registry entries that it detected as being missing or invalid.  Indeed, the error report generated by the software provides "a detailed list of all registry errors found" so a user "can then choose to selectively clean each item or automatically repair them all."  RJN, Ex. 1 at 1.  Users are thus free to use this detailed disclosure to form an opinion (or get a second opinion) about the health of their computer and the severity of the listed errors based on the type of invalid entries and their location in the computer registry.  PC Tools' transparency in the disclosures provided to its users completely undermines Plaintiff's allegation of an intent to conceal the true status of users' computers. Because Plaintiff does not allege that PC Tools failed to disclose the underlying information sufficient to enable users to verify the representations about the registry errors found, any allegation that PC Tools intended to defraud its own customers is simply implausible.

### III. THE STATUTORY CAUSES OF ACTION SHOULD BE DISMISSED BECAUSE THE ALLEGED CONDUCT OCCURRED OUTSIDE CALIFORNIA

In addition to dismissal for failure to plead fraud with the requisite specificity, the statutory causes of action alleged in the SAC under California Business & Professions Code Section 17200 and California Commercial Code Section 2313 should also be dismissed with

prejudice because the conduct at issue that allegedly caused Plaintiff injury occurred outside California.

As the Court has already recognized, Plaintiff bears the "burden of linking the alleged misconduct to California in order to take advantage of California state law" because California statutory law only applies "when the alleged misconduct or injuries occurred in California." FAC Dismissal Order at 11-13; *see also Sajfr v. BBG Commc'ns, Inc.*, No. 10-2341, 2012 WL 398991, at *4 (S.D. Cal. Jan. 10, 2012) (dismissing Section 17200 claims where alleged conduct had "no connection to California"); *Badella v. Deniro Mktg. LLC*, No. 10-3908, 2011 WL 5358400, at *11 (N.D. Cal. Nov. 4, 2011) (declining to apply California statutory law where "Plaintiff does not point to particular proof that the alleged misrepresentations emanated from California").

The Court previously dismissed Plaintiff's statutory causes of action because he failed "to allege specific conduct that occurred in California" that gave rise to his injury. FAC Dismissal Order at 14. While Plaintiff now alleges in the SAC in conclusory fashion that *Symantec's* marketing and advertising departments are located in California (SAC ¶¶ 11, 43), that allegation is irrelevant because the Registry Mechanic software that Plaintiff purchased is a *PC Tools* product with source code and marketing materials developed in *Australia*, and licensed to Plaintiff and other U.S. users by an Irish company. SAC ¶¶ 8, 16, 24; *see also* RJN Ex. 3 ("PC Tools has offices located in Australia, United States and the Ukraine, with Research and Development headquartered in Sydney and Kiev."). Where Symantec may have created marketing materials for its own products is not relevant to the PC Tools Registry Mechanic product purchased by Plaintiff. Accordingly, because Plaintiff cannot allege that his alleged injury was caused by conduct that occurred in California, his California statutory causes of action should be dismissed with prejudice.

## IV.    THE EXPRESS WARRANTY CLAIM SHOULD BE DISMISSED FOR INABILITY TO IDENTIFY ANY BREACH OF WARRANTY OR INJURY

In addition to dismissal for inability to plead fraud and inability to plead conduct occurring in California, the California Commercial Code Section 2313 express warranty claim

should further be dismissed with prejudice for inability to identify any breach of warranty or any injury.

"To plead an action for breach of express warranty under California law, a plaintiff must allege: (1) the exact terms of the warranty; (2) reasonable reliance thereon; and (3) a breach of warranty which proximately caused plaintiff's injury." *Sanders v. Apple Inc.*, 672 F. Supp. 2d 978, 986-87 (N.D. Cal. 2009) (citing *Williams v. Beechnut Nutrition Corp.*, 185 Cal. App. 3d 135, 142 (1986)). "[A]n affirmation merely of the value of the goods or a statement purporting to be merely the seller's opinion or commendation of the goods does not create a warranty." Cal. Comm. Code § 2313(c)(2).

Here, Plaintiff alleges that the express warranties made with the sale of the software to Plaintiff included that the software could be used to help "Speed[] up your PC[]"; "Optimize[] performance by scanning and repairing invalid registry entries to fix freezes, crashes, and slowdowns"; "Remove[] orphaned registry references to improve performance and stability"; "[P]rovide[] options to boost system speed"; "Protect[] Internet privacy and personal information"; and "Improve[] system response time." SAC ¶¶ 40, 96. But Plaintiff fails to allege any facts showing a breach of these alleged warranties. Plaintiff does not allege any facts showing the software cannot be used to speed up a computer, optimize its performance, remove orphaned registry references, provide options to boost system speed, protect private information, and improve system response time.

Plaintiff further alleges that his attorneys hired an "expert" who allegedly opined that, with respect to the full version of the software, some of the "errors detected as 'High Priority' are not credible threats to a computer's functionality" and the full version of the software is "designed to automatically report that a PC's condition was lowered, based solely on the fact that a 'diagnostic scan' was not recently performed by the user." [3] SAC ¶ 49-52. Neither of these two

_____

[3] The express warranty claim applies only to the full version of the software that was actually sold to Plaintiff and not to the trial version which was never an item "sold" because express warranties can only be made "by the seller to the buyer" in a transaction for the sale of a good. Cal. Comm. Code § 2313; *see also id.* §§ 2101-2103.

conclusions by Plaintiff's expert show a breach of the alleged warranties listed above. Even if the software reports some errors that are not imminent "threats to a computer's functionality" and initially reports a low computer system health, the full version of the software could (and does) still effectively clean all the invalid entries detected in the registry and otherwise perform the tasks described in the product materials necessary to achieve high system health. Plaintiff's claim should thus be dismissed for inability to allege any actual breach of an express warranty.

