JAY EDELSON (Admitted *Pro Hac Vice*)
jedelson@edelson.com
RAFEY S. BALABANIAN (Admitted *Pro Hac Vice*)
rbalabanian@edelson.com
BENJAMIN H. RICHMAN (Admitted *Pro Hac Vice*)
brichman@edelson.com
CHANDLER R. GIVENS (Admitted *Pro Hac Vice*)
cgivens@edelson.com
EDELSON MCGUIRE LLC
350 North LaSalle Street, Suite 1300
Chicago, Illinois 60654
Telephone: (312) 589-6370
Facsimile: (312) 589-6378

SEAN P. REIS (SBN 184044)
sreis@edelson.com
EDELSON MCGUIRE LLP
30021 Tomas Street, Suite 300
Rancho Santa Margarita, California 92688
Telephone: (949) 459-2124
Facsimile: (949) 459-2123

*Attorneys for Plaintiff and the putative class*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| JAMES GROSS, individually and on behalf of all others similarly situated,<br><br>*Plaintiff*,<br><br>v.<br><br>SYMANTEC CORPORATION, a Delaware corporation, and PC TOOLS, LTD., an Irish limited company,<br><br>*Defendants*. | Case No. 3:12-cv-00154-CRB<br><br>**PLAINTIFF'S OPPOSITION TO DEFENDANT SYMANTEC'S MOTION TO DISMISS SECOND AMENDED COMPLAINT**<br><br>Date: October 5, 2012<br>Time: 10:00 a.m.<br>Judge: Honorable Charles R. Breyer |

# **TABLE OF CONTENTS**

I. INTRODUCTION .................................................................................................................. 1

II. FACTUAL AND PROCEDURAL BACKGROUND ........................................................ 3

    A. The Court's Order Dismissing Plaintiff's First Amended Complaint Identified Four Primary, but Curable, Defects ................................. 3

    B. Plaintiff's SAC Addresses Each of the Issues Identified in the Court's Order ................................................................................................. 4

III. ARGUMENT ........................................................................................................................ 5

    A. **PLAINTIFF HAS PROPERLY PLEADED HIS FRAUD-BASED CLAIMS IN ACCORDANCE WITH THE COURT'S INSTRUCTION** ............................................................................................... 5

        1. The SAC Sets Forth Exact Quotes of Symantec's Misrepresentations Regarding the Functional Capabilities of the Software at Issue ................................................................. 5

        2. Contrary to Symantec's Assertions, This Court has Already Ruled That Plaintiff's Expert's Analysis of the Software Provides a Sufficient Basis to Believe that Symantec's Representations are False .................................................................. 6

    B. **SYMANTEC'S MARKETING AND SALES OPERATIONS ARE LOCATED IN ITS CALIFORNIA OFFICES, AND IT HAS NOT SHOWN OTHERWISE** ..................................................................................... 9

    C. **HAVING PROPERLY PLEADED SYMANTEC'S MISREPRESENTATIONS, PLAINTIFF'S BREACH OF WARRANTY AND BREACH OF CONTRACT CLAIMS MUST SURVIVE AS WELL** ................................................................................ 11

        1. Plaintiff has Necessarily Alleged the Express Warranties and Contract Terms Breached by Symantec ..................................... 11

        2. The SAC also Clarifies that the Free Trial and Full Versions of Symantec's Software are Designed in a Uniformly Deceptive Manner ................................................................................ 12

    D. **PLAINTIFF HAS PROPERLY PLEADED THAT SYMANTEC ACTED IN BAD FAITH TO FRUSTRATE HIS AND THE CLASS'S ABILITY TO OBTAIN THE BENEFITS OF THEIR PURCHASE CONTRACTS** ....................................................................................................... 12

IV. CONCLUSION .................................................................................................................. 13

# TABLE OF AUTHORITIES

**United States Circuit Court of Appeals Cases:**

*Cooper v. Pickett*, 137 F.3d 616 (9th Cir. 1997) .................................................................................8

*Doe v. U.S.*, 58 F.3d 494 (9th Cir. 1995) ................................................................................... 13-14

*Fecht v. Price Co.*, 70 F.3d 1078 (9th Cir. 1995) ..................................................................................7

*Glen Holly Enter., Inc. v. Tektronix, Inc.*, 352 F.3d 367 (9th Cir. 2003) ...........................................9

*In re GlenFed, Inc. Sec. Litig.*, 42 F.3d 1541 (9th Cir. 1994) ..........................................................7-8

*Johnson v. Lucent Tech. Inc.*, 653 F.3d 1000 (9th Cir. 2011) ............................................................11

*Louis v. Nailtiques Cosmetic Corp.*, 423 F. App'x 711 (9th Cir. 2011) .............................................9

*Newcal Indus., Inc. v. Ikon Office Solution*, 513 F.3d 1038 (9th Cir. 2001) ......................................9

*Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393 (9th Cir. 1986) .........................13

*Warshaw v. Xoma Corp.*, 74 F.3d 955 (9th Cir. 1996) ....................................................................7-8

**United States District Court Cases:**

*Autodesk, Inc. v. Dassault Systemes SolidWorks Corp.*,
   685 F. Supp. 2d 1001 (N.D. Cal. 2009) ........................................................................................9

*In re Connetics Corp. Sec. Litig.*, 542 F. Supp. 2d 996 (N.D. Cal. 2008) .........................................7

*Lamke v. Sunstate Equip. Co., LLC*,
   No. C–03–4956, 2004 WL 2125869 (N.D. Cal. Sept. 22, 2004) ................................................13

*Marolda v. Symantec Corp.*, 672 F. Supp. 2d 992 (N.D. Cal. 2009) ................................................12

*Sanders v. Apple, Inc.*, 672 F. Supp. 2d 978 (N.D. Cal. 2009) ...........................................................9

*Shaterian v. Wells Fargo Bank, N.A.*,
   No. 11-00920 SC, 2011 WL 5358751 (N.D. Cal. Nov. 7, 2011) ................................................13

*TransFresh Corp. v. Ganzerla & Assoc., Inc.*,
   No. 11-cv-6348, 2012 WL 994674 (N.D. Cal. Mar. 23, 2012) ....................................................6

*Wenger v. Lumisys, Inc.*, 2 F. Supp. 2d 1231 (N.D. Cal. 1998) .........................................................6

**State Court Cases:**

*Auto. Vending Co. v. Wisdom*, 182 Cal. App. 2d 354 (Cal. Ct. App. 1960) ...................................12

*Guz v. Bechtel Nat'l, Inc.*, 24 Cal. 4th 317 (2000) ............................................................................13

*Love v. Fire Ins. Exch.*, 221 Cal. App. 3d 1136 (Cal. Ct. App. 1990) ............................................... 12

*Perdue v. Crock Nat'l Bank*, 38 Cal. 3d 913 (1985) ................................................................. 12

*Neu-Visions Sports, Inc. v. Soren/McAdam/Bartells*,
     86 Cal. App. 4th 303 (Cal. Ct. App. 2000) ................................................................... 8-9

**Statutory Provisions:**

Cal. Com. Code § 2313 ................................................................................................... 12

## I. INTRODUCTION

As the Court is aware, this case challenges Defendant Symantec's design, marketing and sale of certain of its software products, which misrepresent and exaggerate the existence of harmful errors and other problems on users' computers and otherwise fail to deliver the functional capabilities advertised by Symantec. On July 31, 2012, the Court granted Symantec's motion to dismiss Plaintiff's First Amended Complaint (the "FAC") without prejudice. (*See* Dkt. No. 49, the "Order".) In so doing, the Court agreed with nearly all of Plaintiff's legal theories and based its dismissal on just four curable pleading defects. The Court found that Gross needed to allege:

1) "[W]hat Symantec <u>actually</u> said regarding the functional capabilities of its software[,]" to support Plaintiff's fraud-based, breach of warranty and breach of contract claims (Order, p. 7);

2) "[T]hat Symantec's sales and marketing departments operate out of it[s] California offices[,]" to support Plaintiff's claims under California statutes, (*Id.*, p. 13);

3) "[T]hat the <u>full version</u> of the software failed to perform the advertised functions[,]" such that Plaintiff's breach of contract claim was clearly based upon his purchase of the software and would survive, (*Id.*, p. 21); and,

4) That Symantec acted in bad faith to frustrate Plaintiff's ability to obtain the benefits of the parties' contract for the purchase of the software, such that his breach of implied covenant of good faith and fair dealing claim was not duplicative. (*Id.*, pp. 21-22.)

With the Court's Order as his guide, Plaintiff revised his pleadings to address these four issues and, on August 14, 2012, filed his Second Amended Complaint. (Dkt. No. 50, the "SAC".)

With respect to the first issue, the SAC now directly quotes Symantec's websites and marketing materials regarding the software's purported functionality, including Symantec's representations that the software programs at issue in this case—PC Tools Registry Mechanic, PC Tools Performance Toolkit, and Norton Utilities—are designed to, *inter alia*, "Speed[] up your PC[]", "Optimize Windows performance", and "Maximize[] overall system performance to help make your old PC run like new again…." (SAC ¶¶ 40-42.)

On the second defect, the SAC makes clear that "each of these representations were made and/or designed by and/or disseminated and/or directed from Symantec's sales and marketing teams

located in California[]" and that, indeed, all of "Symantec's relevant operations, including its headquarters and sales and marketing operations are located in California…." (*Id*. ¶¶ 11-12, 43.)

