JAY EDELSON (Admitted *Pro Hac Vice*)
jedelson@edelson.com
RAFEY S. BALABANIAN (Admitted *Pro Hac Vice*)
rbalabanian@edelson.com
BENJAMIN H. RICHMAN (Admitted *Pro Hac Vice*)
brichman@edelson.com
CHANDLER R. GIVENS (Admitted *Pro Hac Vice*)
cgivens@edelson.com
EDELSON LLC
350 North LaSalle Street, Suite 1300
Chicago, Illinois 60654
Telephone: (312) 589-6370
Facsimile: (312) 589-6378

SEAN P. REIS (SBN 184044)
sreis@edelson.com
30021 Tomas Street, Suite 300
Rancho Santa Margarita, California 92688
Telephone: (949) 459-2124
Facsimile: (949) 459-2123

*Attorneys for Plaintiff and the putative class*

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN FRANCISCO DIVISION

| | |
|---|---|
| JAMES GROSS, individually and on behalf of all others similarly situated,<br><br>*Plaintiff*,<br><br>v.<br><br>SYMANTEC CORPORATION, a Delaware corporation, and PC TOOLS, LTD., an Irish limited company,<br><br>*Defendants*. | Case No. 3:12-cv-00154-CRB<br><br>**PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT AGREEMENT**<br><br>Date: April 19, 2013<br>Time: 10:00 a.m.<br>Location: Courtroom 6, 17th Floor<br>Judge: Honorable Charles R. Breyer |

**TO ALL PARTIES AND THEIR COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE THAT** on April 19, 2013, at 10:00 a.m., or as soon thereafter as this matter may be heard, Plaintiff James Gross will appear, through counsel, before the Honorable Charles R. Breyer, or any judge sitting in his stead, in Courtroom 6, 17th Floor at the United States District Courthouse for the Northern District of California, San Francisco Division, located at 450 Golden Gate Avenue, San Francisco, California 94102, and then and there move the Court for an Order (i) granting preliminary approval of the Parties' proposed class action settlement, (ii) certifying the proposed Settlement Class for settlement purposes only, (iii) approving the form and content of the notice to the members of the proposed Settlement Class, (iv) appointing Plaintiff James Gross as Class Representative, (v) appointing Plaintiff's counsel as Class Counsel, and (vi) scheduling a Fairness Hearing in this matter.

Plaintiff's motion is based upon this Notice, the Memorandum of Points and Authorities filed herewith, the exhibits attached thereto, and the record in this matter, along with any oral argument that may be presented to the Court and evidence submitted in connection therewith.

Respectfully submitted,

**JAMES GROSS**, individually and on behalf of all others similarly situated,

Dated: March 15, 2013

By: /s/ Rafey S. Balabanian
One of Plaintiff's Attorneys

JAY EDELSON (Admitted *Pro Hac Vice*)
jedelson@edelson.com
RAFEY S. BALABANIAN (Admitted *Pro Hac Vice*)
rbalabanian@edelson.com
BENJAMIN H. RICHMAN (Admitted *Pro Hac Vice*)
brichman@edelson.com
CHANDLER R. GIVENS (Admitted *Pro Hac Vice*)
cgivens@edelson.com
EDELSON LLC
350 North LaSalle Street, Suite 1300
Chicago, Illinois 60654
Telephone: (312) 589-6370
Facsimile: (312) 589-6378

# TABLE OF CONTENTS

I.   INTRODUCTION ...................................................................................1

II.  FACTUAL AND PROCEDURAL BACKGROUND ......................................2

    A.   Plaintiff's Allegations Regarding Defendants' Design and Marketing of the Software Products .....................................2

    B.   Plaintiff's Expert Confirms His Allegations ........................................3

    C.   The Litigation History, Negotiations, and Settlement ........................4

    D.   Defendants' Defenses and Denials ......................................................5

III. TERMS OF THE SETTLEMENT ..........................................................5

    A.   Class Definition ..................................................................................5

    B.   Prospective Relief ...............................................................................6

        1.   Improvements to the Software Products ....................................6

        2.   New Documentation Explaining the Software Products' Functionalities .........................................................................6

    C.   Monetary Relief ..................................................................................6

    D.   Additional Relief ................................................................................7

        1.   Anti-Spyware Software ..............................................................7

        2.   Payment of Notice and Administrative Expenses ......................7

        3.   Compensation for the Class Representative ..............................7

        4.   Payment of Attorneys' Fees and Expenses ................................7

    E.   Release ................................................................................................7

IV.  THE PROPOSED SETTLEMENT CLASS SHOULD BE CERTIFIED AND PLAINTIFF'S COUNSEL APPOINTED AS CLASS COUNSEL ...............7

    A.   The Numerosity Requirement is Satisfied ...........................................8

    B.   The Commonality Requirement is Satisfied ........................................9

    C.   The Typicality Requirement is Satisfied ...........................................10

    D.   The Adequacy of Representation Requirement is Satisfied ...............10

    E.   The Proposed Settlement Class Meets Rule 23(b)(3)'s Requirements ...........12

|  |  | 1. | *Common Questions of Law and Fact Predominate* | 12 |
|  |  | 2. | *A Class Action is the Superior Method for Adjudicating this Controversy* | 13 |
|  | F. | **Plaintiff's Counsel Should be Appointed Class Counsel** | | 14 |
| V. | **THE PROPOSED SETTLEMENT IS FUNDAMENTALLY FAIR, REASONABLE, AND ADEQUATE, AND THUS WARRANTS PRELIMINARY APPROVAL** | | | 14 |
| VI. | **THE PROPOSED NOTICE PLAN SHOULD BE APPROVED** | | | 17 |
| VII. | **CONCLUSION** | | | 18 |

## TABLE OF AUTHORITIES

**United States Supreme Court Cases:**

*Amchem Prods. Inc. v. Windsor*, 521 U.S. 591 (1997) ............................................ 7, 8, 10, 12, 13

*Eisen v. Carlisle & Jacquelin*, 417 U.S. 156 (1974) ......................................................... 17

*Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147 (1982) ........................................................ 9

*Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541 (2011) ................................................... 9

**United States Circuit Court of Appeals Cases:**

*Blake v. Arnett*, 663 F.2d 906 (9th Cir. 1981) ................................................................. 8

*Fendler v. Westgate-Cal. Corp.*, 527 F.2d 1168 (9th Cir. 1975) ...................................... 11

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (9th Cir. 1998) ........................... 10-11, 12, 15

