JAY EDELSON (Admitted *Pro Hac Vice*)
jedelson@edelson.com
RAFEY S. BALABANIAN (Admitted *Pro Hac Vice*)
rbalabanian@edelson.com
BENJAMIN H. RICHMAN (Admitted *Pro Hac Vice*)
brichman@edelson.com
CHANDLER R. GIVENS (Admitted *Pro Hac Vice*)
cgivens@edelson.com
EDELSON LLC
350 North LaSalle Street, Suite 1300
Chicago, Illinois 60654
Tel: 312.589.6370
Fax: 312.589.6378

*Attorneys for Plaintiffs and the Putative Class*

KEITH E. EGGLETON, State Bar No. 159842
MAURA L. REES, State Bar No. 191698
ANTHONY J WEIBELL, State Bar No. 238850
WILSON SONSINI GOODRICH & ROSATI, P.C.
650 Page Mill Road
Palo Alto, CA 94304-1050
Tel: (650) 493-9300
Fax: (650) 565-5100
E-mail: mrees@wsgr.com; aweibell@wsgr.com

*Attorneys for Defendants*

# UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| JAMES GROSS, individually and on behalf of all others similarly situated,<br><br>                    *Plaintiff,*<br><br>      v.<br><br>SYMANTEC CORPORATION, a Delaware corporation, and PC TOOLS, LTD., an Irish limited company,<br><br>                    *Defendants.* | Case No. 3:12-cv-00154-CRB<br><br>**JOINT NOTICE OF AND REQUEST TO APPROVE *CY PRES* RECIPIENTS**<br><br>Date: October 4, 2013<br>Time: 10:00 a.m.<br>Location: Courtroom 6, 17th Floor<br>Judge: Honorable Charles R. Breyer |

## I. INTRODUCTION

On May 28, 2013, the Court granted preliminary approval to the class settlement reached between plaintiff and defendants in this action ("the Settlement"), finding the Settlement to be "fair, reasonable, and adequate, and within the range of possible approval." ECF No. 70 ¶ 2. Pursuant to the Court's instruction given during the preliminary approval process, the parties amended the Settlement to include a potential *cy pres* benefit in Section XI.C of the Settlement Agreement. ECF No. 68-1. This section provides that if the Court approves a Fee Award to Class Counsel that is less than the maximum amount allowed by the Settlement, "the Court shall have discretion to designate for *cy pres* distribution a portion of the Settlement Fund equal to or less than the difference between the actual Fee Award and the maximum allowable Fee Award." *Id.* at 2. In granting preliminary approval to the amended Settlement, the Court instructed the parties to "jointly submit to the Court a list of proposed recipients of any potential *cy pres* distribution, including any proposals for allocation among *cy pres* recipients." ECF No. 70 ¶ 6.

Per the Court's Order, the Parties have now considered and conferred regarding several proposed *cy pres* recipients, including reviewing written proposals regarding their intended use of any funds they might receive. After carefully considering the proposals and conferring with the organizations themselves, the Parties were unable to reach an agreement on which organizations to propose. Because the parties have been unable to reach agreement on a joint list of potential *cy pres* recipients, each party separately proposes the following potential recipients:

<u>Plaintiff's Proposed *Cy Pres* Recipients</u>
1. The U.C. Berkeley Center for Law and Technology
2. The Rose Foundation
3. Consumer Watchdog

<u>Defendants' Proposed *Cy Pres* Recipients</u>
1. National Cyber Security Alliance
2. Girls STEM Network: Cybersecurity
3. Common Sense Media

The parties leave it to the Court's discretion to select all or less than all of the proposed recipients to receive a share of any *cy pres* distribution under Section XI.C of the Settlement Agreement.

## II. STANDARD FOR APPROVAL OF *CY PRES* DISTRIBUTION AND RECIPIENTS.

At its most basic, "[a] cy pres remedy…is a settlement structure wherein class members receive an indirect benefit (usually through defendant donations to a third party) rather than a direct monetary payment." *Lane v. Facebook, Inc.*, 696 F.3d 811, 819 (9th Cir. 2012). A *cy pres* distribution is appropriate if it bears a "substantial nexus to the interests of the class members." *Id.* at 821. A "substantial nexus" exists if the *cy pres* recipients are "the 'next best' class of beneficiaries" and if the *cy pres* distribution "account[s] for the nature of the plaintiffs' lawsuit, the objectives of the underlying statutes, and the interests of the silent class members." *Id.* (quoting *Nachshin v. AOL, LLC*, 663 F.3d 1034, 1036 (9th Cir. 2011)).

