KEITH E. EGGLETON, State Bar No. 159842
MAURA L. REES, State Bar No. 191698
ANTHONY J WEIBELL, State Bar No. 238850
WILSON SONSINI GOODRICH & ROSATI
Professional Corporation
650 Page Mill Road
Palo Alto, CA 94304-1050
Telephone: (650) 493-9300
Facsimile: (650) 565-5100
E-mail: keggleton@wsgr.com;
mrees@wsgr.com; aweibell@wsgr.com

Attorneys for Defendant
SYMANTEC CORPORATION

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| JAMES GROSS, <br><br> Plaintiff, <br><br> v. <br><br> SYMANTEC CORPORATION, et al., <br><br> Defendants. | CASE NO.: C 12-00154 CRB <br><br> **SYMANTEC'S STATEMENT IN SUPPORT OF FINAL APPROVAL OF THE SECOND AMENDED CLASS ACTION SETTLEMENT AGREEMENT** <br><br> Date: March 14, 2014 <br> Time: 10:00 AM |

**CONTENTS**

I. INTRODUCTION ................................................................................................................. 1

II. LEGAL STANDARD ........................................................................................................... 2

III. THE SETTLEMENT SHOULD BE APPROVED BECAUSE PLAINTIFF'S LAWSUIT LACKS MERIT ............................................................................................... 3

IV. THE SETTLEMENT SHOULD BE APPROVED BECAUSE IT PROVIDES BENEFITS BETTER THAN OR EQUAL TO WHAT PLAINTIFF COULD HAVE OBTAINED HAD HE PREVAILED ON THE MERITS ....................................... 5

V. THE SETTLEMENT SHOULD BE APPROVED BECAUSE IT IS THE PRODUCT OF REPEATED NEGOTIATIONS AND REPEATED COURT INVOLVEMENT TO ENSURE ITS FAIRNESS ................................................................ 6

VI. THE LACK OF ANY OBJECTORS OR INTERVENERS EVIDENCES THAT THE SETTLEMENT SHOULD BE APPROVED ................................................................ 9

VII. CONCLUSION ................................................................................................................... 10

**AUTHORITIES**

**CASES**

*Churchill Vill., L.L.C. v. GE*,
       361 F.3d 566 (9th Cir. 2004) .................................................................................................. 9

*Fraley v. Facebook, Inc.*,
       No. 11-1726 RS, 2013 WL 4516806 (N.D. Cal. Aug. 26, 2013) ...................................... 10

*Hanlon v. Chrysler Corp.*,
       150 F.3d 1011 (9th Cir. 1998) ......................................................................................... 2, 9

*In re Apple iPhone 4 Prods. Liab. Litig.*,
       No. 10-2188 RMW, 2012 WL 3283432 (N.D. Cal. Aug. 10, 2012) ................................. 10

*In re Bluetooth Headset Prods. Liab. Litig.*,
       654 F.3d 935 (9th Cir. 2011) .............................................................................................. 8

*In re Omnivision Techs.*,
       559 F. Supp. 2d 1036 (N.D. Cal. 2007) .............................................................................. 9

*Lagarde v. Support.com, Inc.*,
       No. 12-609 JSC, 2013 WL 1283325 (N.D. Cal. Mar. 25, 2013) .................................. 8, 10

*Lane v. Facebook, Inc.*,
       696 F.3d 811 (9th Cir. Cal. 2012) ....................................................................................... 2

*Nigh v. Humphreys Pharmacal, Inc.*,
       No. 12-2714, 2013 WL 5995382 (S.D. Cal. Oct. 23, 2013) ............................................... 4

*Parker v. Dish Network LLC*,
       No. 11-01457 PJH, ECF No. 70, at *1 (N.D. Cal. Mar. 9, 2012) ..................................... 10

*Somers v. Apple, Inc.*,
       258 F.R.D. 354 (N.D. Cal. 2009) ........................................................................................ 4

*Stearns v. Ticketmaster Corp.*,
       655 F.3d 1013 (9th Cir. 2011) ............................................................................................ 4

*Thompson v. Jiffy Lube Intern., Inc.*,
       250 F.R.D. 607 (D. Kan. 2008) .......................................................................................... 4