Plaintiff's express warranty claim should also be dismissed for inability to show injury. Even if Plaintiff's expert were correct about the allegedly overstated characterizations of severity of errors or health of the system in the full version of the software, Plaintiff could not have suffered any injury. That would show only that the software was even more effective and comprehensive in cleaning computers than it needed to be. If Plaintiff's expert were correct, that would mean the software was so thorough, it detected and repaired registry entries that were not particularly serious threats, and was encouraging Plaintiff to run the software to clean the system even more often than allegedly necessary. Consequently, under Plaintiff's allegations, Plaintiff's computer system would actually be cleaner and more effective after using the software than originally promised, and Plaintiff could suffer no cognizable injury from this.

## V. THE BREACH OF CONTRACT CLAIM SHOULD BE DISMISSED FOR FAILURE TO IDENTIFY ANY BREACH OF CONTRACT OR DAMAGES

In addition to dismissal for inability to plead fraud as discussed above, the breach of contract claim should also be dismissed with prejudice for inability to identify any breach of contract or any contract damages.

With respect to Plaintiff's claim for breach of contract, the Court previously held that Plaintiff must allege facts sufficient to show that the full version of the software purchased by Plaintiff did not "perform the advertised functions." FAC Dismissal Order at 21. In the SAC, as with his breach of warranty claim, Plaintiff alleges that the terms of the contract were the list of statements made on the PC Tools website describing the function of the Registry Mechanic software. SAC ¶ 102. Consequently, Plaintiff's breach of contract claim is identical to his breach of express warranty claim and he is unable to plead a breach of contract or damages for

the same reasons he cannot plead a breach of warranty, as discussed above. He simply alleges no facts, nor could he, that the full version of the software fails to function as described. Even if the software functioned as claimed by Plaintiff's expert, that alleged behavior is not inconsistent with the description of the software on the PC Tools website.

Plaintiff also alleges that PC Tools was contractually obligated to provide "software that would accurately detect and remove legitimate computer errors from Plaintiff's and the Class's computers," SAC ¶ 102. But Plaintiff fails to identify any statement made on the PC Tools website that the full version of Registry Mechanic would only detect and repair "severe" errors (as measured by some unknown standard), or that the software would ignore what Plaintiff considers to be minor errors. The statements on the website as alleged by Plaintiff include no obligation prohibiting the full version of the software from taking a more comprehensive approach in deciding which invalid registry entries should be detected and removed. Notably, Plaintiff does not allege that the software is incapable of removing *actual invalid* registry entries. And in any event, Plaintiff includes no allegation that would demonstrate harm or damages to Plaintiff from the alleged behavior of the Registry Mechanic software as purchased. Rather, Plaintiff alleges only that the software seeks to convince the user to run the registry cleaning more often (SAC ¶ 52) – which does not result in any expense or loss to Plaintiff; rather, more frequent scans could only benefit Plaintiff's computer.

Plaintiff is thus unable to plead any breach of a contractual obligation and is likewise unable to plead any damages because, if anything, Plaintiff alleges that the software did a more thorough job of cleaning Plaintiff's computer system than contractually required by repairing all detected invalid registry entries and encouraging Plaintiff to use the software to clean his computer more often.

## VI.     THE IMPLIED COVENANT CLAIM SHOULD BE DISMISSED BECAUSE IT IS DUPLICATIVE OF THE CONTRACT CLAIM AND FAILS TO SHOW INJURY

In addition to being dismissed for failure to plead fraud as discussed above, the implied covenant claim should also be dismissed with prejudice because it is duplicative of the breach of contract claim and also fails to show that Plaintiff was denied the benefit of the contract.

"To establish a breach of an implied covenant of good faith and fair dealing, a plaintiff must establish the existence of a contractual obligation, along with conduct that frustrates the other party's rights to benefit from the contract." FAC Dismissal Order at 21 (quoting *Rosal v. First Fed. Bank of Cal.*, 671 F. Supp. 2d 1111, 1129 (N.D. Cal. 2009)). The Court previously held that Plaintiff's implied covenant claim should be dismissed because it was based on the same allegations as the breach of contract claim and was thus "superfluous." FAC Dismissal Order at 22; *see also Zepeda v. PayPal, Inc.*, 777 F. Supp. 2d 1215, 1221 (N.D. Cal. 2011) (an implied covenant claim is properly dismissed if it relies on the same alleged acts as a contract claim). As in the FAC, the implied covenant claim in the SAC is duplicative of the breach of contract claim because Plaintiff alleges the exact same conduct as the underlying cause of breach. *Compare* SAC ¶¶ 102-105, *with id.* ¶¶ 109-110. The implied covenant claim should thus again be dismissed as "superfluous."

The implied covenant claim should also be dismissed because Plaintiff does not and cannot allege any facts showing that he was denied his "rights to benefit from the contract." Indeed, as discussed above, if Plaintiff's allegations are true about the software's comprehensiveness in labeling errors and encouraging regular cleaning, PC Tools delivered a software product that cleaned Plaintiff's computer system even more thoroughly than promised. Plaintiff can therefore show no frustration of his right to receive the benefit of the contract.

## CONCLUSION

For the foregoing reasons, the Second Amended Complaint should be dismissed with prejudice.

Dated: August 31, 2012

WILSON SONSINI GOODRICH & ROSATI
Professional Corporation

By: /s/ Maura L. Rees
Maura L. Rees

*Attorneys for Defendant*
SYMANTEC CORPORATION