With respect to the third issue, the SAC also clarifies Plaintiff's allegations about the functionality of both the free trial and full versions of Defendant's software. The SAC expressly alleges that "*neither…version[]* of the [software] actually performs any meaningful evaluation of the user's computer system…and does not perform the valuable tasks represented by Symantec through its websites, advertising, and in-software display screens"—as has always been Plaintiff's theory of the case. (*Id*. ¶¶ 48, 51.)

And, finally, the SAC outlines how Symantec acted in bad faith to frustrate Plaintiff's and the Class's ability to obtain the benefits of their contracts for the purchase of the software. In particular, Plaintiff alleges that Symantec failed "to provide full versions of the software that performed as described" and failed "to honestly and accurately inform consumers about the true condition of their computers"—which is precisely what Plaintiff's and the Class's contracts required Symantec to do. (*Id*. ¶¶ 112, 115.)

Recasting the SAC as if Plaintiff never added these details, Symantec recycles arguments that this Court expressly rejected in its Order. Symantec re-argues that Plaintiff fails to allege evidence[1] showing that the representations outlined in the SAC are false. (Def.'s Mot. at 5-9.) As plainly evident from the Court's Order, the Court rejected that argument the first time around, reasoning that because Plaintiff's basis for alleging that the software does not function as advertised "derives from the results of the forensic analysis [performed by his expert], the allegations…sufficiently establish a basis for believing Symantec's statements to be false." (Order at 6.) No allegations have changed that would warrant a departure from this prior ruling.

Symantec also repeats the argument from its previous motion that California statutory law cannot be applied here because, supposedly, a screenshot of the "Careers" webpage purportedly

---

[1]   Of course, Plaintiff is not required to present any evidence at this stage of the litigation. Notwithstanding, before the case was even filed, the parties held an in-person meeting (through counsel) during which Plaintiff's counsel described the results of Plaintiff's expert's testing, the methodologies used, and the technical bases of Plaintiff's allegations. Thus, Symantec knows the evidentiary foundation of Plaintiff's claims.

found somewhere on the www.PCTools.com website describes PC Tools as having offices in Australia, the U.S. and Ukraine. Fatal to such assertions is Symantec's failure to provide any information indicating that PC Tools Registry Mechanic, its underlying source code, or any of Symantec's related marketing materials were designed outside California.

Lastly, Symantec's argument that Plaintiff's breach of the implied covenant of good faith and fair dealing claim is duplicative of his breach of contract claim also lacks merit. As the Court recognized in its Order dismissing the FAC, breach of implied covenant claims survive where, as here, Symantec has acted to frustrate Plaintiff's and the Class's ability to obtain the benefits of their contracts for the purchase of the software (i.e., obtaining software that would accurately detect, report, and repair legitimate problems and perform other tasks as advertised by Symantec).

Accordingly, and as explained further below, the Court should deny Symantec's latest motion to dismiss and allow this case to proceed.

## II.     FACTUAL AND PROCEDURAL BACKGROUND

### A.     The Court's Order Dismissing Plaintiff's First Amended Complaint Identified Four Primary, but Curable, Defects.

On January 10, 2012, Plaintiff Gross filed his original class action complaint against Symantec alleging claims for violations of California's Unfair Competition Law, fraudulent inducement, breach of express warranties, breach of contract, breach of the implied covenant of good faith and fair dealing, and unjust enrichment. (Dkt. No. 1.) On March 12, 2012, Symantec filed its motion to dismiss Plaintiff's complaint pursuant to Federal Rule Civil Procedure 12(b)(6). (Dkt. No. 28.) In lieu of responding to Symantec's motion, Gross filed his FAC, which alleged identical claims against Symantec and named as a party-defendant Symantec's subsidiary, PC Tools, Ltd. (Dkt. No. 33.) Thereafter, Symantec again moved to dismiss each of Plaintiff's causes of action pursuant to Fed. R. Civ. P. 12(b)(6).[2]

---

[2]     PC Tools, Ltd., an Irish company, has yet to be served in this matter. Gross asked whether Symantec's counsel would accept service on behalf of PC Tools but received no response. As a result, Plaintiff initiated and is in the process of serving PC Tools in Ireland in accordance with the Hague Convention on Service Abroad.

On July 31, 2012, the Court granted Symantec's motion to dismiss and allowed Plaintiff leave to amend his pleadings to satisfy each of the defects it identified (except for Gross's unjust enrichment claim, which was dismissed with prejudice). First, with respect to Plaintiff's fraud-based, breach of warranty and breach of contract claims, the Court found that Plaintiff must allege "what Symantec <u>actually</u> said regarding the functional capabilities of its software…." (Order at 7.) Next, the Court explained that in order for it to appropriately apply California statutory law, Plaintiff needed to allege "that Symantec's sales and marketing departments operate out of it[s] California offices…." (*Id.* at 13.) Third, the Court held that to sustain Plaintiff's breach of contract claims, Plaintiff would need to allege "that the <u>full version</u> of the software failed to perform the advertised functions[,]" such that the claim arose following his *purchase* of the software. (*Id.* at 21.) Finally, the Court stated that for Plaintiff's breach of the implied covenant of good faith and fair dealing claim to survive, he must plead that Symantec acted in bad faith to frustrate his ability to obtain the benefits of the parties' contract for sale of the software. (*Id.* at 21-22.)