*In re Pac. Enters. Sec. Litig.*, 47 F.3d 373 (9th Cir. 1995) ............................................ 15

*In re Syncor ERISA Litig.*, 516 F.3d 1095 (9th Cir. 2008) ............................................. 15

*In re Wells Fargo Home Mortg. Overtime Pay Litig.*, 571 F.3d 953 (9th Cir. 2007) .......... 12

*Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615 (9th Cir. 1982) ...................... 15

*Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227 (9th Cir. 1996) ................................... 13

*Wolin v. Jaguar Land Rover N. Am. LLC*, 617 F.3d 1168 (9th Cir. 2010) ...................... 13

*Yokoyama v. Midland Nat. Life Ins. Co.*, 594 F.3d 1087 (9th Cir. 2010) ....................... 13

*Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180 (9th Cir. 2001) ........................... 12

**United States District Court Cases:**

*Ballard v. Equifax Check Servs., Inc.*, 186 F.R.D. 589 (E.D. Cal. 1999) ......................... 9

*Barefield v. Chevron U.S.A. Inc.*,
    No. C 86-2427 TEH, 1987 WL 65054 (N.D. Cal. Sept. 9, 1987) ............................ 8

*Bilodeau v. McAfee, Inc., et al.*, No. 12-cv-4589-LHK (N.D. Cal.) ................................. 11

*Celano v. Marriot Int'l, Inc.*, 242 F.R.D. 544 (N.D. Cal. 2007) ....................................... 8

*Chavez v. Blue Sky Natural Beverage Co.*, 268 F.R.D. 365 (N.D. Cal. 2010) ............... 13

*Evans v. IAC/Interactive Corp.*, 244 F.R.D. 568 (C.D. Cal. 2007) ................................. 11

*Hall v. Tuneup Corp.*, No. 1:13-cv-1804 (N.D. Ill.) ........................................................ 11

*Harris v. City of Chi.*, No. 96 CV 2406, 1998 WL 59873 (N.D. Ill. Feb. 9, 1998) .............................. 10

*In re First Capital Holdings Corp. Fin. Prods. Sec. Litig.*,
    No. MDL 901, 1993 WL 144861 (C.D. Cal. Feb. 26, 1993) ...................................... 12

*In re Rubber Chems. Antitrust Litig.*, 232 F.R.D. 346 (N.D. Cal. 2005) .............................. 8

*In re Seagate Tech. II Sec. Litig.*, 843 F. Supp. 1341 (N.D. Cal. 1994) .............................. 10

*Kulesa v. PC Cleaner, Inc.*, No. 12-cv-00725 (C.D. Cal.) .......................................... 11

*Lagarde v. Support.com*, No. 3:12-cv-00609 (N.D. Cal.) .......................................... 2, 11

*Ledet v. Ascentive, LLC*, No. 2:11-cv-294 (E.D. Penn.) .......................................... 2, 11

*Nat'l Rural Telecomm. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523 (C.D. Cal. 2004) ........................ 15

*O'Connor v. Boeing N. Am., Inc.*, 184 F.R.D. 311 (C.D. Cal. 1998) .................................... 8

*Parker v. iolo Techs., LLC*, No. 12-cv-00984 (C.D. Cal.) .......................................... 11

*Parkinson v. Hyundai Motor Am.*, 258 F.R.D. 580 (C.D. Cal. 2008) .................................. 9

*Robichaud v. SpeedyPC*, No. 12-v-04730-LB (N.D. Cal.) .......................................... 11

*Theis v. AVG Techs. USA, Inc.*, No. 12-cv-10920 (D. Mass.) .......................................... 11

*Webb, et al. v. cleverbridge, Inc., et al.*, No. 1:11-cv-04141 (N.D. Ill.) ................................ 2, 11

*Worley v. Avanquest N. Am., Inc.*, No. 12-cv-4391-SI (N.D. Cal.) ...................................... 11

**State Court Cases:**

*Drymon, et al. v. Cyberdefender Corp.*, No. 11 CH 16779 (Cir. Ct. Cook County, Ill.) ............. 2, 11

**Statutory Provisions:**

Cal. Bus. & Prof. Code §§ 17200, *et seq.* .......................................................... 9

Fed. R. Civ. P. 23 .......................................................................... *passim*

**Miscellaneous Authorities:**

Alba Conte & Herbert B. Newberg, Newberg on Class Actions (4th ed. 2002) ........................ 8, 15

Manual for Complex Litigation § 21.632 (4th ed. 2004) ............................................ 7

# I.    INTRODUCTION

Following more than a year of litigation, both formal and informal discovery, in-person meetings and informational exchanges, and two private mediations, Plaintiff James Gross and Defendants Symantec Corporation and PC Tools Ltd. have reached a proposed class action settlement that will finally resolve the claims against Defendants related to the alleged deceptive design and marketing of the Software Products at issue. All told, the settlement will provide the proposed Settlement Class[1] with the prospective measures necessary to ensure that Defendants' alleged misconduct does not continue into the future, monetary relief that represents a nearly full recovery of the amounts Plaintiff and the proposed Class paid in excess of the Products' actual value, and additional, valuable in-kind relief.

Specifically, under the terms of the settlement, Defendants will modify the Software Products to more accurately identify the functions they perform on users' computers and the results of those operations. Further, Defendants have agreed to create and publish new documentation that explains in a clear and concise manner the factors considered by the Software in determining a computer's overall health, as well as the potential harm and severity of the issues the Software detects. Defendants have also agreed to establish an $11 million Settlement Fund, from which (i) Settlement Class Members may claim a set-cash payment of $9.00—representing a nearly full recovery of the amounts they overpaid for the Software, and (ii) the costs of notice and settlement administration, an incentive award to the Class Representative, and an award of reasonable attorneys' fees and expenses will be paid.

Going even further, Defendants have agreed to provide each of the more than one million Settlement Class Members three free months of access to Symantec's proprietary and award-winning Norton Antivirus software, regardless of whether they submit a claim under the settlement. At a cost of $24.95 per year, this in-kind component of the settlement represents more than $6 in additional relief to each Settlement Class Member, and more than $6 million for the Class as a whole.

---

[1]    Unless otherwise stated herein, capitalized terms shall have the same meaning as set forth in the Parties' Stipulation of Class Action Settlement, attached as Exhibit 1.

In the end, as set forth below, the Parties' settlement, which is line with other settlements reached with Defendants' industry competitors that have either received preliminary or final approval (or are awaiting the same) from the various state and federal courts in which they are pending,[2] is well within the range of possible approval. Accordingly, Plaintiff respectfully requests that this Court grant the instant motion in its entirety.