## III. PLAINTIFF GROSS'S PROPOSED *CY PRES* RECIPIENTS.

For his part, Plaintiff proposes three organizations as potential recipients of any *cy pres* award here: (i) The U.C. Berkeley Center for Law and Technology ("BCLT"), (ii) The Rose Foundation, and (iii) Consumer Watchdog. It's Plaintiff's position that a *cy pres* distribution to any (or all) of these organizations would easily meet the requirements under the Ninth Circuit's well-established standards for making such awards in class action settlements. First, the funds to be distributed are "unclaimed" inasmuch as they will be paid from the Settlement Fund, but were not otherwise distributed to class members (e.g., in the form of claims payments or attorneys' fees). And as explained below, if they are selected, the work performed by each of Plaintiff's proposed recipients also dovetails with the primary issues in this litigation and the interests of the Settlement Class—namely, educating consumers about the pitfalls of potentially misleading online advertising and ensuring that those consumers don't fall prey to consumer-technology and software companies utilizing such practices.

To the latter point and in particular, BCLT is a leading institution for research, education, and policy development in consumer protection, privacy law, and e-commerce, and is home to

some of the most prominent faculty members and policy makers on these issues in the country. With respect to the issues in this litigation, BCLT is conducting ongoing studies regarding the kinds of promotional materials and testimonials for consumer products typically found on the Internet (like those at issue here), and how they affect consumers' decision-making when purchasing products online. The ultimate expectation for and focus of the study is on influencing the development of consumer protection laws throughout the country—e.g., better informing the "reasonable person" standard typically considered by courts in deceptive advertising cases like this one. BCLT intends to use any *cy pres* distribution it may receive to expand its current efforts by (i) collecting larger samples of consumers, (ii) diversifying the demographic reach of its studies, and (iii) investigating a broader array of questions relevant to online consumer protection. (*See* Proposal of the U.C. Berkeley Center for Law and Technology, attached as Exhibit 1.)

Next, The Rose Foundation is a grant making public charity with extensive experience in receiving and administering *cy pres* and restitution funds. The Foundation has been named by courts to receive funds from more than 300 consumer and environmental *cy pres* awards, and has used these funds to award more than $20 million to consumer, community and environmental organizations throughout California and the country. On the consumer-side, The Foundation operates its Consumer Protection Grants Fund, which is focused on issuing grants to organizations that promote various consumer awareness projects, including educating consumers regarding banking and finance issues, on-line consumer privacy, and protections against identify theft. With that extensive experience creating, organizing and managing such grants, The Foundation intends to use any *cy pres* distribution it may receive here to award grants to highly-qualified consumer education projects directed towards educating consumers about how to recognize (and avoid if need be) the software product marketing tactics and performance claims like those at issue in this case. (*See* Proposal of The Rose Foundation, attached as Exhibit 2.)

For its part, Consumer Watchdog is an organization dedicated to educating and advocating on behalf of consumers through policy research, investigation, public education, advocacy (including litigation), and direct consumer outreach. With respect to the relevant issues in this

case, Consumer Watchdog has advanced initiatives to educate, advocate for, and protect consumers against potentially fraudulent and misleading marketing and sales tactics utilized by consumer-technology and software companies. Consumer Watchdog intends to use any *cy pres* distribution it may receive to bolster its efforts in (i) hiring additional staff to allow better representation in front of regulatory bodies related to consumer rights in technology and software purchases, (ii) file multiple petitions with regulatory bodies seeking to advance consumer rights in such purchases, and (iii) researching and publishing in-depth reports, online publications, and national media campaigns related to such issues. (*See* Proposal of Consumer Watchdog, attached as Exhibit 3.)[1]

For the foregoing reasons, Plaintiff James Gross, individually and on behalf of the Settlement Class, respectfully requests that the Court enter an Order (i) approving the U.C. Berkeley Center for Law and Technology, The Rose Foundation, and Consumer Watchdog as *cy pres* recipients, and (ii) directing the distribution of a *cy pres* award (if any) to each recipient in an amount to be determined by the Court.