*Touhey v. United States*,
       No. 08-1418, 2011 WL 3179036 (C.D. Cal. July 25, 2011) ............................................ 10

**RULES**

Fed. R. Civ. P. 23(e) ........................................................................................................................ 2

## I. INTRODUCTION

Defendant Symantec Corporation ("Symantec") submits this statement in support of final approval of the parties' settlement (the "Settlement"), which Settlement has been amended a second time in light of the Court's instructions at the October 18, 2013 final approval hearing.[1] As instructed by the Court, the parties attended a settlement conference with Magistrate Judge Jacqueline Corley and were able to renegotiate their agreement to provide additional minimum monetary benefits to the Class regardless of the number of class members that submitted claim forms and regardless of any attorney fee award. Specifically, the Court observed at the October 18, 2013 hearing that, because of the low class member claims rate, Symantec could end up paying less than $20,000 in monetary benefits to the Class if the Court approved the entire $1.65 million fee award previously requested by Plaintiff's counsel. Under the amended Settlement, Symantec has now agreed to provide the following benefits to class members:

- Payment of <u>a minimum of $1.25 million</u> to class members in *cy pres* benefits, <u>regardless of the number of claims</u> submitted by class members and <u>regardless of the fee award</u> to Plaintiff's counsel;

- Payment of a $9.00 direct benefit to each individual class member who submits a valid claim form (equal to 30% of the purchase price of most of the products at issue and 90% of the purchase price of many of the products);

- Injunctive relief—including reprogramming of the software products at issue and development of new, revised product materials and messaging—that Plaintiff acknowledges will address the alleged misrepresentations at the heart of Plaintiff's Second Amended Complaint; and

- A free, 3-month subscription to Symantec's renowned Norton AntiVirus software (a product not at issue in the lawsuit) for <u>every class member—regardless of whether</u>

---

[1] The parties' original Settlement Agreement was previously amended prior to preliminary approval in response to issues raised by the Court at the April 19, 2013 preliminary approval hearing. *See* ECF No. 68. The Settlement Agreement has now been amended a second time at the request of the Court at the October 18, 2013 final approval hearing.

<u>they submit a claim form</u>—with no obligation to provide credit card information and no automatic conversion to a paid subscription.

Given the benefits listed above; the weakness of Plaintiff's case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout trial; and the reaction of the class members to the proposed settlement, the amended Settlement is fair, adequate, and reasonable, and therefore appropriately approved.

## II.   LEGAL STANDARD

Class action settlements are properly approved if they are "fair, reasonable, and adequate." *Lane v. Facebook, Inc.*, 696 F.3d 811, 818 (9th Cir. Cal. 2012) (quoting Fed. R. Civ. P. 23(e)). The Court "must evaluate the fairness of a settlement as a whole, rather than assessing its individual components." *Id.* at 818-819 (citing *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998)). "[A] district court's only role in reviewing the substance of [the] settlement is to ensure that it is 'fair, adequate, and free from collusion.'" *Id.* (quoting *Hanlon*, 150 F.3d at 1026-27). The factors that "guide the district court" in determining whether a settlement should be approved include "the strength of the plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement." *Id.* at 819.

"[T]he question whether a settlement is fundamentally fair within the meaning of Rule 23(e) is different from the question whether the settlement is perfect in the estimation of the reviewing court." *Id.* at 819. "[T]hat the settlement could have been better . . . does not mean the settlement presented was not fair, reasonable or adequate." *Hanlon*, 150 F.3d at 1027. "Settlement is the offspring of compromise" and the court should not attempt to determine "whether the final product could be prettier, smarter or snazzier." *Id.* "As the 'offspring of compromise,' . . . settlement agreements will necessarily reflect the interests of both parties to the settlement, including those of the defendant . . . and defendants can certainly be expected to structure a settlement in a way that does the least harm to their interests." *Lane*, 696 F.3d at 821.

### III. THE SETTLEMENT SHOULD BE APPROVED BECAUSE PLAINTIFF'S LAWSUIT LACKS MERIT

The first three factors to be considered by the Court—"the strength of the plaintiffs' case"; "the risk, expense, complexity, and likely duration of further litigation"; and "the risk of maintaining class action status throughout the trial"—all favor approval of the Settlement.