### B. Plaintiff's SAC Addresses Each of the Issues Identified in the Court's Order.

After reviewing the Court's Order and his pre-suit investigation and re-confirming the factual bases of his claims, Plaintiff filed his SAC on August 14, 2012, specifically addressing each of the concerns raised in the Court's Order.

First, the SAC includes direct quotations from Symantec's representations regarding the software's functional capabilities. (SAC ¶¶ 40-42.) It further alleges facts that plausibly show that Symantec's fraudulent representations and conduct occurred in and were directed and emanated from Symantec's sales and marketing departments in California. (*Id.* ¶¶ 11, 43.) The SAC also clarifies that Plaintiff's view of this case has always been that both the free trial and *full* versions of the software did not perform as advertised and Plaintiff's expert confirmed as much. (*Id.* ¶¶ 48, 51.) And, it includes allegations establishing that Plaintiff's breach of the implied covenant claim is based upon Symantec's bad faith conduct in frustrating Plaintiff's and the Class's ability to obtain the benefits of their contracts for purchase of the software. (*Id.* ¶¶ 112, 115.)

In the end, the SAC fully and completely addresses each of the concerns identified in the Court's July 31st Order. Accordingly, and as explained below, none of Symantec's arguments require dismissal of this action and its motion should be denied.

## III. ARGUMENT

### A. PLAINTIFF HAS PROPERLY PLEADED HIS FRAUD-BASED CLAIMS IN ACCORDANCE WITH THE COURT'S INSTRUCTIONS.

#### 1. The SAC Sets Forth Exact Quotes of Symantec's Misrepresentations Regarding the Functional Capabilities of the Software at Issue.

In its Order, the Court identified just one flaw in Plaintiff's fraud-based claims: that he failed to "allege exact language used by Symantec in describing the utility of its software, including the individual tasks it purports to perform." (Order at 10.) Plaintiff, therefore, included in the SAC quotations from Symantec's websites and marketing materials describing the purported benefits and capabilities of the software at issue.

In particular, Plaintiff alleges that "Symantec asserts through its website (www.PCTools.com) that PC Tools Registry Mechanic is designed to:

- 'Speed[] up your PC[]';
- 'Optimize[] performance by scanning and repairing invalid registry entries to fix freezes, crashes, and slowdowns';
- 'Remove[] orphaned registry references to improve performance and stability';
- '[P]rovide[] options to boost system speed';
- 'Protect[] Internet privacy and personal information'; and
- 'Improve[] system response time.'"

(SAC ¶ 40.) Similarly, Plaintiff alleges Symantec's claims "that PC Tools Performance Toolkit is designed to:

- 'Optimize Windows® performance';
- 'Start Windows faster';
- 'Maintain a healthy hard drive';

- '[S]can[] and repair[] hard drives from errors and inefficiencies';
- '[P]rotect your personal information'; and
- '[B]oost speed, improve stability, monitor your system, and tune up services.'"

(SAC ¶ 41.) And, Plaintiff alleges that Symantec promotes its Norton Utilities software online (at http://us.norton.com/norton-utilities/), as being "designed to:

- 'Find[] and fix[] PC problems with one click—Automatically detect[] and fix[] Microsoft® Windows® issues[]';
- 'Speed[] up PC boot time[]';
- 'Maximize[] overall system performance to help make your old PC run like new again'; and
- 'Purge[] unwanted sensitive data to increase privacy and security.'"

(SAC ¶ 42.)

These detailed quotes are a far cry from the "vague and impressionistic" allegations the Court previously held would be insufficient to maintain a claim for fraud against Symantec. (*See* Order at 7) (quoting *Wenger v. Lumisys, Inc.*, 2 F. Supp. 2d 1231, 1246 (N.D. Cal. 1998)). Instead, because the SAC now includes these "direct quotations from the website of [the] defendant…[it] complie[s] with Rule 9(b)." (*Id.* at 8) (quoting *TransFresh Corp. v. Ganzerla & Assoc., Inc.*, No. 11-cv-6348, 2012 WL 994674, at *7 (N.D. Cal. Mar. 23, 2012)). Accordingly, Plaintiff has satisfied the first issue identified by the Court and his fraud claims withstand dismissal.[3]

**2.   Contrary to Symantec's Assertions, This Court has Already Ruled That Plaintiff's Expert's Analysis of the Software Provides a Sufficient Basis to Believe that Symantec's Representations are False.**