## II.     FACTUAL AND PROCEDURAL BACKGROUND

### A.     Plaintiff's Allegations Regarding Defendants' Design and Marketing of the Software Products.

On August 14, 2012, Plaintiff Gross filed his Second Amended Complaint (the "Complaint") in this Court. (Dkt. 50, cited herein as "Compl.") In his Complaint, Gross alleges that Defendants deceptively designed and marketed PC Tools Registry Mechanic, PC Tools Performance Toolkit, and Norton Utilities (the "Software Products") to the expense of consumers. (Compl. ¶¶ 2-4, 48-52.) Specifically, Plaintiff alleges that Defendants market the Software Products as capable of performing a variety of functions—e.g., accurately detecting, reporting and repairing an array of computer errors and threats, while at the same time increasing the overall performance of a user's computer. (*Id.* ¶¶ 1, 40-42, 96.) To demonstrate the Software's supposed benefits,

_____

[2]     The settlements reached with Defendants' industry competitors are in the following cases: (i) *Drymon, et al. v. Cyberdefender Corp.*, No. 11 CH 16779 (Cir. Ct. Cook County, Ill.) (creating $9.75 million settlement fund from which class members could make a claim for $10 for each software product purchase; prospective relief requiring defendant to provide consumers with enhanced disclosures regarding the functionality and methodology of the software products at issue, as well as certain changes to the software itself; settlement finally approved on September 13, 2011); (ii) *Webb, et al. v. cleverbridge, inc., et al.*, No. 1:11-cv-04141 (N.D. Ill.) (creating $4 million settlement fund from which class members could make a claim for $8 for each software product purchase; prospective relief requiring defendants to provide consumers with enhanced disclosures regarding the functionality and methodology of the software products at issue; settlement finally approved on December 7, 2012); (iii) *Ledet v. Ascentive, LLC*, No. 2:11-cv-294 (E.D. Penn.) (creating $9.6 million settlement fund from which class members could make a claim for a collective amount of $18; prospective relief requiring defendant to provide consumers with enhanced disclosures regarding the functionality and methodology of the software products at issue, as well as certain changes to the software; settlement finally approved on November 19, 2012); and (iv) *Lagarde v. Support.com*, No. 3:12-cv-00609 (N.D. Cal.) (creating $8.595 million settlement fund from which class members could make claim for $10 for each software product purchase; prospective relief requiring defendants to modify the source code of the software to more accurately identify the functions performed and errors detected and repaired on a user's computer as well as provide disclosures about the software's functionality; in-kind relief of three months of free access to proprietary anti-spyware software; settlement preliminarily approved on November 2, 2012).

Defendants offer consumers a "free diagnostic" scan through the Products. (Compl. ¶¶ 3, 44.) Upon completion of the scan, the Software reports the errors existing on the user's computer and their severity. (*Id.* ¶¶ 3, 44-45.) The Software also informs consumers that it can fix the errors, but only if they register and pay for a full version of the Product. (*Id.* ¶¶ 3, 45.) Plaintiff was just one of more than a million consumers who viewed and relied upon Defendants' representations in its marketing materials by downloading the Software and ultimately, paying for and registering a full version of one of the Products. (*Id.* ¶¶ 54-57.)

Plaintiff alleges further that despite Defendants' marketing materials and in-software representations, however, the Software Products are not capable of performing as advertised. (*Id.* ¶¶ 4, 48.) Instead, Plaintiff contends that Defendants intentionally designed the Products to invariably exaggerate the existence and severity of errors on users' computers, as well as the overall health (or lack thereof) of the systems. (*Id.* ¶¶ 4, 49-50.) That design, in conjunction with marketing statements about the Software's supposed utility, was intended to and did induce consumers to pay for and continue to use the Products, which allegedly cannot live up to Defendants' promises and thus, were worth less than their purchase price. (*Id.* ¶¶ 3-4, 38, 45, 48-52.)[3]

## B. Plaintiff's Expert Confirms His Allegations.

Prior to filing this action, Plaintiff's counsel engaged a computer forensic expert—in addition to their own independent investigation through interviews with proposed Settlement Class Members and reviews of Defendants' marketing and advertising materials—to analyze the functionality of the Software Products. (*Id.* ¶ 49.) The expert ran a series of diagnostic tests in a controlled environment and ultimately concluded that the Software was designed to invariably report the existence of numerous purported errors, to characterize harmless files as "High Priority" problems, and to display the overall "System Health", "Privacy Health" and "Disk Health" of a computer as "LOW". (*Id.* ¶ 52.) At all times, Defendants have disputed and continue to dispute these findings.

---

[3] Although different in name, the Software Products, which have many similarities in function and in the way Defendants marketed them, are referred to collectively throughout Plaintiff's Second Amended Complaint and the instant motion. (*Id.* ¶¶ 40-42, 44-46, 51.)

### C. The Litigation History, Negotiations, and Settlement.

Prior to Plaintiff filing the instant lawsuit, the Parties held an initial meeting (through counsel) during which Plaintiff's attorneys presented their expert's conclusions about the Software Products and their underlying methodologies, and the Parties otherwise discussed their respective views of the case. (*See* Declaration of Rafey S. Balabanian ¶ 3, attached as Exhibit 2.) Based on those discussions, they agreed that there was at least some potential for an early resolution and therefore, proceeded with an all-day mediation before Judge Ronald M. Sabraw (ret.) of JAMS on January 3, 2012. (*Id.* ¶ 4.) After a full-day mediation, however, it appeared the Parties were further apart than expected, and they were unable to reach a settlement at that time. (*Id.*)

As a result, Gross proceeded with filing his original complaint on January 10, 2012, alleging claims solely against Defendant Symantec. (Dkt. 1.) Symantec moved to dismiss the complaint (Dkt. 28), and in lieu of filing an opposition, Plaintiff filed his first amended complaint and named Symantec's wholly owned subsidiary, PC Tools Ltd., as a party-defendant. (Dkts. 32-33.) Thereafter, Symantec filed another 12(b)(6) motion to dismiss arguing, *inter alia*, that it was not properly a party to the action, that Plaintiff had failed to properly plead his claims under California law, and that he also failed to plead fraud with the particularity required under Rule 9(b). (Dkt. 38.)

On July 31, 2012, the Court granted Symantec's motion to dismiss the amended complaint with leave for Plaintiff to plead additional factual information to support his claims. (Dkt. 49.) Thus, Plaintiff filed his Second Amended Complaint per the Court's Order. (Dkt. 50.) In response, Symantec filed its third motion to dismiss, (Dkt. 51), which has been fully briefed, but on which argument has not been heard and a ruling has not been entered in light of the instant settlement. (Dkts. 52, 54.)