### IV.    DEFENDANTS' PROPOSED *CY PRES* RECIPIENTS.

Defendants propose that a *cy pres* distribution be awarded to three non-profit organizations that work to educate consumers about protecting themselves and their computers in an online world: (i) National Cyber Security Alliance, (ii) Girls STEM Network: Cybersecurity, and (iii) Common Sense Media. The class members in this action are all purchasers of software products designed to protect their computers from unwanted errors and to protect their Internet privacy. *See* ECF No. 50 ¶ 60. Plaintiff alleged that this software exaggerated the "health" of class members' computer systems and Internet privacy to induce class members who were uninformed about the actual state of their computers and Internet privacy to purchase a full license to the software. *Id.* ¶¶

---

[1]   It bears noting that Consumer Watchdog was recently selected and approved as an appropriate *cy pres* recipient in the case captioned *LaGarde v. Support.com, et al.*, No. 3:12-cv-00609-JSC (N.D. Cal.), previously pending in this District. Similar to this case, in *LaGarde* the Parties reached a classwide settlement of claims related to the alleged deceptive design and marketing of utility software. The *LaGarde* settlement was granted final approval on May 30th.

1-4. The potential *cy pres* recipients proposed by defendants provide services that have a "substantial nexus to the interests of the class members" and to the "nature of the plaintiffs' lawsuit" because these services help provide the education to the class that Plaintiff alleged class members lack regarding the health of their computer systems and Internet privacy. Accordingly, these proposed *cy pres* recipients are among "the 'next best' class of beneficiaries" to receive benefits under the settlement.

      National Cyber Security Alliance ("NCSA") has a mission "to educate and therefore empower a digital society to use the Internet safely and securely at home, work, and school, protecting the technology individuals use, the networks they connect to, and our shared digital assets." *See* NCSA Proposal, attached as Exhibit 4. NCSA has lead a coalition of private companies, non-profits and government organizations in a global cybersecurity awareness campaign to help all digital citizens stay safer and more secure online, partnering with the U.S. government, including the White House, to promote a campaign recognized by President Barack Obama as the national cybersecurity awareness campaign during his Presidential Proclamation of National Cyber Security Awareness Month in 2010. *Id.* NCSA would use a *cy pres* distribution under the Settlement to (a) fund its National Data Privacy Day education events and campaigns; (b) fund its General Privacy Awareness Program; and (c) develop education and awareness events in connection with National Cybersecurity Awareness Month. *Id.*

      Girls STEM Network: Cybersecurity ("GSNC") is a non-profit program run by San José State University to "create opportunities for middle school-aged girls to learn how to protect the online environments of their families and communities by participating in cybersecurity-related programming in out-of-school settings." *See* GSNC proposal, attached as Exhibit 5.  GSNC would use its distribution from the Settlement to (a) fund instructor development content and pedagogy, (b) pay for the costs of program instruction, (c) purchase equipment and software for the program, (d) fund a convening for middle school Cybersecurity-focused, out-of school time providers, (e) host community events aimed at disseminating information about online security and involving participant parents, (f) pay the costs associated with dissemination of program model/results, (g)

pay the printing costs associated with the program, and (h) fund the salary for evaluator and student research positions.

Common Sense Media ("CSM") "is dedicated to improving the lives of kids and families by providing the trustworthy information, education, and independent voice they need to thrive in a world of media and technology." *See* CSM Proposal, attached as Exhibit 6. CSM's programs and products are used by thousands of schools, afterschool programs, and community-based organizations across the nation. *Id.* These programs are designed to "empower kids to think critically, behave safely, and participate responsibly in our 24/7 media world while providing adults the resources and tools to support them." *Id.* CSM would use funds received from the Settlement for the continued development and national outreach of its groundbreaking Digital Literacy and Citizenship Education Programs and Products, which are offered free of charge to educators and families. *Id.*

\*   \*   \*

Dated: August 6, 2013      EDELSON LLC

By: /s/ Benjamin H. Richman
        Benjamin H. Richman

*Attorneys for Plaintiffs and the Putative Class*

Dated: August 6, 2013      WILSON SONSINI GOODRICH & ROSATI
                           Professional Corporation

By: /s/ Anthony J Weibell
        Anthony J Weibell

*Attorneys for Defendants*

**ECF CERTIFICATION**

I, Anthony Weibell, am the ECF User whose identification and password are being used to file this document and attest that all signatories hereto have concurred in this filing.

Dated: August 6, 2013

WILSON SONSINI GOODRICH & ROSATI
Professional Corporation

By:   /s/ Anthony J Weibell
       Anthony J Weibell