The Settlement is an excellent result in this action for the Class because Plaintiff's case is particularly weak, would not likely survive summary judgment, and may not be maintainable as a class action through trial. Plaintiff alleges that certain Symantec software products, which (among other things) are designed to scan a computer system and identify and fix errors in the computer's registry, make misleading representations about the condition of the computer registry in order to persuade those who use the trial version to purchase the full product versions. *See* ECF No. 50 ¶¶ 1-4. Plaintiff does not dispute that the products at issue had value to class members; he contends only that the products were "overhyped" because "they didn't do all that the defendants represented they would do." ECF No. 79 at 3:23-4:3. Plaintiff's allegations of "overhyping" are without merit and not cognizable. Even if his Second Amended Complaint could survive the pending motion to dismiss (his original complaint was voluntarily withdrawn after Symantec moved to dismiss it, and his First Amended Complaint was dismissed with leave to amend), Plaintiff would not be able to avoid summary judgment and might not be able to maintain this action as a class action through trial.

<u>No Misrepresentation.</u>  The alleged representations made by the products at issue are either statements of true facts or statements of a reasonable opinion based on true facts. The crux of Plaintiff's allegations appears to focus on the adjectives used by the products to describe the state of a user's computer. To the extent the products use adjectives to characterize the severity of the errors on a computer system, such as the adjectives "low system health" and "high priority errors," the products are expressing an opinion based on real data about the number of errors detected on a computer, the location of those errors in the computer system, and the frequency with which a user cleans errors from the computer. There is nothing deceptive about the manner in which the products diagnose the health of a computer system. As disclosed in the product

materials, each diagnosis reflects the opinion of Symantec that "[t]o maintain a healthy system, the areas of your system that compromise your privacy need to be cleaned periodically and the Registry and Disk kept free of errors." Plaintiff will thus not be able to show that any false or misleading representations were made by the products at issue.

   No Injury. Plaintiff will also not be able to show that users have been harmed in any way. Every user that purchased these products did so, presumably, to detect and clean errors from their computer. And every user received exactly what they paid for: a product that detects and cleans the unwanted errors from their system, errors that would otherwise have the potential to decrease the performance of the computer system. Although Plaintiff disputes whether all issues detected by the product are as severe as the software makes them out to be, Plaintiff does not dispute that the product remedies certain issues it detects (e.g., empty registry keys).

   Risk of Maintaining Class Action Status. Where defendants would challenge class certification absent a settlement, "there is a risk that the Class may not be certified" that "weighs in favor of settlement." *Nigh v. Humphreys Pharmacal, Inc.*, No. 12-2714, 2013 WL 5995382 (S.D. Cal. Oct. 23, 2013). Here, the parties reached a Settlement prior to the filing of an adversarial motion for class certification.[2] Although Symantec has stipulated to certification of the Class for settlement purposes, absent settlement, Symantec would likely contest class certification on all, or at least some, of Plaintiff's claims if discovery revealed that class action treatment is not appropriate. For example, Symantec would challenge class certification if the evidence obtained during class certification discovery revealed (i) that only some class members received the alleged misrepresentations, *Stearns v. Ticketmaster Corp.*, 655 F.3d 1013, 1022 (9th Cir. 2011); (ii) that class members have different computer systems with a different number of errors of varying severity, *Thompson v. Jiffy Lube Intern., Inc.*, 250 F.R.D. 607, 621 (D. Kan. 2008); or (iii) that not all class members suffered the alleged damages, *Somers v. Apple, Inc.*, 258

---

   [2] Plaintiff filed contemporaneously with his original complaint a "prophylactic" motion for class certification. *See* ECF No. 2. That motion was entered and continued pending discovery. *See* ECF No. 24.

F.R.D. 354, 361 (N.D. Cal. 2009). Accordingly, there is a genuine risk that this case could not be maintained as a class action through trial, a risk that favors approval of the Settlement.

For these reasons, the Settlement should be approved because of the strong likelihood that Symantec would prevail on Plaintiff's weak claims and because of the risk of maintaining this action as a class action through trial.