Rather than dispute the content of the representations described above,[4] Symantec argues that Plaintiff fails to plead any "factual evidence"[5] to show that the representations are, in fact,

---

[3]   The Court has already held Plaintiff's allegations of the circumstances of the alleged fraud to be "enough to give notice to Symantec of the context of the alleged misrepresentations[]" for the purposes of Rule 9(b). (Order at 7 n.5.)
[4]   In fact, Symantec goes to great lengths to quote and confirm that these are exactly the sorts of representations it made to consumers about the supposed functional capabilities of its software. (*See* Def.'s Mot. at 1) (purporting to quote the www.pctools.com website as it existed in 2011).

untrue. (Def.'s Mot. at 5.) This argument has already been rejected by the Court. Indeed, in considering the FAC, the Court found that because Plaintiff's claims "derive[] from the results of [his expert's] forensic analysis, the allegations in the FAC sufficiently establish a basis for believing Symantec's statements to be false." (Order at 6.)

The SAC is no different in this regard. Plaintiff still alleges that his "experts' investigation …uncovered that Symantec programmed its Scareware to always, *inter alia*, (i) identify problems on a user's computer (even where none exist), (ii) artificially inflate the number of errors detected on a user's computer, (iii) characterize innocuous files as 'High Priority' errors, and (iv) arbitrarily report that the user's 'System Health,' 'Privacy Health,' and 'Disk Health' are 'LOW' without any actual assessment of these issues." (SAC ¶ 50.) Providing further clarity, Plaintiff expressly alleges in the SAC that, "the full versions of the software operate (and were intentionally designed by Symantec to operate)" in the same uniformly deceptive manner. (*Id.* ¶ 51.) In sum, the SAC makes clear that "neither the free [n]or full versions [of the software]…perform the valuable tasks represented by Symantec through its websites, advertising, and in-software display screens, as [described above]." (*Id.* ¶ 48.)

Even setting aside the Court's Order finding these allegations to be sufficient, they readily meet Rule 9(b)'s heightened pleading requirements. They identify facts that are inconsistent with Symantec's representations, which "existed all along [but] were [only] later revealed"—in this case, by Plaintiff's expert. *Fecht v. Price Co.*, 70 F.3d 1078, 1082 (9th Cir. 1995) (quoting *In re GlenFed, Inc. Sec. Litig.*, 42 F.3d 1541, 1549 (9th Cir. 1994)). Certainly, Plaintiff will present evidence to support his claims at the appropriate time, but it's not required of him at the pleadings stage. For now, his allegations suffice. *See, e.g., Fecht*, 70 F.3d at 1083-84 (holding that complaint was sufficient where it alleged corporate financial statements were false where they identified stores were performing well when, in fact, they were losing money); *see also Warshaw v. Xoma Corp.*, 74 F.3d 955, 960 (9th Cir. 1996) ("a plaintiff might allege that he bought a house from defendant, that

---

[5] Of course, Plaintiff is not required to produce evidence or prove anything at this stage of the litigation. *In re Connetics Corp. Sec. Litig.*, 542 F. Supp. 2d 996, 1004 (N.D. Cal. 2008). Notwithstanding, as described herein, the results of his experts' analysis of the software alleged in the SAC go well beyond the sorts of mere conclusory statements Symantec makes them out to be.

the defendant assured him that it was in perfect shape, and that in fact the house turned out to be built on a landfill . . . plaintiff could simply set forth these facts . . . and be in compliance with Rule 9(b).") (citing *In re GlenFed*, 42 F.3d at 1548); *Cooper v. Pickett*, 137 F.3d 616, 625 (9th Cir. 1997) (same).

Plaintiff's forensic analysis also shows that Symantec's in-software representations are false. Again, Plaintiff's experts concluded that regardless of the actual condition of the user's computer, the software "characterize[s] innocuous files as 'High Priority'" and "arbitrarily report[s] that the user's 'System Health,' 'Privacy Health,' and 'Disk Health' are 'LOW' without any actual assessment of these issues." (SAC ¶ 50.) In response, Symantec claims that contrary to Plaintiff's allegations, the software may not prioritize detected errors based upon their "actual current 'threat'" but on some other criteria or "their importance relative to each other." (Def.'s Mot. at 7.) Symantec does not actually confirm whether this is true. But even if it were, it is irrelevant. Either an error is harmful or it isn't—to say that one non-threatening error is more harmful than another non-threatening error doesn't give any real, fact-based indication as to whether a user's PC actually suffers from the problems Symantec represents its software can identify and repair.