As briefing on Symantec's several motions to dismiss proceeded, Plaintiff also served and Symantec responded to his first set of written discovery requests—including written interrogatories and requests for documents and electronic information. (Balabanian Decl. ¶ 5.) The Parties also exchanged correspondence and met and conferred regarding Plaintiff's perceived deficiencies in those responses. (*Id.*) Similarly, throughout the litigation and since the initial mediation, the Parties

kept the lines of communication open and had additional informal exchanges of information and conversations aimed at exploring their respective views of the case and potential resolution. (Balabanian Decl. ¶ 6.)

Ultimately, the Parties each believed they had obtained sufficient information that indicated a resolution may be possible and thus, agreed to proceed with a second mediation before third-party neutral John B. Bates of JAMS (San Francisco) on November 12, 2012. (*Id.* ¶ 7.) With the assistance of Mr. Bates, the Parties were able to reach an agreement in principle as to the primary terms of a class-wide settlement. (*Id.* ¶ 8.) But, it would take several more months of back-and-forth to finalize the ancillary terms of the settlement and reduce it to writing in the form of the Parties' Stipulation of Class Action Settlement (the "Agreement") now before the Court. (*Id.*)[4]

### D. Defendants' Defenses and Denials.

At all times, Defendants have denied and continue to deny any and all wrongdoing. (*See* Settlement Agreement § III.) Nonetheless, Defendants have entered into the Settlement Agreement, finding that continued litigation would be risky, burdensome, and expensive and that immediate resolution of these claims and release from future claims (as defined in the Settlement Agreement) are desirable and beneficial at this time. (*Id.*)

## III. TERMS OF THE SETTLEMENT

The terms of the Parties' settlement are summarized as follows:

**A.** **Class Definition:** The Settlement Class includes all individuals and entities residing in the United States and its territories that, prior to the date on which the Court enters an order preliminarily approving the settlement, purchased from an authorized seller a license to use any of the following software in the United States and its territories: PC Tools Registry Mechanic and PC Tools Performance Toolkit released since June 1, 2007, and Norton Utilities 14.0 through 16.0. (Settlement Agreement § II.)

---

[4] It was only after the Parties agreed upon the Settlement Benefits to the Class that they negotiated and reached agreement on the amount of proposed Class Counsel's Fee Award and an incentive award to Plaintiff as Class Representative, both of which are subject to Court approval. (Balabanian Decl. ¶ 8.)

**B.    Prospective Relief:**

*1.    Improvements to the Software Products*: Symantec and PC Tools have agreed to modify the current versions of their respective Software Products to: (i) deactivate the "System Health" meter within the main Graphical User Interface ("GUI") so that a user's System Health is reported as "unknown" until after the individual performs a scan with the Software, (ii) refrain from claiming that an upgrade to the full versions of the Software Products will "speed" up or make users' computers run "faster", (iii) no longer include representations within the Software Products that any specific errors require "immediate repair", (iv) no longer describe invalid registry entries as "errors", and (v) include documentation within the Software Products' GUI "Help" section that clearly explains the detection and reporting methodologies of the Software Products' diagnostic scans. (Settlement Agreement § VI.A.)

*2.    New Documentation Explaining the Software Products' Functionalities*: Defendants have further agreed to create and publish new documentation to be associated with the modified versions of the Software Products explaining in a clear and concise manner (i) the "System Health" meter and the factors considered in determining a computer's "System Health" and (ii) the potential harm that the issues detected by the Software Products might pose to a computer's operations, including what is meant by a "High Priority" issue. (*Id.* § VI.B.)

**C.    Monetary Relief:** Defendants have agreed to create a non-segregated Settlement Fund in the amount of $11 million, to be used for the payment of timely-filed claims, notice and administration expenses, an incentive award to Plaintiff as Class Representative, and the Fee Award to proposed Class Counsel. (*Id.* § VI.C.)

Each Settlement Class Member that submits a valid Claim Form will be entitled to receive a one-time payment of $9.00, to be paid from the Settlement Fund. (*Id.* § VI.C.2.) In the event that the amount in the Settlement Fund is not sufficient to pay in full all valid Settlement Class Member claims, notice and administration expenses, and the full amount of the incentive award and the Fee Award, the Settlement Administrator shall make payments to Settlement Class Members on a *pro rata* basis. (*Id.*)

**D.** **Additional Relief:** In addition to the individual and prospective relief described above, Defendants have agreed to the following relief.

**1.** ***Anti-Spyware Software***: Each Settlement Class Member will be entitled to receive three (3) months of free access to Symantec's proprietary Norton Antivirus software. (Settlement Agreement § VI.C.3.)

**2.** ***Payment of Notice and Administrative Expenses***: Defendants have agreed to pay all notice and administration expenses up to $150,000.00 out of the Settlement Fund. (*Id.* §§ II, VI.C.) Any overage will be paid one half by Defendants and one half by proposed Class Counsel. (*Id.* § VII.C.)

**3.** ***Compensation for the Class Representative***: Defendants have agreed to pay, from the Settlement Fund and subject to Court approval, an incentive award to Plaintiff as Class Representative in the amount of $2,500. (*Id.* § XI.A.)

**4.** ***Payment of Attorneys' Fees and Expenses***: Defendants have agreed that proposed Class Counsel may apply for and they will not object to or challenge a Fee Award in the amount of $1.65 million, subject to Court approval. The Fee Award shall include all attorneys' fees and reimbursement of expenses associated with this Action. (*Id.* § XI.B.)

**E.** **Release:** Upon the entry of the Judgment, and in consideration of the Settlement Benefits, each Settlement Class Member shall be deemed to have released, acquitted and forever discharged Defendants and each of the Released Parties from any and all "Released Claims." (*Id.* § V.)