### IV. THE SETTLEMENT SHOULD BE APPROVED BECAUSE IT PROVIDES BENEFITS BETTER THAN OR EQUAL TO WHAT PLAINTIFF COULD HAVE OBTAINED HAD HE PREVAILED ON THE MERITS

The fourth factor to be considered by the Court, "the amount offered in settlement," favors approval of the Settlement because the Settlement provides better benefits than what individual class members could have reasonably obtained by prevailing on the merits at trial.

$9.00 Monetary Award. Each class member that submits a valid claim form under the Settlement will receive a $9.00 check—an amount that exceeds what each class member could have received in damages had they been able to prevail on the merits of their claims at trial. As discussed above, the Class has suffered no cognizable damages. And Plaintiff has not alleged that the products purchased by class members were worthless, only that these products had "diminished value" from allegedly exaggerating the "health" of a user's computer. ECF No. 71 at 8. Because the $9.00 individual payment is an amount equal to 30% of the purchase price of most of the products at issue and 90% of the purchase price of many of the products, even if a jury were to conclude the products had "diminished value," class members would not likely receive more than $9.00 in damages. Indeed, even Plaintiff recognizes that "a recovery of $9.00 (of the typical $29.99 cost to consumers) is significant and represents nearly a complete recovery on Plaintiff's claim that he and the Class overpaid for the Software." ECF No. 71 at 8.

3-Month Subscription to Norton AntiVirus. In addition to a monetary award, every class member will be entitled to a free, 3-month subscription to the latest version of Symantec's renowned Norton AntiVirus software—a benefit class members would not have received even had they been able to prevail on their claims at trial. Regardless of whether they have submitted a claim form, each class member will receive a link to activate a subscription to the newest version of Norton AntiVirus software. Norton AntiVirus is a separate product that is not at issue

in the litigation; Plaintiff has made no allegations whatsoever about its efficacy or quality. A one-year subscription to this latest version of Symantec's flagship consumer product currently retails for $49.99. Further, class members will receive their free 3-month subscription with no obligation to provide personal information or credit card information, and the subscription will not automatically convert to a paid subscription at the end of the 3-month period.

$1.25 Million *Cy Pres* Award. Symantec will pay a minimum of $1.25 million to *cy pres* recipients, regardless of the number of claims submitted by class members and regardless of any fee award to Class Counsel. To the extent the Court awards less than the $700,000 fee award sought by Class Counsel, Symantec will pay an additional amount to these *cy pres* recipients equal to the difference between $700,000 and the actual Fee Award approved by the Court.

Injunctive Relief. Finally, and at significant cost and effort to Symantec, Symantec has agreed to injunctive relief as part of the Settlement that will eliminate the alleged misrepresentations at the heart of Plaintiff's Second Amended Complaint. Symantec has agreed to reprogram the software products at issue to eliminate the language that was of concern to Plaintiff. Symantec will also develop revised product materials that explain the function of the products. Plaintiff agrees that these product changes "ensure that any user who chooses to purchase the Software Products in the future will do so fully informed and without any misconceptions of what the Products can and cannot do." ECF No. 71 at 7.

Given the weakness of Plaintiff's claims, the benefits of the Settlement described above exceed any recovery the Class could reasonably have hoped to obtain by prevailing on the merits of this weak case. The consideration offered by Symantec under the Settlement therefore favors approval of the Settlement.

## V. THE SETTLEMENT SHOULD BE APPROVED BECAUSE IT IS THE PRODUCT OF REPEATED NEGOTIATIONS AND REPEATED COURT INVOLVEMENT TO ENSURE ITS FAIRNESS

The fifth and six factors to be considered by the Court—"the extent of discovery completed and the stage of the proceedings" and "the experience and views of counsel"—favor approval of the Settlement because the Settlement is the product of two and half years of litigation and repeated rounds of mediation between experienced counsel.

SYMANTEC'S STMT. ISO FINAL APPROVAL OF
SECOND AMENDED CLASS ACTION SETTLEMENT
NO. C 12-00154 CRB
-6-

1      Pre-Filing Attempts to Resolve the Dispute.  Prior to filing the lawsuit, Plaintiff had already obtained the core of the discovery that would be relevant to his claims:  an alleged expert analysis about how the software at issue operated and the representations made by Symantec about the software.  *See* Second Amended Complaint ¶ 49.  Plaintiff then presented this analysis to Symantec, and the parties began negotiating a potential resolution to the dispute.  *See* ECF No. 71 at 5.  The parties attempted to settle the case through mediation prior to the filing of the lawsuit with retired judge Ronald Sabraw at JAMS on January 3, 2012, but were unable to reach a resolution at that juncture.