Symantec also tries to skirt the issue by asserting that its in-software representations are merely non-actionable opinions. This argument fails the straight-face test. It is directly at odds with Symantec's representations that the software uses a "high-performance detection algorithm" to detect errors and problems on users' computers, which necessarily implies that it is operating through the use of some *objective* criteria. (Def. Mot. at 2.) If Symantec claims that the software does not perform an objective evaluation, then it should tell consumers that the software merely provides a non-factual, opinion-based analysis. The fact that it says nothing of the sort speaks volumes.

Further, the authorities Symantec relies upon in this regard are inapposite. Several of the cases considered representations about future conduct, not representations like those at issue here—about the current condition of Plaintiff's computer. *See Neu-Visions Sports, Inc. v. Soren/McAdam/Bartells*, 86 Cal. App. 4th 303, 309 (2000) ("the representations were not actionable

because they were opinions as to future events"); *Louis v. Nailtiques Cosmetic Corp.*, 423 F. App'x 711, 713 (9th Cir. 2011) (recognizing that statements about future value or future events are "mere statements of opinion"). Likewise, several of the authorities discuss what constitutes mere "puffery" not intended to induce consumer reliance. *See Newcal Indus., Inc. v. Ikon Office Solution*, 513 F.3d 1038, 1053 (9th Cir. 2001) ("a statement is considered puffery if the claim is extremely unlikely to induce consumer reliance. Ultimately, the difference between a statement of fact and mere puffery rests in the specificity or generality of the claim."); *Autodesk, Inc. v. Dassault Systemes SolidWorks Corp.*, 685 F. Supp. 2d 1001, 1021 (N.D. Cal. 2009) (focusing on "general claims of superiority" versus "specific verifiable allegations"). But as this Court already determined, Symantec's in-software representations about the status of a user's computer system are not mere opinions "or a 'vague superlative' that a 'consumer could not reasonably believe.'" (Order at 17) (citing *Sanders v. Apple, Inc.*, 672 F. Supp. 2d 978, 987 (N.D. Cal. 2009)). "Rather, the alleged statements offer objective descriptions [of a computer's performance and health], which inform the consumer of the specific" errors, threats and other problems affecting the same. (*See id.*)

Finally, Symantec erroneously equates a case holding that a company's public statement regarding the "high priority" it placed on product development with its specific misrepresentations made to consumers about their computers' performance. *Glen Holly Enter., Inc. v. Tektronix, Inc.*, 352 F.3d 367, 379 (9th Cir. 2003). *Glenn Holly* is simply off-point.

In the end, Symantec's arguments don't illuminate any shortcomings in the SAC; but rather, they show that Symantec continues to miss (or more likely, ignore) the point of this lawsuit—that it designed both the trial and full versions of its software to overstate and exaggerate errors on a user's computer. That the software may fix this or that error is irrelevant since it invariably reports errors and threats that aren't actually credible, and thus can't be fixed. Accordingly, as with the FAC, Plaintiff's allegations in this regard are sufficient and should again survive dismissal.

### B.  SYMANTEC'S MARKETING AND SALES OPERATIONS ARE LOCATED IN ITS CALIFORNIA OFFICES, AND IT HAS NOT SHOWN OTHERWISE.

Symantec also half-heartedly reasserts its argument that California statutory law should not be applied because Plaintiff cannot adequately allege that its misrepresentations were designed in

and/or emanated from California. Rather than supply a declaration or other evidence, the best support Symantec can muster is a screenshot of the "Careers" webpage purportedly found on www.PCTools.com, which describes PC Tools as having offices in Australia, the U.S., and Ukraine. From there, Symantec makes an Olympic-sized leap and argues that the source code underlying PC Tools Registry Mechanic and related marketing materials were designed in Australia. (Def.'s Mot. at 9-10.) In reality, the webpage makes no mention of anything of the sort. (*See* Req. Jud. Not. Ex. 3.)What it does say (and what Plaintiff alleges) is that Symantec acquired PC Tools in 2008—three years prior to Plaintiff's purchase of the software. Thus, consistent with Plaintiff's allegations, it is Symantec that has at all times since then controlled from its California headquarters the source code, websites, and marketing materials associated with PC Tools branded products, including the representations made to and the software purchased by Plaintiff. (SAC ¶¶ 16-34.)[7]

Moreover, Symantec has abandoned its prior argument that it wasn't a party to the transaction underlying Plaintiff's claims and therefore, supposedly, could not be held responsible for the actions of PC Tools, Ltd. (*See* Notice of Withdrawal of Certain Arguments, Dkt. No. 44.) Logically then, it follows that Symantec was, in fact, at all relevant times—either directly or through PC Tools—leading the design, marketing, and sales of the software at issue. Either way, it should not be permitted to reverse course yet again to suit its current needs.