## IV. THE PROPOSED SETTLEMENT CLASS SHOULD BE CERTIFIED AND PLAINTIFF'S COUNSEL APPOINTED AS CLASS COUNSEL.

Before granting preliminary approval of the proposed settlement, the Court should determine that certification of the proposed Settlement Class for settlement purposes is appropriate, which is a two-step process. *Amchem Prods. Inc. v. Windsor*, 521 U.S. 591, 620 (1997); Manual for Complex Litigation § 21.632 (4th ed. 2004). First, the proposed settlement class must satisfy each of Rule 23(a)'s four requisites to certification: numerosity, commonality, typicality, and adequacy of representation. *See* Fed. R. Civ. P. 23(a). Second, the proposed class must also satisfy at least one

of the three provisions of Rule 23(b). *See* Fed. R. Civ. P. 23(b); *Blake v. Arnett*, 663 F.2d 906, 912 (9th Cir. 1981). When a plaintiff seeks certification under Rule 23(b)(3)—as Gross does here—he or she must demonstrate that the questions of law or fact common to class members predominate over any individual questions and that maintaining the lawsuit as a class action is superior to other available methods for the fair and efficient adjudication of the controversy. Fed. R. Civ. P. 23(b)(3); *Amchem*, 521 U.S. at 615-16.

When considering the appropriateness of certification for settlement purposes, courts should accept the allegations of the plaintiff's operative complaint as true, but may also consider matters beyond the pleadings to determine if the claims are suitable for resolution on a class-wide basis. *Celano v. Marriot Int'l, Inc.*, 242 F.R.D. 544, 548 (N.D. Cal. 2007).

As explained further below, the proposed Settlement Class in this case easily meets each of the requisites to certification under Rule 23 and should be certified for settlement purposes.

### A.    The Numerosity Requirement is Satisfied.

Rule 23(a)'s first requirement, numerosity, is satisfied where "the class is so numerous that joinder of all members is impractical." Fed. R. Civ. P. 23(a)(1). There is no specific number of class members necessary, nor is a plaintiff required to calculate the exact number of potential class members. *Celano*, 242 F.R.D. at 549. Rather, the class need simply be ascertainable, *O'Connor v. Boeing N. Am., Inc.*, 184 F.R.D. 311, 319 (C.D. Cal. 1998), and courts are permitted "to make common-sense assumptions that support a finding that joinder would be impracticable." *In re Rubber Chems. Antitrust Litig.*, 232 F.R.D. 346, 350 (N.D. Cal. 2005); *see also* Alba Conte & Herbert B. Newberg, Newberg on Class Actions § 7.20, 66 (4th ed. 2002). However, courts have typically found that classes of 40 or more members are sufficiently numerous for certification. *Celano*, 242 F.R.D. at 549; *see also Barefield v. Chevron U.S.A. Inc.*, No. C 86-2427 TEH, 1987 WL 65054, at *2 (N.D. Cal. Sept. 9, 1987) (finding that "a class with one hundred or more members almost certainly satisfies the numerosity requirement.").

The proposed Settlement Class in this case easily satisfies Rule 23's numerosity requirement. According to Defendants' own records, more than one million individuals and entities have purchased the Software Products at issue. (Balabanian Decl. ¶ 9.) Thus, there is no question that joinder of all

Settlement Class Members would be impractical and that Rule 23(a)(1)'s numerosity requirement is satisfied.

**B.      The Commonality Requirement is Satisfied.**

Next, Rule 23(a)(2) requires that "there are questions of law or fact common to the class." Simply put, commonality requires the representative plaintiff to demonstrate that the proposed class members "have suffered the same injury." *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011) (quoting *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 157 (1982)). The threshold for commonality is not high, *Parkinson v. Hyundai Motor Am.*, 258 F.R.D. 580, 594 (C.D. Cal. 2008), as plaintiffs need only establish that a common nucleus of operative fact exists, even if as to just one question of law or fact. *Ballard v. Equifax Check Servs., Inc.*, 186 F.R.D. 589, 594-95 (E.D. Cal. 1999) (holding that the requirement may be satisfied if "defendants have engaged in standardized conduct toward the members of the proposed class.").

Commonality is also satisfied here. That is, Plaintiff alleges that Defendants designed the Software Products so that they functioned in essentially the same manner on each Class Member's computer and further disseminated substantially identical marketing materials and advertisements regarding that functionality. That standardized conduct raises several issues of fact common to the Settlement Class, namely: (i) whether Defendants intentionally designed the Software Products to falsely report the existence of errors on users' computers; (ii) whether the Software Products exaggerate the severity of errors detected on users' computers; (iii) whether Defendants intentionally designed the Software Products, and their respective marketing materials, to deceive consumers into purchasing the products; and (iv) whether Plaintiff and the Settlement Class overpaid for the Software Products that they contend overstate errors and other problems and, as a result, cannot fix all of the errors and problems as stated. Those common factual questions raise several legal questions common to the Settlement Class as well, including whether Defendants' alleged conduct constitutes (i) violations of California's Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200, *et seq.*, (ii) fraudulent inducement, (iii) breach of express warranties, (iv) breach of contract, and (v) breach of the implied covenant of good faith and fair dealing.

1    Thus, there are multiple questions of law and fact common to the Settlement Class Members,

2    and the commonality requirement is satisfied.

3    **C.    The Typicality Requirement is Satisfied.**

4    Rule 23(a)(3)'s typicality requirement asks whether a plaintiff's claims are typical of those of

5    the proposed class. This requirement is closely related to commonality and is satisfied if the plaintiff's

6    claims arise from "the same event or practice or course of conduct that gives rise to the claims of other

7    class members and…are based on the same legal theory." *In re Seagate Tech. II Sec. Litig.*, 843 F.

8    Supp. 1341, 1346 (N.D. Cal. 1994). However, a named plaintiff need only share "the same essential

9    characteristics" as those of the class—factual differences alone will not preclude a finding of typicality.

10   *Id.* Indeed, "'[s]imilarity of legal theory is more important than factual similarity….'" *Id.* (quoting

11   *Harris v. City of Chi.*, No. 96 CV 2406, 1998 WL 59873, at *5 (N.D. Ill. Feb. 9, 1998)).

12   Here, Plaintiff and the proposed Settlement Class share the same legal theories, based upon

13   the same (or substantially the same) set of facts, and their claims otherwise have the same essential

14   characteristics. They each claim that Defendants misrepresented the actual functionality of the

15   Software Products, intentionally designed the Software to misrepresent the condition of their

16   computers, and induced them to purchase a full version of the Software despite having full

17   knowledge that it does not possess the utility represented. As a result of that conduct, Plaintiff and

18   the Settlement Class were damaged in a nearly identical manner—i.e., in the form of the monies

19   Defendants collected from them for their purchases of the Software. Accordingly, by pursuing his

20   own claims, Plaintiff will necessarily advance the interests of the Settlement Class in satisfaction of

21   Rule 23(a)(3)'s typicality requirement.

22   **D.    The Adequacy of Representation Requirement is Satisfied.**

23   Finally, Rule 23(a)(4) requires that Plaintiff, as the proposed Class Representative, has and will

24   continue to "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4); *Amchem*,

25   521 U.S. at 625. To satisfy the adequacy requirement, Plaintiff must establish that (i) his claims are not

26   in conflict with those of the proposed Class and that (ii) he and proposed Class Counsel will prosecute

27   the Action vigorously on behalf of the Class. *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir.