       Repeated Challenges to the Viability of Plaintiff's Claims.  Following the unsuccessful January 3, 2012, mediation, Plaintiff filed his complaint in this Court on January 10, 2012, and the parties litigated the case for several months.  During that time, Symantec filed three motions to dismiss:  the first resulting in Plaintiff's voluntary withdrawal of the original complaint, the second resulting in the Court's dismissal of Plaintiff's First Amended Complaint, and the third seeking dismissal of the Second Amended Complaint.  *See* ECF Nos. 28, 32, 34, 49, 51.  After Symantec's Motion to Dismiss the Second Amended Complaint had been fully briefed, the parties decided to attempt to resolve the lawsuit through a second round of mediation.

       The Parties' Second Mediation. The parties held their second mediation on November 12, 2012 with John B. Bates of JAMS.  Ultimately, the parties reached agreement on the following monetary terms:  a $9.00 benefit to each class member that submitted a claim form and an attorney fee award of up to $1.65 million.  Plaintiff's acceptance of the Settlement's monetary terms was conditioned on Symantec also agreeing to injunctive relief and providing an in-kind benefit to all class members regardless of whether they submitted a claim form.  It took several months after the second mediation for the parties to finalize the non-monetary benefits of the Settlement.  Symantec ultimately agreed to provide the requested three months of free Norton AntiVirus to all class members and to provide the requested injunctive relief.

       Amending the Settlement to Satisfy the Court's Concerns at Preliminary Approval.  At the preliminary approval hearing, the Court noted that the parties were forthright about an expected low claims rate, and the Settlement provided for a maximum plaintiff's counsel fee

award ($1.65 million) with any un-awarded fees to revert back to Symantec. Referring to *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935 (9th Cir. 2011), the Court suggested it would be appropriate for Symantec to take on additional settlement liability should the maximum $1.65 million in requested fees not be awarded to plaintiff's counsel. Consequently, Symantec agreed to forfeit a reversion of any un-awarded fees. The parties amended the Settlement agreement to disburse to appropriate *cy pres* recipients any un-awarded portion of the $1.65 million maximum allowable fee award. ECF No. 68-1. With this amendment, the Court granted preliminary approval on May 28, 2013.

<u>The Parties' Conference with Judge Corley to Amend the Settlement Again</u>. Ultimately, the total claim forms submitted by class members amounted to a claims rate of approximately 0.16% (the same approximate claims rate obtained in a similar class action before Magistrate Judge Corley, *Lagarde v. Support.com*, 2013 WL 1283325 at *4). Citing concerns about the amount of the fee award sought by Plaintiff's counsel ($1.65 million) and the corresponding low total monetary payout to the class in light of the final claims rate by class members, the Court—at the suggestion of Plaintiff's counsel—referred the parties to Magistrate Judge Corley for a settlement conference to determine whether an amended settlement could be reached. The parties held a telephone conference with Judge Corley on October 24, 2013 and an in-person settlement conference with her on December 10, 2013, resulting in amendments to the Settlement.

<u>The Revised Settlement Provides Additional Minimum Monetary Benefits to the Class.</u> With the assistance of Judge Corley, the parties agreed to amend the Settlement to provide more monetary consideration from Symantec and fee award concessions by Plaintiff's counsel. Symantec has now agreed to make a minimum payment of $1.25 million to the Class in the form of a *cy pres* distribution—regardless of the number of claims submitted by class members and regardless of any fee award to Plaintiff's counsel—and to the extent the Court awards less than Class Counsel's requested fee award of $700,000, Symantec would make an additional payment to the *cy pres* distribution equal to the portion of requested fees that are not awarded by the Court. This new commitment will result in Symantec paying 244% more than it would have paid under the parties' original settlement agreement, with the Class receiving 7,453% more in

direct and *cy pres* monetary benefits, and Class Counsel agreeing to seek 58% less in fees.[3] [4]

Therefore, the amended settlement directly addresses the concerns expressed by the Court.