In the end, Plaintiff has unmistakably alleged that all of "Symantec's relevant operations, including its headquarters and sales and marketing operations are located in California," and that each of the representations at issue "were made and/or designed by and/or disseminated and/or directed from [there.]" (SAC, ¶¶ 11-12, 43.) Symantec cannot show (and certainly, has not shown) otherwise. Thus, Plaintiff's statutory claims should stand. (*See* Order at 13) ("Plaintiff should allege that Symantec's sales and marketing departments operate out of it[s] California offices.").

---

[7]   Symantec's argument also ignores the fact that its PC Tools Performance Toolkit and Norton Utilities software products, which it tacitly admits were designed and marketed from its California offices, are also at issue here. (*See* Def.'s Mot. p. 10.)

### C. HAVING PROPERLY PLEADED SYMANTEC'S MISREPRESENTATIONS, PLAINTIFF'S BREACH OF WARRANTY AND BREACH OF CONTRACT CLAIMS MUST SURVIVE AS WELL.

#### 1. Plaintiff has Necessarily Alleged the Express Warranties and Contract Terms Breached by Symantec.

Like his fraud-based claims, the Court previously held that "should Plaintiff…identify what exact statements Symantec made about its software…the elements of [his] cause[s] of action" for breach of express warranties and breach of contract would be sufficiently pleaded. (Order at 17, 20.) As explained above in *supra* Section III.A, Plaintiff has done just that—expressly alleging what Symantec warranted the software would do once purchased and run (e.g., speeding up his PC and boosting his PC's overall performance) and what it agreed to deliver to Plaintiff and other consumers in exchange for their payment of the software's purchase price (i.e., software that was capable of accurately detecting, reporting, and repairing legitimate errors and threats as advertised). (SAC ¶¶ 40-42.)

Undeterred, Symantec parrots its earlier arguments that both the breach of warranty and breach of contract claims supposedly fail because Plaintiff has not alleged any "evidence" to show that the software didn't function as advertised. (Def.'s Mot. at 11-13.) Again, Plaintiff expressly alleges that his expert confirmed the software "does not perform the valuable tasks represented by Symantec[,]" including speeding up a computer, optimizing its performance, improving system response time and the like. (SAC ¶¶ 48-52.) And even if Symantec could support its contentions to the contrary (it cannot), the SAC would still be sufficient inasmuch as Plaintiff's properly pleaded allegations must be accepted as true for purposes of the instant motion. *See Johnson v. Lucent Tech. Inc.*, 653 F.3d 1000, 1010 (9th Cir. 2011) ("On a motion to dismiss, all allegations of material fact are taken as true and construed in the light most favorable to the nonmoving party.").[8]

---

[8] Similarly, Symantec's argument that the software's misreporting and exaggeration of the existence of errors on users' computers is actually a benefit to consumers should be considered only long enough to reject it outright. Simply put, failing to perform promised tasks and otherwise misrepresenting the actual condition of a user's computer doesn't make the software "even more effective and comprehensive". (*See* Def.'s Mot. at 12.) In fact, just the opposite is true.

### 2. The SAC also Clarifies that the Free Trial and Full Versions of Symantec's Software are Designed in a Uniformly Deceptive Manner.

Plaintiff has also clarified in the SAC his theory that both the free trial and *full* versions of the software were designed by Symantec to function in an identically deceptive manner. Indeed, it has always been Plaintiff's contention—and his experts have confirmed—that the full versions of the software misrepresent and exaggerate purported errors and problems detected on users' computers and generally fail to perform as advertised by Symantec in a manner similar to the "free trial" versions. (SAC ¶¶ 4, 46, 48-52.) With that, Plaintiff has satisfied the requirement that his breach of contract claim be based upon Symantec's failure to provide software capable of performing as represented after he paid for it. (*See* Order at 21) (holding that if "Plaintiff can offer factual allegations establishing that the full version of the software failed to perform the advertised functions" his breach of contract claim would survive a motion to dismiss); *see also Marolda v. Symantec Corp.*, 672 F. Supp. 2d 992, 1006 (N.D. Cal. 2009) (holding that breach of implied contract claim was sufficiently pleaded where Plaintiff alleged that she paid to purchase software from the defendant, Symantec).

Accordingly, Plaintiff's breach of warranty and breach of contract claims should also stand.

### D. PLAINTIFF HAS PROPERLY PLEADED THAT SYMANTEC ACTED IN BAD FAITH TO FRUSTRATE HIS AND THE CLASS'S ABILITY TO OBTAIN THE BENEFITS OF THEIR PURCHASE CONTRACTS.

Finally, Plaintiff properly alleges that implicit in his contract with Symantec is an implied covenant that Symantec would honestly and accurately diagnose and remove threats from his and the Class's computers and that it would comply with all applicable statutory guidelines, including Cal. Com. Code § 2313.[9] Symantec once again argues that this claim is duplicative of Plaintiff's breach of contract claim. This attack fails.