28

1998). Put simply, the adequacy requirement revolves around whether the class representatives and their counsel have the requisite "zeal and competence" to protect the absent class members. *Evans v. IAC/Interactive Corp.*, 244 F.R.D. 568, 577 (C.D. Cal. 2007) (quoting *Fendler v. Westgate-Cal. Corp.*, 527 F.2d 1168, 1170 (9th Cir. 1975)). In this case, they do.

First, Plaintiff has the same interests as the other Settlement Class Members—they each have an interest in having the monies they paid for the Software Products that they allege lack the advertised functionality returned and in obtaining the prospective measures necessary to ensure that Defendants' alleged misconduct does not continue into the future. Furthermore, Plaintiff has no interests antagonistic to those of the proposed Settlement Class. (Balabanian Decl. ¶ 11.) As such, Plaintiff will fairly and adequately protect the interests of the Class, and his pursuit of this Action demonstrates as much.

Likewise, proposed Class Counsel and the lawyers at Edelson LLC are well-respected members of the legal community who have extensive experience in class actions of similar size, scope, and complexity to the instant action. (*Id.* ¶ 12.) They have regularly engaged in major complex litigation involving consumer technology issues, have the resources necessary to conduct litigation of this nature, and have frequently been appointed lead class counsel by courts throughout the country. (*Id.*; *see also* Firm Resume of Edelson LLC, attached as Exhibit 2-A to the Balabanian Declaration.) Particularly relevant here, Class Counsel has in the past and is currently prosecuting numerous class actions related to the alleged fraudulent design and marketing of so-called utility software. *See, e.g., LaGarde, et al. v. Support.com, Inc., et al.*, No. 12-cv-00609-JSC (N.D. Cal.); *Parker v. iolo Techs., LLC*, No. 12-cv-00984 (C.D. Cal.); *Drymon, et al. v. Cyberdefender Corp.*, No. 11 CH 16779 (Cir. Ct. Cook County, Ill.); *Webb, et al. v. Cleverbridge, Inc., et al.*, No. 11-cv-04141 (N.D. Ill.); *Ledet v. Ascentive, LLC*, No. 11-cv-00294 (E.D. Pa.); *Theis v. AVG Techs. USA, Inc.*, No. 12-cv-10920 (D. Mass.); *Kulesa v. PC Cleaner, Inc.*, No. 12-cv-00725 (C.D. Cal.); *Robichaud v. SpeedyPC*, No. 12-v-04730-LB (N.D. Cal.); *Worley v. Avanquest N. Am., Inc.*, No. 12-cv-4391-SI (N.D. Cal.); *Bilodeau v. McAfee, Inc., et al.*, No. 12-cv-4589-LHK (N.D. Cal.); *Hall v. Tuneup Corp.*, No. 1:13-cv-1804 (N.D. Ill.). Moreover, to date, proposed Class Counsel have diligently investigated, prosecuted, and dedicated substantial resources to

the claims in this Action, and they will continue to do so throughout its pendency. (Balabanian Decl. ¶ 14.)

As such, Plaintiff and his counsel have and will continue to adequately represent the Settlement Class, and the final Rule 23(a) requirement is satisfied.

### E. The Proposed Settlement Class Meets Rule 23(b)(3)'s Requirements.

In addition to meeting the prerequisites of Rule 23(a), the proposed Settlement Class must also satisfy the requirements of at least one of the three subsections of Rule 23(b). *Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1186 (9th Cir. 2001). Here, Plaintiff seeks certification under Rule 23(b)(3), which is encouraged "whenever the actual interests of the parties can be served best by settling their differences in a single action." *Hanlon*, 150 F.3d at 1022. To satisfy the certification requirements under Rule 23(b)(3), Plaintiff must establish that (i) questions of law and fact common to members of the Settlement Class predominate over questions affecting only individuals, and (ii) the class action mechanism is superior to the other available methods for the fair and efficient adjudication of the controversy. Fed. R. Civ. P. 23(b)(3); *In re Wells Fargo Home Mortg. Overtime Pay Litig.*, 571 F.3d 953, 957 (9th Cir. 2007). As explained below, the proposed Settlement Class meets both of these requirements.

#### 1. Common Questions of Law and Fact Predominate.

Rule 23(b)(3)'s predominance requirement focuses primarily on whether a defendants' liability is common enough to be resolved on a class basis, *Dukes*, 131 S. Ct. at 2551-57, and whether the proposed class is "sufficiently cohesive to warrant adjudication by representation." *Amchem*, 521 U.S. at 623. Although common issues must predominate, they need not be exclusive. *In re First Capital Holdings Corp. Fin. Prods. Sec. Litig.*, No. MDL 901, 1993 WL 144861, at *9 (C.D. Cal. Feb. 26, 1993). Rather, predominance exists "[w]hen common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication." *Hanlon*, 150 F.3d at 1022.

In order to establish Defendants' liability here, each Settlement Class Member will be required to show that Defendants (i) intentionally designed the Software Products to exaggerate the existence and

severity of errors and other problems on users' computers, and (ii) intentionally designed the marketing materials for the Software Products to misrepresent the actual functional capabilities of the Products. In addition to these overarching issues, Plaintiff and the proposed Settlement Class Members allege that the manner in which Defendants marketed and charged them for the Software Products are virtually identical. Thus, their claims will be subject to common proofs, and the common issues raised by Defendants' alleged misconduct predominate over any issues affecting only individual members of the Settlement Class, such as the amount of damages each Class Member is entitled to recover. *See, e.g., Yokoyama v. Midland Nat. Life Ins. Co.*, 594 F.3d 1087, 1094 (9th Cir. 2010) (holding that "[in] this circuit…damage calculations alone cannot defeat certification").

### 2. *A Class Action is the Superior Method for Adjudicating this Controversy.*

This class action is also superior to other available methods for the fair and efficient adjudication of Plaintiff's and the Settlement Class's claims. The purpose of the superiority requirement is judicial economy and assurance that a class action is the "most efficient and effective means of resolving the controversy." *Wolin v. Jaguar Land Rover N. Am. LLC*, 617 F.3d 1168, 1175–76 (9th Cir. 2010). A class action is superior when it will reduce the costs inherent in litigation and "no realistic alternative exists" for the class members. *Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227, 1234-35 (9th Cir. 1996). And, when parties have already negotiated a compromise, courts need not focus on issues that could surface at trial, because a finally approved settlement would extinguish the need for one. *Amchem*, 521 U.S. at 620.