## VI. THE LACK OF ANY OBJECTORS OR INTERVENERS EVIDENCES THAT THE SETTLEMENT SHOULD BE APPROVED

The final two factors to be considered—"the presence of a governmental participant; and the reaction of the class members to the proposed settlement"—both favor approval of the Settlement because potential government law enforcement authorities and absent class members were given notice of the Settlement and an opportunity to object, but none have expressed any interest in challenging this fair settlement. "[T]he fact that the overwhelming majority of the class willingly approved the offer and stayed in the class presents at least some objective positive commentary as to its fairness." *Hanlon*, 150 F.3d at 1027. Moreover, "[i]t is established that the absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class settlement action are favorable to the class members." *In re Omnivision Techs.*, 559 F. Supp. 2d 1036, 1043 (N.D. Cal. 2007). "By any standard, the lack of objection of the Class Members favors approval of the Settlement." *Id.* (citing *Churchill Vill., L.L.C. v. GE*, 361 F.3d 566, 577 (9th Cir. 2004) (affirming settlement with 45 objections out of 90,000 notices sent)).

Here, undoubtedly because of the benefits offered by the Settlement, there have been no objections to the Settlement from the Class. Notice of the Settlement was also provided to all federal and state attorneys general, yet none have come forward to intervene or object to the Settlement. And only six of the more than one million class members have decided to opt out of the Settlement.

---

[3] Under the original settlement, and assuming the Court had awarded the entire fee award Plaintiff's counsel is now seeking, the actual payout by Symantec would have totaled about $869,500 ($700,000 fee award, $2,500 named plaintiff incentive award, $17,000 direct benefit to the 1,800 class members that filed claims, and $150,000 in administrative costs). Under the revised settlement, with an additional $1.25 million *cy pres* payment, Symantec's payout will be more than $2.1 million.

[4] If the Court awards less than the full $700,000 fee award requested by Plaintiff's counsel, the percentage increase in benefits to the class over the original settlement would be greater.

Although the number of class members that submitted claims to receive the $9.00 benefit was low, such a claims rate is not abnormal in cases involving low-cost products and/or relatively small alleged damages and does not preclude approval of a settlement, especially where substantial monetary and in-kind benefits are offered to every class member and coupled with a substantial *cy pres* payment. *See, e.g.*, *Lagarde v. Support.com*, Inc., No. 12-609 JSC, 2013 WL 1283325 (N.D. Cal. Mar. 25, 2013) (approving settlement despite 0.17% claims rate "since the settlement amount is commensurate with the strength of the class' claims and their likelihood of success absent the settlement"); *Fraley v. Facebook, Inc.*, No. 11-1726 RS, 2013 WL 4516806 (N.D. Cal. Aug. 26, 2013) (approving settlement despite 0.4% claims rate because "the settlement as a whole provides fair, reasonable, and adequate relief to the class, in light of all the circumstances, including the low probability that a substantially better result would be obtained through continued litigation"); *In re Apple iPhone 4 Prods. Liab. Litig.*, No. 10-2188 RMW, 2012 WL 3283432, at *2 (N.D. Cal. Aug. 10, 2012) (approving settlement despite 0.16%- 0.28% claims rate); *Parker v. Dish Network LLC*, No. 11-01457 PJH, ECF No. 70, at *1 (N.D. Cal. Mar. 9, 2012) (approving settlement despite 0.8% claims rate); *Touhey v. United States*, No. 08-1418, 2011 WL 3179036 (C.D. Cal. July 25, 2011) (approving settlement despite 2% claims rate because "there were no objections to the proposed settlement, nor any requests to opt out" and "the proposed recovery under the Settlement Agreement is fair").

## VII.  CONCLUSION

Because all relevant factors favor approval of the Settlement, the Court should grant final approval of this fair, adequate, and reasonable Settlement.

Dated: February 21, 2014                         WILSON SONSINI GOODRICH & ROSATI
                                                 Professional Corporation

                                                 By: /s/ Maura L. Rees
                                                       Maura L. Rees

                                                 *Attorneys for Defendant*
                                                 SYMANTEC CORPORATION