While it is well settled under California law that a breach of the implied covenant of good

---

[9] Under California law, a breach of the implied covenant of good faith and fair dealing occurs when one party to a contract exercises its discretion in such a way as to deprive the other party of the benefits of the bargain. *See Perdue v. Crock Nat'l Bank*, 38 Cal. 3d 913, 923 (1985); *Auto. Vending Co. v. Wisdom*, 182 Cal. App. 2d 354, 358 (Cal. Ct. App. 1960); *Love v. Fire Ins. Exch.*, 221 Cal. App. 3d 1136, 1147 (Cal. Ct. App. 1990) (covenant of good faith and fair dealing "implied in every contract as a method to protect the interests of the parties in having the contractual promises and purposes performed.").

faith and fair dealing involves something more than breach of a contractual duty itself, there are three exceptions to this rule. Relevant here, courts have typically found that a breach claim is not duplicative where the plaintiff alleges that the defendant acted in bad faith to frustrate his or her ability to obtain the contract's benefits. *Guz v. Bechtel Nat'l, Inc.*, 24 Cal. 4th 317, 353 n. 18 (2000); *Lamke v. Sunstate Equip. Co., LLC*, No. C–03–4956, 2004 WL 2125869 (N.D. Cal. Sept. 22, 2004); *see also Shaterian v. Wells Fargo Bank, N.A.*, No. 11-00920 SC, 2011 WL 5358751, at *8 (N.D. Cal. Nov. 7, 2011) ("this rule does not apply where a plaintiff alleges that the defendant acted in bad faith to frustrate the contract's actual benefits"). Indeed, in dismissing the FAC, the Court reasoned that the exception would apply if Plaintiff could "plausibly allege[] lack of functionality in the…full version" and thus, that Symantec's bad faith conduct also occurred outside of inducement. (Order at 22.)

As explained above, the basis of each of Plaintiff's claims in the SAC is that Symantec acted in bad faith by failing to provide *both* free trial and full versions of software that would honestly and accurately detect, report, and repair errors and other problems on consumers' computers as it represented that it would. (SAC ¶¶ 109-116.) Thus, Symantec's bad faith conduct frustrated Plaintiff's and the Class's rights to receive the benefits of the contract by creating the illusion that the benefits were being supplied (when in fact, they were not) and leading Plaintiff and the Class to believe that their contracts for the purchase of the full version of the software had been fulfilled. Accordingly, this claim should survive as well.

## IV. CONCLUSION

For the foregoing reasons, Plaintiff James Gross, individually and on behalf of all other similarly situated individuals, respectfully requests that the Court enter an Order (i) denying Symantec's motion to dismiss in its entirety, (ii) requiring Symantec to answer Plaintiff's Second Amended Class Action Complaint, and (iii) providing such other and further relief as the Court deems equitable and just.[11]

---

[11] In the event the Court disagrees with Plaintiff and grants Defendant's motion to dismiss, Plaintiff respectfully requests leave to add further detail, additional claims, or otherwise take steps necessary to cure any defects found by the Court in his pleadings. *See Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir. 1986); *Doe v. U.S.*, 58 F.3d 494, 497 (9th

|   |   |
|---|---|
| | Respectfully submitted, |
| | **JAMES GROSS**, individually and on behalf of all others similarly situated, |
| Dated: September 14, 2012 | By: /s/ Benjamin H. Richman<br>One of Plaintiff's Attorneys |

JAY EDELSON (Admitted *Pro Hac Vice*)
jedelson@edelson.com
RAFEY S. BALABANIAN (Admitted *Pro Hac Vice*)
rbalabanian@edelson.com
BENJAMIN H. RICHMAN (Admitted *Pro Hac Vice*)
brichman@edelson.com
CHANDLER R. GIVENS (Admitted *Pro Hac Vice*)
cgivens@edelson.com
EDELSON MCGUIRE LLC
350 North LaSalle Street, Suite 1300
Chicago, Illinois 60654
Telephone: (312) 589-6370
Facsimile: (312) 589-6378

SEAN P. REIS (SBN 184044)
sreis@edelson.com
EDELSON MCGUIRE LLP
30021 Tomas Street, Suite 300
Rancho Santa Margarita, California 92688
Telephone: (949) 459-2124
Facsimile: (949) 459-2123

---

Cir. 1995) (leave to amend should be granted even if the plaintiff did not request leave, unless it is clear that the complaint cannot be cured).

## CERTIFICATE OF SERVICE

I, Benjamin H. Richman, an attorney, hereby certify that on September 14, 2012, I served the above and foregoing ***Plaintiff's Opposition to Defendant Symantec's Motion to Dismiss Second Amended Complaint***, by causing a true and accurate copies of such paper to be filed and served on all counsel of record via the Court's CM/ECF electronic filing system, on this the 14th day of September 2012.

/s/ Benjamin H. Richman
Benjamin H. Richman