Here, if Settlement Class Members brought suit individually, each would be required to provide nearly the same—if not exactly the same—legal and factual arguments to prove their common claims. This would result in more than one million trials at enormous expense to the Class Members, the Defendants, and the courts. This, compared to the relatively small amount of damages each Class Member seeks to recover (i.e., only a portion of the Software Products' typical $29.99 purchase price), makes clear that the likelihood that they would have an incentive to pursue claims—let alone actually pursue them—is very low at best. *See Chavez v. Blue Sky Natural Beverage Co.*, 268 F.R.D. 365, 379 (N.D. Cal. 2010) (holding that a class action is superior to

1  maintaining individual claims for a small amount of damages).

2      In short, this class action is the superior method for adjudicating the controversy between

3  the Parties.

4      **F.      Plaintiff's Counsel Should be Appointed Class Counsel.**

5      Finally, in conjunction with certifying a class pursuant to Rule 23, courts are also required to

6  appoint class counsel. Fed. R. Civ. P. 23(g)(1)(A). In so doing, Rule 23 requires that courts focus upon

7  appointing counsel who will fairly and adequately represent the interests of the class and to consider

8  proposed class counsel's (i) work in identifying or investigating potential claims, (ii) their experience in

9  handling class actions and the types of claims asserted in the case at hand, (iii) their knowledge of the

10  applicable law, and (iv) the resources they have committed to representing the class. Fed. R. Civ. P.

11  23(g)(1)(A).

12      As discussed in Section IV.D., *supra*, proposed Class Counsel not only have extensive

13  experience litigating complex consumer-technology class actions generally, but also in the utility

14  software industry in particular. (Balabanian Decl. ¶ 12.) Additionally, Class Counsel have devoted

15  substantial time and other resources to the investigation and prosecution of Plaintiff's and the Class's

16  claims—having engaged in both formal and informal discovery, briefing on several substantive

17  motions, several months of arm's-length negotiations and two mediations. (*Id.* ¶ 15.) As a result,

18  proposed Class Counsel have certainly gained a superior understanding of both the factual and legal

19  bases of the claims at issue in this case, and they are best equipped to ensure that the Settlement Class

20  receives the best relief possible under the circumstances. (*Id.*)

21              *                    *                    *

22      With the requirements of both Rule 23(a) and 23(b)(3) satisfied, Plaintiff respectfully requests

23  that this Court certify the proposed Settlement Class for settlement purposes, and further, that the Court

24  appoint his counsel to serve as Class Counsel.

25  **V.      THE PROPOSED SETTLEMENT IS FUNDAMENTALLY FAIR, REASONABLE,
26          AND ADEQUATE, AND THUS WARRANTS PRELIMINARY APPROVAL.**

27      After determining that the Settlement Class is appropriate for certification, courts turn to

28  considering whether the proposed settlement warrants preliminary approval. Approval of a class action

settlement is a two-step process. Newberg on Class Actions § 11.25, at 38-39; *see also Nat'l Rural Telecomm. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 525 (C.D. Cal. 2004). First, a preliminary, pre-notification hearing is held to determine whether the proposed settlement is "within the range of possible approval." Newberg on Class Actions §11.25, at 38-39. The preliminary approval hearing is not a fairness hearing, but rather, a hearing "to ascertain whether there is any reason to notify the class members of the proposed settlement and to proceed with a fairness hearing." *Nat'l Rural Telecomm. Coop.*, 221 F.R.D. at 525. If the court finds the proposed settlement to be "within the range of possible approval," then the case proceeds to the second step in the review process—the final fairness hearing. *Id.*; Newberg on Class Actions §11.25, at 38-39.

There is a strong judicial policy in favor of voluntary conciliation and settlement of complex class action litigation. *In re Syncor ERISA Litig.*, 516 F.3d 1095, 1101 (9th Cir. 2008) (citing *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615 (9th Cir. 1982)). Thus, while a district court has discretion regarding the approval of a proposed settlement, it should give "proper deference to the private consensual decision of the parties." *Hanlon*, 150 F.3d at 1027. In fact, when a settlement is negotiated at arm's length by experienced counsel, there is a presumption that it is fair and reasonable. *In re Pac. Enters. Sec. Litig.*, 47 F.3d 373, 378 (9th Cir. 1995). Ultimately, the district courts' role is to ensure that proposed settlements are fundamentally fair, reasonable, and adequate. Fed. R. Civ. P. 23(e)(2); *In re Syncor*, 516 F.3d at 1100.

There is no question that this settlement falls well within the range of possible approval. First, the process used to reach the settlement was fair. Despite their initial meeting, informal exchanges of information, and first mediation with Judge Sabraw (ret.), the Parties were initially unable to reach a resolution of this matter. (Balabanian Decl. ¶ 16.) So, they proceeded with the litigation and only later determined that resolution was a possibility after briefing on several substantive motions, formal discovery, and additional discussions. (*Id.* ¶ 17.) Even then, it took a second all-day mediation with Mr. Bates of JAMS to reach agreement on the principal terms of the settlement. (*Id.*) Thus, it's clear that the agreement and its terms were negotiated by experienced counsel who ensured they had ample information—including Plaintiff's expert's own findings and pre-filing investigation—at their disposal

1  prior to their mediation sessions and during subsequent negotiations to evaluate the terms of any

2  proposed agreement and to reach a fair and reasonable compromise. (Balabanian Decl. ¶ 18.)

3        The substantive terms of the proposed settlement are similarly fair and reasonable. Plaintiff's

4  primary goals in initiating and resolving the Action were (i) to obtain the prospective relief necessary to

5  ensure that Defendants' alleged conduct does not continue into the future and (ii) to obtain monetary

6  relief for each of the individuals and entities who overpaid for the Software Products as a result of their

7  alleged failure to function as advertised. Plaintiff's first goal was certainly achieved, as Defendants have

8  agreed to modify the Software to more accurately represent the overall health of users' computers and

9  any errors or other problems affecting them, to better describe the capabilities of the Software through

10  in-software representations, and to publish additional documentation explaining both the factors

11  considered in diagnosing a computer's health as well as the effects of detected issues. (*See* Settlement

12  Agreement §§ VI.A-B.)

13       Moreover, the settlement provides the Settlement Class with immediate monetary

14  compensation for the alleged diminished value of the Software Products they purchased. To be clear,

15  Plaintiff's theory of this case has always been that while any design flaws in the Software's ability to

16  diagnose, report and repair various errors and problems on users' computers reduced the value of the

17  Software, it didn't represent a complete lack of utility.[5] Thus, Class Members' ability to obtain $9 cash

18  payments for their purchase of the Software by submitting claims online or by mail—with only a

19  minimal showing—is a significant result. In the end and based upon proposed Class Counsel's own

20  investigation and the information obtained from Defendants, they are confident that the $11 million

21  monetary component of the settlement represents close to a full recovery for the Settlement Class.

22  Likewise, Defendants' agreement to provide three months of free access to Symantec's Norton

23  Antivirus software to Class Members (regardless of whether they make a claim) provides an additional

24  $6 of value to each Settlement Class Member, and more than $6 million to the Class as a whole.

25       That certainty of recovery that the settlement represents also underscores its fairness and

26

27  [5]    To be sure, Defendants were likely to argue that the Software has some value. Thus, the

28  ultimate question for the trier of fact would be to measure the overpayment by determining how much the Software was actually worth as compared to the amount the Class Members paid for it.

reasonableness. Indeed, absent the settlement, the expense, duration, and complexity of protracted litigation would be substantial and require further briefing on numerous substantive issues, further written discovery and depositions, adversarial class certification, and trial preparations. (Balabanian Decl. ¶ 20.) Likewise, in light of the complexity of the issues presented here and the total amount in controversy, the defeated party would likely appeal, further delaying any recovery by the Settlement Class. (*Id*.)

For all of these reasons, Plaintiff and proposed Class Counsel firmly believe both the prospective and monetary relief obtained for the Settlement Class, as well as the manner in which it was attained, weighs heavily in favor of a finding that the settlement is fair, reasonable and adequate, and well within the range of approval. (*Id*. ¶ 21.) Accordingly, the Court can appropriately grant preliminary approval.

## VI.    THE PROPOSED NOTICE PLAN SHOULD BE APPROVED.

Finally, Rule 23 requires that notice must be disseminated to the proposed Class. To satisfy the requirements of both Rule 23 and due process, Rule 23(c)(2)(B) provides that, "[f]or any class certified under Rule 23(b)(3), the court must direct to class members the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B); *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173 (1974). The substance of the notice must describe in plain language the nature of the action, the definition of the certified class, and the class claims and defenses at issue. *See* Fed. R. Civ. P. 23(c)(2)(B). The notice must also explain that class members may enter an appearance through counsel if desired, may request to be excluded from the class, and that a class judgment shall have a binding effect on all class members. *Id*. The proposed notice plan in this case easily satisfies both Rule 23 and due process.

The Parties' settlement provides for a two-part Notice Plan. First, the Settlement Administrator—Epiq Systems—will send direct notice via e-mail to the last known e-mail address

of each Settlement Class Member.[6] Direct e-mail notice will be particularly effective in this case given that e-mail was the primary means by which Settlement Class Members communicated with Defendants following their purchase of the Software Products and indeed, e-mail addresses were required before Class Members could complete those purchases.[7] (Balabanian Decl. ¶ 19.) As importantly, the notice is both neutral in tone and easy to understand, allowing Class Members to make informed decisions based on their rights under the Settlement.

Second, the Settlement Administrator will launch and maintain a Settlement Website that allows for 24-hour access to relevant Court documents—including a copy of the Settlement Class Notice, a downloadable Claim Form, the Settlement Agreement, the Preliminary Approval Order entered by the Court (should one be entered), and the operative complaint. In addition, the Settlement Website will also allow Class Members to submit Claim Forms online. (The proposed Notice and Claim Form are attached to the Settlement Agreement as Exhibits A and B, respectively.) And, back-stopping the Settlement Website will be a toll-free telephone line through which Class Members can contact the Settlement Administrator to obtain additional information about the settlement and request a Claim Form, as well as a mailing address through which Class Members will have the ability to contact the Administrator to make such requests. (Settlement Agreement §§ VII.A.2, VII.B.4.)

Accordingly, the proposed Notice Plan satisfies both Rule 23 and due process, and it should be approved by the Court as well.

**VII.    CONCLUSION**

For the foregoing reasons, Plaintiff James Gross respectfully requests that the Court enter an Order (i) granting preliminary approval of the Parties' proposed class action settlement, (ii) certifying the proposed Settlement Class for settlement purposes, (iii) approving the form and content of the notice to the members of the Settlement Class, (iv) appointing Plaintiff as Class

---

[6]      In the event an e-mail "bounces back" or is shown to be undeliverable, the Settlement Administrator will resend the notice to account for issues that might render it temporarily undeliverable (*e.g.*, server problems). (Declaration of Mallory Sander ¶ 10, attached as Exhibit 3.)

[7]      The Settlement Administrator will also use a multi-faceted approach to further ensure the deliverability of the e-mail notice. (*See generally,* Sander Declaration.) In other similar cases, those procedures resulted in almost unheard of deliverability rates of upwards of 90%.

Representative, (v) appointing Plaintiff's counsel as Class Counsel, (vi) scheduling a Fairness Hearing in this matter, and (vii) providing such other and further relief as the Court deems reasonable and just.[8]

Respectfully submitted,

**JAMES GROSS**, individually and on behalf of all others similarly situated,

Dated: March 15, 2013

By: /s/ Rafey S. Balabanian
      One of Plaintiff's Attorneys

JAY EDELSON (Admitted *Pro Hac Vice*)
jedelson@edelson.com
RAFEY S. BALABANIAN (Admitted *Pro Hac Vice*)
rbalabanian@edelson.com
BENJAMIN H. RICHMAN (Admitted *Pro Hac Vice*)
brichman@edelson.com
CHANDLER R. GIVENS (Admitted *Pro Hac Vice*)
cgivens@edelson.com
EDELSON LLC
350 North LaSalle Street, Suite 1300
Chicago, Illinois 60654
Telephone:  (312) 589-6370
Facsimile:  (312) 589-6378

SEAN P. REIS (SBN 184044)
sreis@edelson.com
30021 Tomas Street, Suite 300
Rancho Santa Margarita, California 92688
Telephone: (949) 459-2124
Facsimile: (949) 459-2123

---

[8]    A Proposed Preliminary Approval Order is attached to the Settlement Agreement as Exhibit C and has been submitted to the Court in accordance with the Local Rules of this District.